## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

**The Honorable Judge Elizabeth E. Brown**

IN RE:                                    ) Chapter 11
                                          ) Case No. 18-18636 EEB
WPB HOSPITALITY, LLC                      )
                                          )
                                          )
                                          )
                                          )

_____

## DEBTOR-IN-POSSESSION'S MOTION TO APPROVE SALE OF
## PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES
## PURSUANT TO 11 U.S.C. § 363(b) & (f) AND MOTION TO COMPENSATE REALTOR
_____

Comes now, the Debtor, WPB Hospitality, LLC ("WPB") by and through its attorney, Arthur Lindquist-Kleissler, Esq. of the law firm Lindquist-Kleissler & Company, LLC, and files its Motion to Approve Sale of Property Free and Clear of Liens, Claims, and Encumbrances pursuant to 11 U.S.C. § 363(b) and (f) and F.R.Bankr.P. Rules 2002(a)(2) and 6004 and 9014 and L.B.R. 6004-1 and Motion to Compensate Realtor ("Motion"). In support of this Motion, the Debtor states as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Colorado has jurisdiction over this matter and over property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334.

2.      This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (N) and (O).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### PROCEDURAL BACKGROUND

4.      WPB Hospitality, LLC ("WPB") filed the within Chapter 11 bankruptcy on October 3, 2018.

5.      The Debtors 341 Meeting of Creditors was held on Wednesday, November 7, 2018 at 1:30 p.m.

1

6.       The Court conducted a Status Conference in this case which was held on Wednesday, November 7, 2018 at 3:00 p.m.

7.       The Debtors are Debtors-In-Possession pursuant to 11 U.S.C. § 1107.

8.       WPB owns a four (4) acre parcel of land located at 16161 E. 40th Avenue, Denver, Colorado in the Gateway Park business district near Denver International Airport upon which is a partially constructed hotel.

9.       Construction of the hotel was temporarily stopped due to problems with the contractor, architect and the construction management company.

10.      American Lending Center, LLC  ("ALC") is a California limited liability company whose business address is 1 World Trade Center, Ste. 1180, Long Beach, CA 90831.

11.      ALC is a secured creditor of WPB.

12.      On or about November 1, 2018, WPB made its first (1st) post-petition interest payment to ALC pursuant to 11 U.S.C. §362(d)(3) in the amount of $35,581.94.

13.      On December 3, 2018, WPB made its second (2nd) monthly post-petition interest payment to ALC pursuant to 11 U.S.C. §362(d)(3) in the amount of $35,685.21.

14.      Undersigned counsel has been advised that on January 2, 2019 WPB made its third (3rd) monthly post-petition interest payment to ALC pursuant to 11 U.S.C. §362(d)(3) in the amount of $35,828.49.

15.      ALC had filed a Motion for Relief from the Automatic Stay (Doc#33) on October 18, 2018 asserting the within Single Asset Real Estate reorganization was a bad faith filing and that relief from the automatic stay should be granted.

16.      The Debtor responded to ALC's Motion for Relief from Stay and asserted that the case was not a bad faith filing and that cause did not exist for granting relief from stay including but not limited due to the fact that the subject property is worth approximately $4,000,000,00 **more** than ALC's alleged debt; that WPB has been making monthly interest payments to ALC and that the Debtor had additional secured or unsecured creditors that would be foreclosed out if ALC were granted relief from the automatic stay.

17.      A preliminary hearing was held on ALC's Motion for Relief from Stay on December 13, 2018.

18.      By Minute Order dated December 13, 2018 this Court determined that there were evidentiary issues which required setting a final hearing on ALC's Motion for Relief from Stay.

19.     The final hearing on ALC's Motion for Relief from Stay is scheduled for Friday, January 4, 2019 at 9:30 a.m.

20.     Post-petition the Debtor employed CBRE, Inc. to market the property. The Application for Employment of CBRE, Inc. was filed on November 2, 2018 (Doc#44) and the Court entered the Order approving the application on November 14, 2018 (Doc#81).

21.     CBRE did not actively market the property until the Order for their employment was approved.

22.     Since that date CBRE has obtained two (2) purchase offers for the property.

23.     The first offer is from Rite A Way, LLC for $9,000,000.00 and is attached hereto as **Exhibit "A."**

24.     This offer is essentially a cash offer and can be closed within fifteen (15) days of Bankruptcy Court approval of a sale.

25.     The second offer is from Brinkman Capital, LLC for a gross amount of $9,400,000.00.

26.     The Contract requires the payment of an In-House fee to Brinkman's In-House Realtors which results in a net Contract price of $9,237,000.00.

27.     The Brinkman offer contains a longer due diligence and closing period but is from an exceptionally viable and stable purchaser.

28.     The Brinkman offer provides that a closing could not take place until after approximately sixty (60) days including a longer due diligence period.

29.     The Debtor has elected to accept the offer from Right-A-Way, LLC.

30.     A copy of the Right-A-Way, LLC's Contract is attached hereto as **Exhibit "A."**

31.     Right-A-Way, LLC has formed an entity, Denver East Hospitality, LLC and Right-A-Way, LLC desires to assign its rights pursuant to the Contract to Denver East Hospitality, LLC in order to close and purchase the property in the name of Denver East Hospitality, LLC.

32.     Notwithstanding the fact that the Brinkman offer theoretically provides for a greater net payout to the Debtor, the overall contingencies and time factors involved mitigate, in the Debtor's business judgment opinion, in favor of the Right-A-Way, LLC offer.

## FACTUAL BACKGROUND

3

33.      Late in the afternoon of Tuesday, October 2, 2018 undersigned Counsel and his Firm were retained to file a "rush emergency Chapter 11 bankruptcy" for the Debtor WPB Hospitality, LLC.

34.      The Debtor, WPB Hospitality, LLC ("Debtor" or "WPB") owns an incomplete hotel under construction on a four (4) acre parcel located at 16161 E. 40th Avenue, Denver, Colorado in the Gateway Park business district near Denver International Airport.

35.      The hotel is intended to fly the Sheraton 4 Points flag.  WPB is owned 100% by Wanda Bertoia ("Bertoia") who is also the managing member of WPB.

36.      Ms. Bertoia owns another entity known as Alpine Hospitality, Inc. ("Alpine"). Alpine owns a Ramada Inn located at 6210 Tower Road, Denver, Colorado.  Therefore, Ms. Bertoia is experienced in the management and operations of hotels.

37.      A Public Trustee's Foreclosure sale was scheduled on WPB's property for Thursday, October 4, 2018 at 10:00 a.m. with the Denver Public Trustee.

38.      WPB Hospitality, LLC ("WPB") is a Colorado limited liability company. WPB is a single member LLC whose only member is Wanda Bertoia ("Bertoia"), a resident of Colorado.

39.      In 2008 Wanda Bertoia purchased the four (4) acre parcel of land located at 16161 E 40th Avenue, Denver, CO  80239.

40.      Bertoia had paid approximately $2,400,000.00 for the four (4) acres in 2008.

## HOTEL CONSTRUCTION

41.      Kumar Construction Management, Inc. ("Kumar") is an Illinois Corporation with a last known address identified as 2863 W. 95th Street, Naperville, Illinois 60564.

42.      Upon information and belief, Kumar Construction Management, Inc. is in the business of construction and construction management.

43.      Associated Architects, Ltd. is a Colorado corporation with a reported principal office address of P.O. Box 33034, Denver, Colorado 80233 ("Associated" or "the Architect").

44.      Tetra Tech, Inc. is a Delaware corporation ("Tetra Tech") registered as a foreign corporation with the Colorado Secretary of State, with a principal office address of 3475 E. Foothill Boulevard, Pasadena, California 91107.

4

45.        Upon information and belief, Tetra Tech is, among other things, in the business of monitoring and managing draw disbursements for construction projects and construction loans.

46.        Aileron Investment Management, LLC ("Aileron") is a Florida limited liability company with a principal office address of 3401 W. Cypress Street, Suite 101, Tampa, Florida 33607.

47.        Upon information and belief, Aileron is a real estate development lender.

48.        American Lending Center, LLC ("ALC" or "EB-5 Lender") is a California limited liability company with a principal office address of 1 World Trade Center, Suite 1130, Long Beach, California 90831.

49.        Upon information and belief, ALC is an EB-5 lender providing loans for real estate development and construction.

50.        On or about June 6, 2008, WPB engaged Associated Architects, Ltd. (the "Architect") to prepare floor plans and construction documents for the construction of a new hotel to be located at 16161 E 40th Avenue, Denver, Colorado (the "Property").

51.        After obtaining franchise agreements with Best Western, WPB began searching for borrowing opportunities to perform the construction pursuant to the Architect's plans for a Best Western flagged hotel.

52.        WPB identified Aileron as an acceptable lender that offered to fund construction through a mixture of financing that included EB-5 financing through ALC.

53.        During the process of setting the loan agreements, WPB hired Kumar as WPB's general contractor for the build project.

54.        Aileron elected to engage a construction draw manager to oversee Kumar in the construction process and provide oversight to the draw process.

55.        Aileron selected and retained Tetra Tech, Inc. ("Tetra Tech") to step into the role of managing and tracking the draw requests from the contractor and providing appropriate payments to the contractor, as a measure of protection for WPB.

56.        According to the draw documents, Tetra Tech assigned the draw management to a disbursement agent in Bellevue, Washington.

## THE CONSTRUCTION LOANS

57.        On or about December 31, 2015, WPB executed two promissory notes, one in the principal amount of $5,700,000 ("Note A") and the second in the principal amount of $4,500,000 ("Note B").

58.     Note A and Note B were provided by WPB for the purposes of providing financing for the construction of a new hotel.

59.     Note A identifies the lender as Aileron Investment Management, LLC, in Florida ("Aileron").

60.     Note B identifies the lender as American Lending Center, LLC, in California ("ALC").

61.     Both Note A and Note B are five-year, interest-only notes.

62.     At some point, one or both of the lenders deposited $230,000 +/- in loan proceeds with Northeast Bank in Maine.

63.     As of the last time WPB inquired with Northeast Bank, there remains $216,095.77 in the account at Northeast Bank.

## CONTRACTOR DRAWS

64.     Beginning on or about April 14, 2016, Kumar submitted a draw request to Tetra Tech for $119,970.00 for the purposes of beginning construction ("Draw 1").

65.     Draw 10 was the final draw request and payment of which WPB is aware.

66.     Each of the Draws 1-10 contained information and details regarding the various subcontractors and vendors to which Kumar indicated he was making payment, including various purported lien releases.

## CONSTRUCTION PROGRESSION AND FAILURES

67.     As the General Contractor, Kumar undertook to obtain the necessary permits and approvals from the City and County of Denver Planning Department for the development of the Property.

68.     In June or July, 2017, the Architect submitted Mechanical and Plumbing ("M&P") permit requests to the City and County of Denver Planning Department ("Planning").

69.     On July 6, 2017, the M&P request came back from Planning indicating that the "Project is Held Pending Resolution and Correction of nine correction comments on the plumbing plan and 16 correction comments on the Mechanical plan."

70.     Documentation from the City and County of Denver makes clear that Kumar and the Architect failed to provide timely responses to Planning that were satisfactory.

71.     On August 14, 2017, Planning sent a second Architectural & Structural Plan Review Notice ("2nd Notice").

72.     Almost immediately, Planning advised Kumar and the Architect that 34 architectural and structural comments remained open, 15 of which advised that Planning was concerned that the project plan review was not being addressed and that Planning was considering issuing a notice to stop all work. Planning set a deadline of two weeks (August 28, 2017) for responses.

73.     Through December, 2017, Planning continued to advise Kumar and the Architect of a growing number of comments that had not been addressed by either Kumar or the Architect.

74.     At no time did Kumar or the Architect actually correct any of the comments from Planning.

75.     Eventually, Debtor was forced to retain a new architect; by December 27, 2017, the new architect was able to address the open comments by Planning.

76.     However, by the time the new architect obtained approvals from Planning in 2017, Kumar and the Architect had abandoned the project.

77.     Since Kumar abandoned the project, WPB has been notified of $269,282.06 in liens on the Property as a result of subcontractors, vendors and suppliers going unpaid.

## THE FORECLOSURE

78.     On or about April 5, 2018, the Denver Public Trustee provided a Combined Notice of Sale and Notice of Rights to Cure or Redeem indicating that ALC was proceeding with foreclosure on a loan with an original principal balance of $10,200,000 and an outstanding balance of $5,000,615.02.

79.     On or about April 5, 2018, American Lending Center, LLC ("ALC") recorded a revised Notice of Election and Demand for Sale ("Amended NED")  in which ALC indicated that it alone was the holder of the debt evidenced by Note A and Note B.

80.     The Amended NED indicated that the outstanding principal balance of Note A was $500,615.02 and that the outstanding principal balance of Note B was $4,500,000.

81.     On June 6, 2018, WPB provided the Public Trustee with an Intent to Cure notice.

82.     On June 26, 2018, WPB received a Cure Statement, ostensibly completed by ALC, indicating that the payments due under Note A were $44,440.96 and the payments due under Note B were $1,119,602.33. The Cure Statement adds in all statutorily allowed costs of carrying and attorney fees and provides a final total cure figure of $1,230,218.56.

83.     Despite having just received a Cure Statement requiring $1,230,218.56 on June 30, 2018, WPB received an invoice from Aileron Capital Management dated June 27, 2018, indicating total interest due on both notes to be $425,315.11.

84.     On July 13, 2018, WPB was provided with a "Corrected Cure Statement," ostensibly completed by ALC, indicating that the payments due under Note A were $48,225.97 and the payments due under Note B were $433,456.87. The Corrected Cure Statement adds in all statutorily allowed costs of carrying and attorney fees and provides a final total cure figure of $556,099.98.

85.     On July 27, 2018, an evidentiary hearing was conducted in the Denver District Court for the purpose of determining if default had occurred under the terms of the loan.

86.     During the July 27, 2018, hearing, Debtor provided a cure payment of $556,099.98 to the Denver City and County Public Trustee, pursuant to the Corrected Cure Statement (the "Cure Payment").

87.     Following confirmation of the Cure Payment, the Court proceeded to take testimony and evidence from ALC on "non-monetary defaults." Prior to Debtor putting on evidence, Debtor and ALC reached a tentative agreement that would forestall the foreclosure and allow Debtor to obtain new financing within a matter of weeks.

88.     As a part of the tentative agreement made at the hearing and placed on the record, Debtor would be allowed to pay for either a subordination fee of $1,500,000 or a "break-up fee" of $1,500,000 at Debtor's choice.

89.     The purpose behind the break-up fee was to ostensibly allow Debtor to obtain new financing and pay off the entire balances of Note A and Note B.

90.     ALC further stated at that time that ALC would also need to review certain loan package documents and that those details would later be provided in a formal stipulation.

91.     WPB cured any financial delinquency to ALC by paying $556,099.98 pursuant to a cure statement on July 26, 2018.

92.     The Denver District Court, however, determined that notwithstanding curing the alleged financial default, WPB had a non monetary default due to the fact that construction of the hotel had not been completed by a date certain.

93.     On September 21, 2018 the District Court, Denver County, Colorado issued an Order Authorizing the Public Trustee's sale of the property.

94.     The Public Trustee sale of WPB's property located at 16161 E 40th Avenue, Denver, CO  80239 was scheduled for Thursday, October 4, 2018 at 10:00 a.m.

**MONITORING FAILURES**

95.　　　Tetra Tech was retained by the lenders for the purpose of monitoring and authorizing, or otherwise approving, draw requests made by Kumar as construction proceeded.

96.　　　Tetra Tech's failures in assuring that payments were made to subcontractors and in securing lien releases have caused Debtor damages related to liens recorded against the Property, but which are not less than $250,000.

97.　　　Case Inspections did not accurately or completely conduct the review of the construction progress and, as set forth in the construction draw reports discussed above, Case Inspections overstated the amount of work that had been completed by Kumar.

98.　　　Case Inspections failed to accurately report that construction progress did not exceed 20-22% of the project.

99.　　　Tetra Tech, having received Case Inspection's misstated reports, inaccurately reported to the lender and to Debtor the amount of work completed by Kumar.

## KUMAR'S LIABILITY

100.　　　In each of the draw requests submitted by Kumar, as identified in paragraphs above, Kumar made false representations of material fact relating to the amount of work completed on the project, the amount of money owed by Debtor, and Kumar's representations that subcontractors were being paid.

## THE ARCHITECT

101.　　　The Architect received no fewer than six requests from Planning to address open plan review conditions that would allow construction to proceed.

102.　　　The Architect failed to provide any response to Planning and therefore construction permits were not issued and construction ceased.

103.　　　As a result of the Architect's failure to respond to Planning, Debtor retained a separate architect to respond to Planning and thereby allow permits to issue.

104.　　　On or about August 13, 2018 WPB filed a lawsuit against Kumar Construction Management, Inc.; Neil Kumar; Associated Architects, Ltd., Tetra Tech, Inc., Aileron Investment Management, LLC; American Lending Center, LLC and Case Inspection Services, Inc.

105.　　　This lawsuit was filed in the District Court, Denver County, Colorado bearing case number 2018 CV 32991 ("Kumar lawsuit").

106.    The Kumar lawsuit asserts all of the allegations above and is further evidence that the Debtor believes it has a good faith defense to claims raised by ALC and related parties.

107.    On or about October 12, 2018 ALC filed a lawsuit against Alpine and Bertoia in the District Court, Arapahoe County, Colorado bearing case number 2018 CV 32245 ("ALC Guarantor suit").

108.    The ALC Guarantor suit was filed against Alpine and Bertoia due to the fact that they are guarantors on the ALC loan.

### THE TERMS OF THE SALE

109.    The Debtor has a contract to sell the property on which is located the incomplete hotel under construction on a four (4) acre parcel located at 16161 E. 40th Avenue, Denver, Colorado  in the Gateway Park business district near Denver International Airport (the "Property").

110.    It is anticipated that non-substantive amendments or modifications may be made to the Contract to accommodate scheduling and/or to address other minor issues.  All references herein to the "Contract" are intended to mean the Contract, as so amended or modified.

111.    The Contract is with Right-A-Way, LLC dated November 19, 2018.  A copy of which is attached hereto as **Exhibit "A."**

112.    The Contract was signed by Wanda Bertoia on December 22, 2018 on behalf of WPB Hospitality, LLC.

113.    The legal description for the property being sold is attached to the Contract to Buy and Sale Real Estate (Commercial) (**Exhibit "A"**).  The property is also known as Part of Block 1, Lot 1, Gateway Park IV, Denver, Colorado 80239.

114.    The Contract provides, *inter alia*, for the following:

    a)  The Purchase Price is $9,000,000.00;

    b)  The Buyer has delivered $250,000.00 in earnest money;

    c)  The Buyer will pay $8,750,000.00 in cash at closing.

    d)  The Property is being sold on as "as is" basis without warranties or representations;

e) The Contract provides that Buyer would like to close within fifteen (15) days after mutual execution of the Contract although the Contract is specifically contingent upon Bankruptcy Court approval.

f) Any sale of the Property is subject to bankruptcy court approval pursuant to paragraph 30 of the contract.

g) The contract is also contingent on Court approval for the Debtor's paying a brokerage commission of three percent (3%) of the sales price out of the sales proceeds to Mark Darrington and Larry Kaplan of CBRE, Inc.

## SALE ALTERNATIVES

115.    The Debtor has explored alternatives to selling the property.

116.    The Debtor's true desire was to develop the property into a full fledged operating hotel.

117.    The Debtor hoped to create a significant number of jobs through an operating hotel.

118.    The Debtor made significant progress towards refinancing the project which would have facilitated completion of the construction.

119.    The Debtor believes that constraints exists with the existing financing; the relatively short time frame for refinancing; and the construction mismanagement among other factors have mitigated in favor of the Debtor simply selling the property.

## AUTHORITY FOR SALE

### 11 U.S.C. §363(b)

120.    11 U.S.C. § 363(b) provides that "The Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...".

121.    Pursuant to 11 U.S.C. §1107(a) a Debtor-in-Possession subject to certain limitations has all of the powers and shall perform all of the functions and duties of a trustee serving in a Chapter 11 case.

122.    Further, section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

123.    The Bankruptcy Court's power to authorize a sale under section 363(b) is to be exercised at the Court's discretion. *In re WPRV-TV, Inc*. 983 F.2d 336, 340, (1st Cir. 1993); *New Haven Radio, Inc. v. Meister* (*In re Martin-T*rigona), 760 F.2d 1334, 1346

(2nd Cir. 1985); *Committee of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1073, 1069 (2d Cir. 1983).

124.     Courts have authorized a sale of a Debtor's assets pursuant to section 363(b) of the Bankruptcy Code or in the absence of a reorganization plan where there is a "sound business purpose."  *In re Delaware & Hudson Ry.Co.*, 124 B.R. 169 (D.Del.1991); *Titusville Country Club v. Penn Bank (In re Titusville Country Club)*, 128 B.R. 396 (Bankr.W.D.Pa. 1991); *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15 (Bankr.E.D.Pa. 1987).  See also, *Stephen Indus., Inc. v. McClune*, 789 F.2d 386 (6th Cir. 1986);  *In re Lionel Cor*p, 722 F.2d at 1071 (setting forth the "sound business purpose" test in the context of a sale of assets under section 363(b) of the Bankruptcy Code).

125.     The Debtor-In-Possession acts as the Trustee in the within case and is imbued with all of the rights and authorities of the Trustee.

**11 U.S.C. §363(f)**

126.     11 U.S.C. § 363(f) provides as follows: "The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--

1)   applicable nonbankruptcy law permits sale of such property free and clear of such interest;

2)   such entity consents;

3)   such interest is a lien and the price at which such property is to be sold is greater that the aggregate value of all liens on such property;

4)   such interest is in bona fide dispute; or

5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest

127.     The Debtor believes that certain of the above subsections of 11 U.S.C. §363(f) apply in the within case.

128.     The price at which the property is being sold is significantly greater than the aggregate value of all liens on the subject property.

129.     Additionally, there are genuine issues regarding the validity of the various liens including but not limited to the amount of the liens and/or whether the liens are simply unsecured debts.

130.     The Debtor believes that all of the creditors (including the lien claimants) could be compelled in an legal or equitable proceeding to accept a money satisfaction of their interest in the subject property.

131.     As disclosed below the Debtor intends on paying the only Notes and Deeds of Trust a total of $5,000,000.00 at closing with the balance, if any, of ALC's claim to attach to the net sale proceeds.

132.     Similarly, the Debtor only intends to pay the City and County of Denver's Storm Drain Lien described below in the amount of $134.81.

133.     The Debtor also intends on paying the City and County of Denver's Secured Lien for past due real property taxes in the amount of $101,205.25 for the period January 1, 2017 through December 31, 2017.

134.     The Debtor believes that the remaining mechanic lien claimants and other claims are in bona fide dispute.

135.     Nevertheless, all net sale proceeds will be escrowed and any of the other lien claimants interest in the property, if any, will attach to the net sale proceeds.

136.     Accordingly all creditors in the within case are protected.

**11 U.S.C. §363(m)**

137.     Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or a lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

138.     Any sale is one done in "good faith" and "for value."

139.     Any such sale does **not** involve any insiders.

140.     Right-A-Way, LLC is purchasing the subject property in good faith.

141.     The Debtor is selling the property in good faith.

142.     Right-A-Way, LLC is paying fair market value for the subject property.

143.     Neither the Debtor, Alpine, or Bertoia have any interest in Right-A-Way, LLC.

144.     Accordingly the within sale does not involve any "insiders."

**The Bankruptcy Rules**

145.     F.R.Bankr.P. 2002(a) provides that a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, shall provide a minimum of twenty-one (21) days notice unless the court for cause shown shortens the time or directs another method of giving notice.

146.     F.R.Bankr.P. 6004(c) provides that "A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold."

147.     F.R.Bankr.P. 6004(c) also provides that the notice required by subdivision (a) of the rule shall include the date of the hearing on motion and the time within which objections may be filed and served on the Debtor-In-Possession or Trustee.

148.     L.B.R. 6004-1(a) provides that a motion to sell free and clear of liens under 11 U.S.C. § 363(f) must identify by name the lien holders whose property rights are affected by the motion.

149.     The affected lien holders must be served with a complete set of moving papers pursuant to F.R.Bankr.P. 7004(b).

150.     L.B.R. 6004-1(a) also provides that the motion must allege the factual basis demonstrating that the motion comes within one or more subsections of 11 U.S.C. § 363(f)(1)-(5).

151.     L.B.R. 6004-1(c) provides that the proposed form of order granting a motion to sell free and clear of liens must specify each lienholder whose interest is to be affected by the order and whether such liens will attach to the proceeds of the sale.

152.     The Debtor intends on filing a Motion to Shorten the Notice period for the within Motion from twenty-one (21) days to fourteen (14) days.

153.     The reasons for the Motion to Shorten Notice are specified in the Motion to Shorten Notice Period.

## THE SALE

154.     Pursuant to the Sale Agreement, the Debtors-In-Possession seeks to sell the estate's interest in the Property to Right-A-Way, LLC outside the ordinary course of business pursuant to Bankruptcy Code § 363(b).

155.     When determining whether to grant an application to use, sell or lease property of the estate other than in the ordinary course of business pursuant to Bankruptcy Code § 363(b), the Court must expressly find from the evidence presented before it at hearing a

14

good business reason to grant such an application. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983). *See also, In re Shipper*, 933 F.2d 513, 515 (7th Cir. 1991).

156.    The Debtors-In-Possession believe that there are good business reasons underlying the Sale Agreement and that the sale of the Property pursuant to the Sale Agreement is in the best interest of the Estate.

157.    ALC filed a Motion for Relief From Stay (Doc#33).

158.    Although the Court declined to grant relief from the automatic stay, the Court did schedule a final hearing on the issue for Friday, January 4, 2019 at 9:30 a.m.

159.    The Debtor believes that the sale of the subject property allows for the orderly disposition of the property in lieu of ALC's foreclosure.

160.    There is approximately $4,000,000.00 of equity above ALC's first lien on the property.

161.    This equity is available to pay the other secured or unsecured creditors who would otherwise be foreclosed out if ALC were granted relief from the automatic stay.

162.    Additionally, in addition to the fact that there is almost $4,000,000.00 of equity in subject property, ALC has been receiving monthly interest payments pursuant to 11 U.S.C. §362(d)(3).

163.    By the time of the hearing on the Motion for Relief from Stay on Friday, January 4, 2019 at 9:30 a.m., ALC would have received three (3) monthly interest payments pursuant to 11 U.S.C. §362(d)(3) totaling in excess of $100,000.00.

164.    At the preliminary hearing on ALC's Motion for Relief from Stay the Court pretty bluntly indicated that in order to avoid relief from stay the Debtor had better have filed a Motion to Approve one (1) of the two (2) pending purchase offers or the Debtor was capable of producing a loan commitment for the refinancing of the property.

165.    Given the short time frame, the Debtor has elected to accept the Right-A-Way, LLC offer to purchase the property for $9,000,000.00.

## LIENS AND ENCUMBRANCES

166.    The Debtors have obtained an Owners and Encumbrances Report from Land Title Guaranty Company on the subject real property. A copy of the O&E Report is attached hereto as **Exhibit "B"** and is incorporated herein by this reference as though fully set forth.

167.    The O&E is dated November 14, 2018.

168.     An updated title report was obtained on the property on December 11, 2018 from Fidelity National Title Company and a copy is attached hereto as **Exhibit "C."**

169.     The subject real property is encumbered by the following liens and interests in order of priority.

170.     On December 31, 2015 WPB executed an Assignment of Rents in favor of Aileron Investment Management, LLC ("Aileron") which was recorder January 8, 2016 with the Clerk and Recorder for the City and County of Denver at Reception Number 2016002631.

171.     On December 31, 2015 WPB executed a Construction Deed of Trust in favor of Aileron which was recorded January 8, 2016 with the Clerk and Recorder for the City and County of Denver at Reception Number 2016002630.

172.     The Aileron Assignment of Rents and Deed of Trust was to secure a Promissory Note dated December 31, 2015 in the original principal amount of $4,875,000.00 from WPB in favor of Aileron.

173.     On December 31, 2015 WPB executed an Assignment of Rents in favor of American Lending Center, LLC ("ALC") which was recorded January 8, 2016 with the Clerk and Recorder for the City and County of Denver at Reception Number 2016002426.

174.     On December 31, 2015 WPB executed a Construction Deed of Trust in favor of American Lending Center, LLC which was recorded January 8, 2016 with the Clerk and Recorder for the City and County of Denver at Reception Number 2016002425.

175.     The Assignment of Rents and the Construction Deed of Trust from WPB in favor of ALC was to guarantee repayment or to secure repayment on both the $5,700,000.00 Note (Promissory Note A) given to Aileron and a $4,500,000.00 Note given to American Lending Center, LLC (Promissory Note B).

176.     Upon information and belief ALC has represented that it has acquired Aileron's interest in Promissory Note A and in the above referenced Assignment of Rents and Deeds of Trust.

177.     ALC has represented that it is now the sole and singular secured creditor on the property by virtue of the Notes and Deeds of Trust.

178.     On January 8, 2016 Aileron also recorded a UCC Financing Statement with the Clerk and Recorder, City and County of Denver at Reception Number 2016002632.

179.     On January 8, 2016 ALC recorded a UCC Financing Statement with the Clerk and Recorder, City and County of Denver at Reception Number 2016002427.

16

180.     On April 5, 2018 ALC filed a Notice of Election and Demand for Sale by the Public Trustee of City and County of Denver, State of Colorado in Public Trustee sale number 2018-000146 at Reception Number 2018039950.

181.     ALC represented in the Notice of Election and Demand that notwithstanding the face amount of the two (2) Promissory Notes (Note A and Note B) that the outstanding principal balance as of the date of the Notice was $500,615.02 on Promissory Note A and $4,500,000.00 on Promissory Note B for a total outstanding principal balance of $5,000,615.02.

182.     In its Motion for Relief from Stay (Doc#33) filed on October 18, 2018, ALC asserted that as of the Petition date (October 3, 2018) the principal amount on Note A was $500,615.02, interest in the amount of $11,659.32 and late charges in the amount of $582.97.

183.     In its Motion for Relief from Stay (Doc#33) filed on October 18, 2018, ALC also represented that as of the Petition date $4,500,000.00 plus interest in the amount of $104,802.12 and late charges in the amount of $5,240.10 was due on Note B.

184.     Therefore, as of the Petition date ALC represented that the total amounts due on both Notes A and B was **$5,122,899.50**.

185.     ALC has represented that it has acquired Note A and Aileron's interest in the combined loans and that it is now the sole secured lender.

186.     In anticipation of a sale of the property WPB requested that ALC provide a payoff statement for the loan as of the end of 2018.

187.     On December 20, 2018 ALC's counsel sent a payoff figure which first represented that ALC now holds both subject Promissory Notes.  A copy of the December 20, 2018 payoff figure is attached hereto as **Exhibit "D."**

188.     The payoff letter and statement attached to the letter provided a payoff figure in the amount of **$5,310,330.26** through December 28, 2018.

189.     Counsel for ALC did note that certain figures needed to be updated including that legal fees and costs were only calculated through November 2018 and that legal fees and costs through December 2018 needed to be updated.

190.     It must be remembered that ALC has a security interest in the Northeast Bank - Management Control Account which has a minimum of $216,095.77 as is indicated by **Exhibit "E"** attached hereto.

191.     ALC has represented that upon payment of the balance due on both Notes that it will release the $216,095.77 held in the Northeast Bank account.

192.     As described below the Debtor intends to only pay ALC $5,000,000.00 at the time of the closing of the sale of the subject property.

193.     At the time of the filing of this Motion to Approve the Sale of the Property, ALC has **not** filed a Proof of Claim.

194.     The Debtor has not had a full opportunity to review ALC's purchase of Aileron's interest in Promissory Note A.

195.     The remainder, if any, of ALC's claim, if any, will attach to the remaining sale proceeds as is further described below.

## OTHER LIENS AND ENCUMBRANCES

196.     The financing statement recorded by Aileron Investment Management, LLC on January 8, 2016 against WPB was recorded at Reception Number 2016002632.

197.     A Notice of Mechanic's or Materialman's lien was recorded by Rio Grande Co. on November 6, 2017 against WPB at Reception Number 2017145592.  Rio Grande Co. filed its Statement of Lien as a supplier.  The Mechanic's lien was filed in the amount of $45,353.70.  This Creditor also filed a Proof of Claim (Claim Number 2) and in the Proof of Claim asserts a secured claim for $53,830.49.

198.     A Notice of Mechanic's or Materialman's lien was recorded by O'Brien Concrete Pumping - Colorado, Inc. on November 13, 2017 against WPB at Reception Number 2017147829. O'Brien Concrete Pumping - Colorado, Inc. filed its Statement of Lien as a supplier.  The Mechanic's lien was filed in the amount of $10,997.94.  This Creditor also filed a Proof of Claim (Claim Number 3) and in the Proof of Claim asserts a secured claim for $13,887.26.

199.     A Notice of Mechanic's or Materialman's lien was recorded United Rentals (North America), Inc. on November 27, 2017 against WPB at Reception Number 2017154289.  United Rentals (North America), Inc. filed its Statement of Lien as a supplier.  The Mechanic's lien was filed in the amount of $64,466.79.

200.     A Notice of Mechanic's or Materialman's lien was recorded by Redd Iron, Inc. on November 29, 2017 against WPB at Reception Number 2017155624.  Redd Iron, Inc. filed its Statement of Lien as a supplier.  The Mechanic's lien was filed in the amount of $53,220.40.

201.     A Notice of Mechanic's or Materialman's lien was recorded by Metro Building Products, Inc. on December 6, 2017 against WPB at Reception Number 2017159172.  Metro Building Products, Inc. filed its Statement of Lien as a supplier.  The Mechanic's lien was filed in the amount of $4,650.48.

202.     The financing statement recorded by Summit Services Group, LLC on December 11, 2017 against WPB was recorded at Reception Number 2017161020.  Summit Services Group, LLC filed its Statement of Lien as a supplier.  The Mechanic's lien was filed in the amount of $3,520.00.

203.     A Notice Extending Time to File Lien statement was recorded by Kumar Construction Management, Inc. on January 4, 2018 against WPB at Reception Number 2018001302.

204.     A Notice of Mechanic's or Materialman's lien was recorded by HD Supply Construction Supply, LTD d/b/a HD Supply Construction & Industrial - White Cap on January 16, 2018 against WPB at Reception Number 2018005377.  HD Supply Construction Supply, LTD et al. filed its Statement of Lien as a supplier.  The Mechanic's lien was filed in the amount of $3,556.12.

205.     A Notice of Mechanic's or Materialman's lien was recorded by Waste Connections of Colorado, Inc. on February 6, 2018 against WPB at Reception Number 2018014331.  Waste Connections of Colorado, Inc. filed its Statement of Lien as a supplier.  The Mechanic's lien was filed in the amount of $5,335.41.

206.     The Debtor asserts that there are issues with the alleged mechanic lien claims.

207.     C.R.S. §38-22-101 addresses who and how an entity may assert mechanic liens against real estate.

208.     The Debtor has not had an opportunity to review the liens to determine whether or not the amount of the liens are representative of the services or materials provided.

209.     As indicated above the General Contractor and third parties controlled the payment of claims and were supposed to monitor the percentage completion performance on the project.

210.     Colorado Law, specifically C.R.S. §38-22-109(4) requires that lien statements must be filed within four (4) months of the day the last worked was performed or materials were supplied by the lien claimant.

211.     Furthermore pursuant to Colorado Law, C.R.S. §38-22-109(10) a Notice of Intent to File a Lien automatically terminates six (6) months after filing.  Exceptions exist if improvements are not yet complete.

212.     Regardless of when a lien statement is filed, however, no lien statement shall remain effective longer than one (1) year from filing unless within thirty (30) days of the one (1) year anniversary of the filing the claimant files with the County Recorder an affidavit stating that improvements on the property have not been completed.  See C.R.S. §38-22-109(9).

213.     There are additional unknown facts and issues with respect to the Mechanic Lien Claimants.

214.     As an example, one (1) of the Mechanic Lien Claimants charged the Debtor for metal staircases for the subject property which were not delivered to the property and to which the creditor has maintained possession and control of.

215.     The new purchaser of the property may elect to buy these staircases from the Mechanic Lien Claimant which in essence would make the Mechanic Lien Claimant whole.

216.     Therefore, the Debtor does not propose paying the Mechanic Lien Claimants at the time of closing.

217.     The Mechanic Lien Claimants interest in the subject property, if any, will attach to the net sale proceeds pending further Order of the Court.

## THE DEVELOPMENT FEE PROGRAM

218.     The subject property is part of a Development Fee Program referenced in a resolution recorded February 28, 2007 at Reception Number 2007034333.

219.     The title company has requested that proof be provided that any fees due and owing for the Development Fee Program have been paid.

220.     The subject hotel property is located in the Gateway Park development near Denver International Airport.

221.     The City and County of Denver established a Development Fee Program to help build infrastructure, planning and programming.

222.     Gateway Impact fee Ordinance 863, Series 2000 (October 2000), provides for the collection of impact fees to finance Regional Infrastructure within the 4500 acre Gateway Park area. The impact fees are designed to collect sufficient revenues to pay (or the Gateway's proportional share or capital costs associated with specific facilities, such as major arterial roads, fire stations, regional parks and trails facilities and regional drainage improvements. The improvements to be financed with impact fees are for the benefit of more than one property.

223.     The impact fees do not finance capital costs which might be associated with other general government functions and services, such as general administration, the courts, hospitals or enterprise functions, such as water or sewer. They also exclude all non-capital costs, such as ongoing operation and maintenance or government facilities.

224.     Denver intends to continue use or its project-specific development review process to secure land for neighborhood scale parks and some road improvements, to require the

20

construction of some road improvements and to require on-site drainage improvements, consistent with the master plans for each drainage basin. The impact fees cover improvements not currently covered by the City's existing development review process or infrastructure policies.

225.     Section 50-60 (4) of the Revised Municipal Code provides for the annual adjustment of the costs and associated impact fees for the regional infrastructure based on the Colorado Department of Transportation Composite Construction Index for roads and the Engineering News-Record Inflation Construction Index for all other capital improvements.

226.     Section 50-59 (2) of the Revised Municipal Code provides for relevant special improvement districts or other governmental or quasi-governmental authority to provide or finance the applicable regional infrastructure and to receive credit for this subject to an intergovernmental agreement with the City. The Gateway Regional Metropolitan District has chosen to provide for its regional infrastructure through the collection or System Development fees.

227.     Additionally, the Sandcreek Metropolitan District was formed which is a quasi-municipal corporation and subdivision of the State of Colorado ("District") which was organized to provide services and construct roads, parks, drainage facilities and other amenities in and around the Gateway Business Park.

228.     C.R.S. §32-1-1001(1)(j), authorizes the Board to fix and from time to time increase or decrease fees, rates, tolls, penalties or charges for services, programs or facilities furnished by the District.

229.     The Board has in addition found and hereby declares that, in order to recoup the Costs, the District desires to fix a Development Fee against the Property (the "Fee"), to be payable in the amounts determined.

230.     At this time the Debtor is unaware of any fees that might be due and owing as a result of the Development Fee Program.

231.     **Research by the title company has also disclosed that the Development Fee for this portion of the property effected has been satisfied and that a partial release has been recorded**.

232.     Accordingly, the title company is removing this requirement from the title policy and any exceptions related thereto.

233.     Accordingly, no payments are anticipated for the Development Fee Program.

## <u>CITY AND COUNTY OF DENVER</u>

234. The title company has requested a release of the lien filed by the City and County of Denver in the amount of $121.38 plus penalties and interest based upon the lien recorded by the City on October 8, 2018 at Reception Number 2018127811.

235. The Debtor believes that this lien is the same as the attachment to the City and County of Denver's Proof of Claim number 1 in the amount of $134.81 for the Storm Drain lien.

236. As indicated below, the City and County of Denver also filed Proof of Claim number 1 asserting a total claim in the amount of $240,733.56.

237. The City asserted that $101,340.06 of this claim is secured.

238. The City asserted that of the claim amount $139,393.50 was unsecured.

239. The attachment to the Proof of Claim indicates that $139,393.50 is for Use Tax from the period January 1, 2015 through June 30, 2018.

240. The attachment to the Proof of Claim also indicated that $101,205.25 was delinquent Real Estate Taxes from January 1, 2017 through December 31, 2017.

241. The attachment to the Proof of Claim also indicated that $134.81 is for a Storm Drain lien effective January 1, 2018.

242. The Debtor proposes to pay the secured portion of the City's Proof of Claim in the amount of $101,340.06 for real estate property taxes from January 1, 2017 through December 31, 2017.

243. The Debtor also intends on paying the $134.81 for the Storm Drain lien at the time of closing.

244. The remainder, if any, of the City's claim will attach to the remaining net sales proceeds as is described below.

## **PROOFS OF CLAIM**

245. The Bar Date in the within case is set for January 14, 2019.  (see Doc#42)

246. The Notice of Bar Date was mailed and served upon all parties in the within case as is evidenced by the Certificate of Mailing (Doc#43-1).

247. As of the date of the filing of the within Motion only four (4) Proofs of Claim have been filed.

248. The order of filing of the Proofs of Claim are as follows:

22

1) Claim number one (1) was filed on November 6, 2018 by City and County of Denver in the amount of $240,733.56 with $101,340.06 being secured for services rendered.

2) Claim number two (2) was originally filed on November 20, 2018 by Rio Grande Co. and **subsequently transferred to Abbas Consulting** in the amount of $53,830.49 for building materials and supplies.

3) Claim number three (3) was originally filed on November 26, 2018 by O'Brien Concrete Pumping - Colorado, Inc. n/k/a OBC and **subsequently transferred to Frisco Acquisition, LLC** in the amount of $13,887.26 for building materials and supplies.

4) Claim number four (4) was originally filed on December 6, 2018 by HD Supply Construction Supply, LTD d/b/a HD Supply Construction & Industrial - White Cap and **subsequently transferred to Frisco Acquisition, LLC** in the amount of $4,445.38 for building materials and supplies.

249.     Claim number two (2) originally filed on November 20, 2018 by Rio Grande Co. was assigned to Abbas Consulting, Inc. on December 20, 2018.

250.     Claim number three (3) originally filed on November 26, 2018 by O'Brien Concrete Pumping - Colorado, Inc. n/k/a OBC was assigned to Frisco Acquisition, LLC on December 20, 2018.

251.     Claim number four (4) originally filed on December 6, 2018 by HD Supply Construction Supply, LTD et al was assigned to Frisco Acquisition, LLC on December 20, 2018.

252.     It is important to note that as of the date of the filing of the within Motion ALC has **<u>NOT</u>** filed a Proof of Claim.

253.     The Debtor does not intend on paying the above referenced alleged Mechanic Lien claims at the time of the closing of the sale of the subject property.

254.     The reason for the non-payment of the Mechanic Lien Claimants referenced by Claim Number 2, Claim Number 3, and Claim Number 4 are set forth above.

255.     The Debtor does intend on paying the secured claim for the City and County of Denver at the time of the closing of the sale of the subject property.

256.     The Debtor does NOT intend on paying the City and County of Denver's unsecured claim for Use Taxes at the time of the sale.

257.    Any portion of the Proofs of Claim which are not paid at the time of the closing of the subject property shall attach to the net sale proceeds to the extent they are determined to be allowed claims secured by an interest in the subject property.

## ALPINE HOSPITALITY, INC. AND WANDA BERTOIA

258.    Alpine Hospitality, Inc. and Wanda Bertoia are insiders of the Debtor.

259.    These parties have asserted a claim for pre-petition monies loaned or invested in the Debtor.

260.    Additionally these parties have paid monthly interest payments to ALC pursuant to 11 U.S.C. §362(d)(3) in order to prevent ALC from obtaining relief from the automatic stay.

261.    It is unclear whether or not these parties will assert an administrative expense claim against the estate.

262.    It is anticipated that Proofs of Claim will be filed by these parties and/or administrative expense claims.

263.    These claims, if any, shall attach to the net sales proceeds as is described below.

264.    These parties have estimated that their unsecured claim will be in excess of $5,000,000.00.

265.    Subsequent to the expiration of the bar date the Debtor will analyze all Proofs of Claim filed to determine which claims are entitled to priority.

## SUMMARY OF ALLEGED LIENS AND ENCUMBRANCES

| | | |
|---|---|---|
| Note A & B, DOT | ALC | $5,310,330.26 |
| Storm Drain Lien | City & County of Denver | $       134.81 |
| Real Property Taxes | City & County of Denver | $   101,340.66 |
| Mechanic lien | Rio Grande Co. | $     53,830.49 |
| Mechanic lien | O'Brien Concrete | $     13,887.26 |
| Mechanic lien | United Rentals | $     64,466.79 |
| Mechanic lien | Redd Iron, Inc. | $     53,220.40 |
| Mechanic lien | Metro Building Products | $      4,650.48 |
| Mechanic lien | Summit Services Group | $      3,520.00 |
| Mechanic lien | HD Supply Construction | $      3,556.12 |
| Mechanic lien | Waste Connections | $      5,335.41 |
| Use Taxes | City and County of Denver | $   139,393.50 |
| TOTALS | | $5,818,132.97 |

266.    Accordingly, the Debtor believes that the order of priority would be as follows:

| | | |
|---|---|---|
| Note A & B, DOT | ALC | $5,310,330.26 |
| Storm Drain Lien | City & County of Denver | $      134.81 |
| Real Property Taxes | City & County of Denver | $  101,340.66 |
| Mechanic lien | Rio Grande Co. | $   53,830.49 |
| Mechanic lien | O'Brien Concrete | $   13,887.26 |
| Mechanic lien | United Rentals | $   64,466.79 |
| Mechanic lien | Redd Iron, Inc. | $   53,220.40 |
| Mechanic lien | Metro Building Products | $    4,650.48 |
| Mechanic lien | Summit Services Group | $    3,520.00 |
| Mechanic lien | HD Supply Construction | $    3,556.12 |
| Mechanic lien | Waste Connections | $    5,335.41 |
| Use Taxes | City and County of Denver | $  139,393.50 |
| TOTALS | | $5,818,132.97 |

267.     Pursuant to the Contract to Buy and Sell Real Estate (Commercial), CBRE, Inc. as the Court approved realtors for the Debtor are entitled to a three percent (3%) commission in the amount of $270,000.00.

268.     The realtor has estimated the net sale proceeds from the sale of the subject property including payment of real estate commission, closing costs and transactional fees (except liens or encumbrances) to be as follows:

| | |
|---|---|
| Gross amount due seller | $9,000,000.00 |
| CBRE 3% | -$  270,000.00 |
| Less reductions in amount due seller | |
| (closing costs, transaction fees) | - Undetermined |
| **Cash to seller** | **$8,730,000.00** |

269.     Accordingly, there are sufficient funds from the sale of the subject property at the contract price of $9,000,000.00 to pay all consensual liens and encumbrances plus pay the associated transactional costs and real estate commissions.

## LIENS TO BE PAID AT CLOSING

270.     The Debtors intend to pay the following liens and encumbrances at the time of closing in the approximate amounts indicated below:

| | | |
|---|---|---|
| Note A & B, DOT | ALC | $5,000,000.00 |
| Lien | City & County of Denver | $      134.81 |
| Property Tax | City & County of Denver | $  101,340.06 |
| TOTALS | | $5,101,474.87 |

## LIENS NOT PAID AT CLOSING

271.     The Debtor does **not** intend to pay the following non-consensual liens and encumbrances at the time of closing as indicated below:

| | | | |
|---|---|---|---|
| Mechanic lien | Rio Grande Co. | $ | 53,830.49 |
| Mechanic lien | O'Brien Concrete | $ | 13,887.26 |
| Mechanic lien | United Rentals | $ | 64,466.79 |
| Mechanic lien | Redd Iron, Inc. | $ | 53,220.40 |
| Mechanic lien | Metro Building Products | $ | 4,650.48 |
| Mechanic lien | Summit Services Group | $ | 3,520.00 |
| Mechanic lien | HD Supply Construction | $ | 3,556.12 |
| Mechanic lien | Waste Connections | $ | 5,335.41 |
| Use Taxes | City and County of Denver | $ | 139,393.50 |
| TOTALS | | $ | 341,860.45 |

272.     As indicated above Proof of Claim number two (2) originally filed on November 20, 2018 by Rio Grande Co. was assigned to Abbas Consulting, Inc. on December 20, 2018.

273.     Similarly, Claim number three (3) originally filed on November 26, 2018 by O'Brien Concrete Pumping - Colorado, Inc. n/k/a OBC was assigned to Frisco Acquisition, LLC on December 20, 2018.  Claim number four (4) originally filed on December 6, 2018 by HD Supply Construction Supply, LTD et al was assigned to Frisco Acquisition, LLC on December 20, 2018.

274.     The Debtor has identified the original creditor filing the lien, claim, or proof of claim notwithstanding the transfer of the claim.

275.     Both Abbas Consulting, Inc. and Frisco Acquisition, LLC have also received Notice in the within case of the Motion as well as the original creditors.

276.     The Debtor proposes that any monies not paid as above shall remain in escrow with the title company, Fidelity National Title Company or alternatively in the Debtor's DIP account at Wells Fargo.

## **THE UNITED STATES TRUSTEE**

277.     The United States Trustee's office has taken the position that sale of the subject property requires the payment of United States Trustee's quarterly fees which are estimated to be one percent (1%) of the gross sales price of $9,000,000.00 which would be $90,000.00.

278.     The Debtor believes that a quarterly fee of one percent (1%)  based upon the sales price of the subject property is excessive and the Debtor is researching whether the Debtor has any flexibility with respect to the amount of the quarterly fees.

279.     The Debtors intend on paying the United States Trustee's quarterly fees associated with the sale of the subject property out of any proceeds to the Debtor-In-Possession.

## THE NON-CONSENSUAL LIENS AND ENCUMBRANCES

280.     The non-consensual liens and encumbrances are described above including with respect to existing Proofs of Claim.

281.     The Debtor anticipates that additional Proofs of Claim will be filed although the amount should be nominal.

## 11 U.S.C. § 363(f)(1)-(5)

282.     The Debtors believe that each of the above listed non-consensual liens or encumbrances comes within one or more of the subsections of 11 U.S.C. § 363(f)(1)-(5).

283.     The Debtor believes that certain subsections of 11 U.S.C. §363(f) apply in the within case.

284.     The price at which the property is being sold is significantly greater than the aggregate value of all liens on the subject property.

285.     Additionally, there are genuine issues regarding the validity of the various liens including but not limited to the amount of the liens and/or whether the liens are simply unsecured debts.

286.     The Debtor believes that all of the creditors (including the lien claimants) could be compelled in an legal or equitable proceeding to accept a money satisfaction of their interest in the subject property.

287.     As disclosed below the Debtor intends on paying the only Notes and Deeds of Trust a total of $5,000,000.00 at closing with the balance, if any, of ALC's claim to attach to the net sale proceeds.

288.     Similarly, the Debtor only intends to pay the City and County of Denver's Storm Drain Lien described below in the amount of $134.81.

289.     The Debtor also intends on paying the City and County of Denver's Secured Lien for real property taxes in the amount of $101,205.25 for the period January 1, 2017 through December 31, 2017.

290.     The Debtor believes that the remaining mechanic lien claimants and other claims are in bona fide dispute.

291.     Nevertheless, all net sale proceeds will be escrowed and any of the other lien claimants interest in the property, if any, will attach to the net sale proceeds.

292.     Accordingly all creditors in the within case are protected.

293.     Accordingly, pursuant to 11 U.S.C. § 363(f)(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest.

## COMPENSATION OF REALTOR

294.     The brokers who obtained the subject contract is Mark Darrington and Larry Kaplan of CBRE, Inc.

295.     Said brokers were retained as a professional on behalf of the bankruptcy estate and accordingly an application for employment was filed on November 2, 2018 (Doc#44).

296.     On November 14, 2018, Mark Darrington and Larry Kaplan of CBRE, Inc. were approved to be the estate's broker (Doc#81).

297.     The listing agreement of CBRE, Inc. and the Debtor provides for a three percent (3%) commission.

298.     On the sale of the property at $9,000,000.00 the three percent (3%) commission is $270,000.00.

299.     Brokers commissions are as follows:

CBRE, Inc.               $270,000.00

300.     The realtors' commission is a normal and ordinary transactional cost and the Debtors seek approval to pay the realtor's commission at the time of closing along with the other transactional costs, including those identified above.

## CONCLUSION

301.     Right-A-Way, LLC desires to assign its rights pursuant to the Contract to a newly formed entity with which it is affiliated: Denver East Hospitality LLC, a Colorado limited liability company.  Denver East Hospitality, LLC is ready, willing and able to purchase the property pursuant to the terms of the Contract.  Debtor consents to the assignment of the Buyer's rights and obligations under the Contract to Denver East Hospitality, LLC.

302.     For the above and foregoing reasons, the Debtor believes the sale of the subject property to Denver East Hospitality, LLC on the terms of the Contract should be approved.

303.     The Debtor additionally believes that it is appropriate that $5,000,000.00 be paid toward ALC's two (2) Promissory Notes secured by the Deed of Trust against the property at the time of the subject property with the balance of ALC's claim, if any, to attach to the net sale proceeds pending the filing of a Proof of Claim by ALC and the determination of ALC's allowed claim.

304.     The Debtor additionally believes that it is appropriate to pay the City and County of Denver for the Storm Drain Lien and real property taxes associated with the subject property at the time of closing but that the claim of the City and County of Denver for Use Taxes be reserved.

305.     The Debtor believes it is appropriate to not pay the various Mechanic Lien Claimants and Proofs of Claim pending determination of the allowed amounts of said claims and whether or not they are secured.

306.     The Debtor believes that selling the property free and clear of the liens and claims identified above is in the best interest of the estate and the creditors since there is sufficient equity above and beyond all of the liens and claims.

307.     The Debtor also believes it is appropriate to authorize the Debtor to pay all normal closing transaction costs and the real estate commission of three percent (3%) to CBRE, Inc. at the time of the closing of the subject property.

308.     The Debtor requests authorization the sale of the property pursuant to the terms of the Contract described in the Motion.

309.     The Debtor requests authorization that such sale to be free and clear of all liens, claims, interests, and  encumbrances.

310.     The Debtor requests authorization that the Debtor pay at closing, without further Court approval, $5,000,000.00 toward the secured debt owed to American Lending Center, LLC ("ALC") with the balance, if any, owed to ALC to attach to the net sale proceeds.

311.     The Debtor requests authorization that the Debtor pay at closing $134.81 to the City and County of Denver for a Storm Drain lien.

312.     The Debtor requests authorization that the Debtor pay at closing the amount of $101,340.06 for past due real property taxes owed to the City and County of Denver.

313.     The Debtor requests authorization, without further Court Order, the payment of a three percent (3%) real estate commission to Larry Kaplan and Mark Darrington of CBRE, Inc. for real estate commission for the sale of the subject property.

314.     The Debtor requests authorization that the payment of all traditional and reasonable closing costs including prorated real property taxes, etc.

315.     The Debtor requests authorization that the payment of the net sale proceeds into escrow with Fidelity National Title Company to be held pending further Order of the Court or alternatively authorizing the payment of the net sale proceeds into the Debtor-In-Possession's "DIP" account at Wells Fargo Bank.

316.     The Debtor requests authorization that any liens or encumbrances actually secured by the subject Property shall also be secured and attached to the net sale proceeds pending further Order of the Court.

317.     The Debtor requests authorization that the payment of any quarterly fees due and owing to the United States Trustee's office resulting from the sale of the subject property.

318.     Granting such additional and further relief as the Court deems just and proper.

WHEREFORE, WPB Hospitality, LLC respectfully pray this Honorable Court approve the sale of the subject real property free and clear of the non-consensual liens, claims and encumbrances identified above and for authority to pay the consensual liens and encumbrances set forth herein as well as to pay the realtor commissions, closing costs and transactional fees and for other and further relief that this Court deems just and proper.

Dated this 3rd day of January 2018          Respectfully submitted:
                                            LINDQUIST-KLEISSLER & COMPANY, LLC

                                            /s/ Arthur Lindquist-Kleissler
                                            Arthur Lindquist-Kleissler #9822
                                            950 S. Cherry Street #418
                                            Denver CO 80246
                                            tele: (303) 691-9774
                                            fax: (303) 200-8994
                                            E-Mail: arthuralklaw@gmail.com

G:\FIRM\CLIENTS\WPB HOSPITALITY, LLC\MOTION TO APPROVE SALE OF PROPERTY\190103 Motion to approve sale of property free and clear (final)