# ONE REPORT



**Land Title**
GUARANTEE COMPANY
WWW.LTGC.COM

| | | | |
|---|---|---|---|
| **To:** | LINDQUIST-KLEISSLER & COMPANY | **Date Ordered:** | 11-14-2018 |
| **Attn:** | SEAN MARTIN | **Order Number** | 776755 |
| **Fax:** | | **Phone:** | 303-691-9774 |

---

**Address:** 16161 E 40TH AVE  DENVER, CO          **County:** DENVER

## LEGAL DESCRIPTION

PLEASE SEE DOCUMENT FOR COMPLETE LEGAL DESCRIPTION **NAME SEARCH NOTE: BANKRUPTCY 10/3/2018 NO. 18636 WPB HOSPITALITY LLC**

## OWNERSHIP & ENCUMBRANCES

**Certification Date:** 11-07-2018

**OWNERSHIP:** WPB HOSPITALITY LLC, A COLORADO LIMITED LIABILITY COMPANY

| Doc Type | Doc Fee | Date | Reference# |
|---|---|---|---|
| WARRANTY DEED | $296.98 | 06-05-2009 | 69767 |

### ENCUMBRANCES AND OTHER DOCUMENTS

| Item | Payable To | Amount | Date | Reference# |
|---|---|---|---|---|
| CITY LIEN | | $121.38 | 10-08-18 | 127811 |
| NOTICE OF ELECTIO | AM LENDING CENTER LLC | | 04-05-18 | 39950 |
| MECHANIC'S LIEN | WASTE CONNECTIONS COLORADO INC | $5,335.41 | 02-06-18 | 14331 |
| MECHANIC'S LIEN | HD SUPPLY CONSTRUCTION SUPPLY | $3,556.12 | 01-16-18 | 5377 |
| MECHANIC'S LIEN | SUMMIT SERVICES GROUP LLC | $3,520.00 | 12-11-17 | 161020 |
| MECHANIC'S LIEN | METRO BLDG PRODUCTS INC | $4,650.48 | 12-06-17 | 159172 |
| MECHANIC'S LIEN | REDD IRON INC & ATKINS DAVID | $53,220.40 | 11-29-17 | 155624 |
| MECHANIC'S LIEN | UNITED RENTALS NORTH AM INC | $64,466.79 | 11-27-17 | 154289 |
| ASSIGNMENT OF REN | AILERON INVEST MANAGEMENT LLC | | 01-08-16 | 2631 |
| DEED OF TRUST | ALLERON INVEST MANAGEMENT LLC | $0.01 | 01-08-16 | 2630 |
| ASSIGNMENT OF REN | AM LENDING CENTER LLC | | 01-08-16 | 2426 |

*Cust Ref#*

**By:** MARY HANISKO
**Land Title**
**Property Resource Specialist**
**Email:** oe@ltgc.com
**Phone:** 303-850-4190
**Fax:** 303-393-4827
Form OE.WEB  06/06

This ONE REPORT is based on a limited search of the county real property records and is intended for informational purposes only. The ONE REPORT does not constitute any form of warranty or guarantee of title or title insurance, and should not be used by the recipient of the ONE REPORT as the basis for making any legal, investment or business decisions. The recipient of the ONE REPORT should consult legal, tax and other advisors before making any such decisions. The liability of Land Title Guarantee Company is strictly limited to (1) the recipient of the ONE REPORT, and no other person, and (2) the amount paid for the ONE REPORT.

# ONE REPORT

**OWNERSHIP & ENCUMBRANCES**                    **Order Number**   776755

| **Item** | **Payable To** | **Amount** | **Date** | **Reference#** |
|---|---|---|---|---|
| DEED OF TRUST | AM LENDING CENTER LLC | $10,200,000.00 | 01-08-16 | 2425 |

**LEGAL Continued**

PLEASE SEE DOCUMENT FOR COMPLETE LEGAL DESCRIPTION **NAME SEARCH NOTE: BANKRUPTCY 10/3/2018 NO. 18636 WPB HOSPITALITY LLC**

Form OE.ITEM.OVERFLOW



**Prepared For:**
**LINDQUIST-KLEISSLER & COMPANY**
**SEAN MARTIN**

**Reference:**     16161 E 40TH AVE  DENVER, CO

**Attached are the additional documents you requested:**

| Doc Type | Recorded | Reception#/BookPage |
|----------|----------|---------------------|
| UNIFORM COMMERCIAL CODE | 01-08-16 | 2632 |
| UNIFORM COMMERCIAL CODE | 01-08-16 | 2427 |

MARY HANISKO
**Land Title**
**Property Resource Specialist**
**Email:**     mhanisko@ltgc.com
**Phone:**     303-850-4193
**Fax:**       303-393-4827
ADD.DOCS  776755

| | |
|---|---|
| Page: 1 of 5 | Reception #: 2009069767 |
| 06/05/2009 01:13 P | R:$ 26.00    D:$ 296.98 |
| eRecorded in C/C of Denver, CO | Doc Code: WD |
| Stephanie Y. O'Malley, Clerk and Recorder | |

## SPECIAL WARRANTY DEED

THIS DEED, dated this 29th day of May, 2009, between Indano Holdings, LLC, a Colorado limited liability company of the County of Arapahoe and State of Colorado, grantor(s) and WPB Hospitality, LLC, a Colorado limited liabililty company  whose legal address is 5466 So. Hannibal Court, Aurora of the County of Arapahoe and State of Colorado, grantee(s):

WITNESS, that the grantor(s), for and in consideration of the sum of TWO MILLION NINE HUNDRED SIXTY NINE THOUSAND EIGHT HUNDRED TWENTY FOUR AND 36/100 DOLLARS ($2,969,824.36), the receipt and sufficiency of which is hereby acknowledged, has/have granted, bargained, sold and conveyed, and by these presents do(es) grant, bargain, sell, convey and confirm unto the grantee(s), its heirs and assigns forever, all the real property, together with improvements, if any, situate, lying and being in the County of Denver and State of Colorado, described as follows:

A PARCEL OF LAND BEING A PORTION OF PLOT 1, BLOCK 1, GATEWAY PARK IV - DENVER FILING NO. 7, ACCORDING TO THE PLAT THEREOF RECORDED JANUARY 25, 2002 IN PLAT BOOK 33 AT PAGES 95 AND 96, CITY AND COUNTY OF DENVER, STATE OF COLORADO, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID PLOT 1;
THENCE NORTH 89 DEGREES 52 MINUTES 06 SECONDS EAST ALONG THE NORTH LINE OF SAID PLOT 1 A DISTANCE OF 295.63 FEET TO THE TRUE POINT OF BEGINNING;

THENCE NORTH 89 DEGREES 52 MINUTES 06 SECONDS EAST ALONG THE NORTH LINE OF SAID PLOT 1 A DISTANCE OF 396.64 FEET TO THE NORTHEAST CORNER OF SAID PLOT 1;
THENCE THE FOLLOWING THREE (3) COURSES ALONG THE EAST LINE OF SAID PLOT 1;

1. THENCE SOUTH 10 DEGREES 26 MINUTES 16 SECONDS WEST A DISTANCE OF 95.82 FEET TO A POINT OF CURVE;

2. THENCE ALONG THE ARC OF A CURVE TO THE LEFT HAVING A CENTRAL ANGLE OF 10 DEGREES 34 MINUTES 10 SECONDS, A RADIUS OF 315.00 FEET AND AN ARC LENGTH OF 58.11 FEET;

3. THENCE SOUTH 00 DEGREES 07 MINUTES 54 SECONDS EAST A DISTANCE OF 307.25 FEET TO THE SOUTHEAST CORNER OF SAID PLOT 1;

☐THENCE THE FOLLOWING FOUR (4) COURSES ALONG THE SOUTH LINE OF SAID PLOT 1;

1. THENCE SOUTH 89 DEGREES 52 MINUTES 06 SECONDS WEST A DISTANCE OF 100.00 FEET;

2. THENCE SOUTH 00 DEGREES 07 MINUTES 54 SECONDS EAST A DISTANCE OF 5.00 FEET TO A POINT ON THE NORTH RIGHT-OF-WAY LINE OF 40TH AVENUE AS DEDICATED BY 40TH AVENUE, CHAMBERS ROAD-PENA BOULEVARD SUBDIVISION RECORDED MAY 6, 1997 IN PLAT BOOK 31 AT PAGES 52 THROUGH 54 OF SAID CITY AND COUNTY OF DENVER RECORDS.

3. THENCE SOUTH 89 DEGREES 52 MINUTES 06 SECONDS WEST ALONG THE NORTH RIGHT-OF-WAY LINE OF SAID 40TH AVENUE A DISTANCE OF 250.09 FEET;

4. THENCE SOUTH 89 DEGREES 52 MINUTES 04 SECONDS WEST ALONG THE NORTH RIGHT-OF-WAY LINE OF SAID 40TH AVENUE A DISTANCE OF 23.63 FEET;

THENCE NORTH 00 DEGREES 07 MINUTES 54 SECONDS WEST A DISTANCE OF 464.23 FEET TO THE TRUE POINT OF BEGINNING.

NOTE:  THE ABOVE LEGAL DESCRIPTION WAS CREATED BY CREIGHTON R. MOORE, PLS NO. 10945.

also known by street and number as:  Pt of Plot 1 Block 1 Gateway Park IV, Denver, CO 80239
assessor's schedule or parcel number:

TOGETHER with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand whatsoever of the grantor(s), either in law or equity, of, in and to the above bargained premises, with the hereditaments and appurtenances;

TO HAVE AND TO HOLD the said premises above bargained and described, with the appurtenances,

File No.: F223256
SPECIAL WARRANTY DEED

| Page: 2 of 5 | Reception #: 2009069767 |
|---|---|
| 06/05/2009 01:13 P | R:$ 26.00    D:$ 296.98 |
| eRecorded in C/C of Denver, CO | Doc Code: WD |
| Stephanie Y. O'Malley, Clerk and Recorder | |

## SPECIAL WARRANTY DEED
### (Continued)

TO HAVE AND TO HOLD the said premises above bargained and described, with the appurtenances, unto the grantee(s), its heirs and assigns forever.  The grantor(s), for its heirs, personal representatives, successors and assigns, do(es) covenant and agree that its shall and will WARRANT AND FOREVER DEFEND the above bargained premises in the quiet and peaceable possession of the grantee(s), its and assigns, against all and every person or persons claiming the whole or any part thereof, by, through or under the grantor(s), except:

See Exhibit "A" attached hereto and by this reference incorporated herein.

IN WITNESS WHEREOF, the grantor(s) has/have executed this deed on the date set forth above.

Indano Holdings, LLC, a Colorado limited
liability company, its Exchange
Accommodation Titleholder

By: Finney Investments, LLC, a Colorado
limited liability company, its sole member

By: _____
Gary P. Gorman, Manager

STATE OF Colorado

COUNTY OF

The foregoing instrument was acknowledged before me this 28th day of *may*, 2009 by

Gary P. Gorman, Manager

Witness my hand and official seal

_____
Notary Public

BRIDGET QUANDT
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires 05/14/2011

My Commission Expires:

05-14-2011

Name and Address of Person Creating Newly Created Legal Description (§ 38-35-106.5, C.R.S.)

After Recording Return to:

File No.: F223256
SPECIAL WARRANTY DEED

| Page: 3 of 5 | Reception #: 2009069767 |
|---|---|
| 06/05/2009 01:13 P | R:$ 26.00    D:$ 296.98 |
| eRecorded in C/C of Denver, CO | Doc Code: WD |
| Stephanie Y. O'Malley, Clerk and Recorder | |

## EXHIBIT "A"

1. Taxes due and payable; and any tax, special assessments, charge or lien imposed for water or sewer service, or for any other special taxing district.

2. The right of the proprietor of a vein or lode to extract or remove his ore, should the same be found to penetrate or intersect the premises thereby granted and rights-of-way for ditches and canals as reserved in United States Patents recorded November 30, 1889 in Book A25 at Page 225 and March 12, 1892 in Book A24 at Page 172, and any and all assignments thereof or interests therein.

3. One-half of all oil and mineral rights as reserved by Anna Richards in Deed recorded June 27, 1945 in Book 307 at Page 469, and any and all assignments thereof, or interests therein.

4. Reservation by the Union Pacific Land Resources Corporation of all minerals and all mineral rights of every kind and character now know to exist or hereafter discovered, including, without limiting the generality of the foregoing, oil and gas and rights thereto, together with the sole, exclusive and perpetual right to explore for, remove and dispose of, said minerals by any means or methods suitable to said Union Pacific corporation, but without entering upon or using the surface of the lands, and in such manner as not to damage the surface of the lands or to interfere with the use thereof, as contained in General Warranty Deed recorded December 28, 1984 at Reception No. 58078, and any and all assignments thereof or interests therein.

5. Terms, conditions, provisions, agreements, covenants, restrictions and obligations specified under the General Warranty Deed, which was recorded December 28, 1984 at Reception No. 58078.

6. Reservation by the Union Pacific Land Resources Corporation of all minerals and all mineral rights of every kind and character now know to exist or hereafter discovered, including, without limiting the generality of the foregoing, oil and gas and rights thereto, together with the sole, exclusive and perpetual right to explore for, remove and dispose of, said minerals by any means or methods suitable to said Union Pacific corporation, but without entering upon or using the surface of the lands, and in such manner as not to damage the surface of the lands or to interfere with the use thereof, as contained in General Warranty Deed recorded December 5, 1985 at Reception No. 225, and any and all assignments thereof or interests therein.

7. Terms, conditions, provisions, agreements, covenants, restrictions and obligations specified under the General Warranty Deed, which was recorded December 5, 1985 at Reception No. 225.

8. Reservation by the Union Pacific Land Resources Corporation of all minerals and all mineral rights of every kind and character now know to exist or hereafter discovered, including, without limiting the generality of the foregoing, oil and gas and rights thereto, together with the sole, exclusive and perpetual right to explore for, remove and dispose of, said minerals by any means or methods suitable to said Union Pacific corporation, but without entering upon or using the surface of the lands, and in such manner as not to damage the surface of the lands or to interfere with the use thereof, as contained in General Warranty Deed recorded December 4, 1986 at Reception No. 58432, and any and all assignments thereof or interests therein.

9. Terms, conditions, provisions, agreements, covenants, restrictions and obligations specified under the General Warranty Deed, which was recorded December 4, 1986 at Reception No. 58432.

10. Reservation by the Union Pacific Land Resources Corporation of all minerals and all mineral rights of every kind and character now know to exist or hereafter discovered, including, without limiting the generality of the foregoing, oil and gas and rights thereto, together with the sole, exclusive and perpetual right to explore for, remove and dispose of, said minerals by any means or methods suitable to said Union Pacific corporation, but without entering upon or using the surface of the lands, and in such manner as not to damage the surface of the lands or to interfere with the use thereof, as contained in General Warranty Deed recorded December 17, 1987 at Reception No. 217775, and any and all assignments thereof or interests therein.

11. Terms, conditions, provisions, agreements, covenants, restrictions and obligations specified under the General Warranty Deed, which was recorded December 17, 1987 at Reception No. 217775.

12. Terms, conditions, provisions, agreements and obligations specified under the Non-Drilling Agreement, which was recorded July 19, 1995 at Reception No. 9500085835.

| Page: 4 of 5 | Reception #: 2009069767 |
|---|---|
| 06/05/2009 01:13 P | R:$ 26.00    D:$ 296.98 |
| eRecorded in C/C of Denver, CO | Doc Code: WD |
| Stephanie Y. O'Malley, Clerk and Recorder | |

13. Reservation by the Union Pacific Land Resources Corporation of all minerals and all mineral rights of every kind and character now know to exist or hereafter discovered, including, without limiting the generality of the foregoing, oil and gas and rights thereto, together with the sole, exclusive and perpetual right to explore for, remove and dispose of, said minerals by any means or methods suitable to said Union Pacific corporation, but without entering upon or using the surface of the lands, and in such manner as not to damage the surface of the lands or to interfere with the use thereof, as contained in Special Warranty Deed recorded July 19, 1995 at Reception No. 9500085838, and any and all assignments thereof or interests therein.

14. Terms, conditions, provisions, agreements, covenants, restrictions and obligations specified under the Special Warranty Deed, which was recorded July 19, 1995 at Reception No. 9500085838.

15. The effect of the inclusion of the subject property in the Gateway Park Metropolitan District, as disclosed by the instrument recorded March 8, 1996 at Reception No. 9600030501.

    Note: A Notice changing the name to the Sand Creek Metropolitan District recorded March 25, 1996 at Reception No. 9600039036. A Second Amendment to the Service Plan for said District recorded January 8, 1997 at Reception No. 9700003234. Notices of Special District Authorization or Issuance of General Obligation Indebtedness recorded July 15, 1997 at Reception No. 9700091152; July 22, 1998 at Reception No. 9800116369; November 18, 1998 at Reception No. 9800193552; December 13, 2002 at Reception No.'s 2000181262 and 2000181263; January 31, 2001 at Reception No. 2003017833; March 25, 2004 at Reception No. 2004078051 and April 5, 2004 at Reception No. 2004083205.

16. Covenants, conditions, lien rights and restrictions, (but omitting therefrom any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin, if any) which do not include a forfeiture or reverter clause, and any and all supplements, amendments, and annexations thereto, set forth in the Declaration recorded June 4, 1996 at Reception No. 9600076399.

    Note: Amendment of said covenants, conditions and restrictions (but omitting therefrom any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin, if any), by an instrument recorded March 13, 2002 at Reception No. 2002049550.

17. Terms, conditions, provisions, agreements and obligations specified under the Reuse Agreement, which was recorded August 12, 1997 at Reception No. 9700105655.

18. Terms, conditions, provisions, agreements and obligations specified under the Covenant and Permit, which was recorded February 6, 1998 at Reception No. 9800018524.

19. All items as set forth and shown on the Site Plan of Gateway Park IV West Streetscape. recorded April 13, 1998 at Reception No. 9800056144, and any and all supplements and amendments thereto.

20. All items as set forth and shown on the General Development Plan of Gateway Park IV West Kittredge East, recorded November 8, 1999 at Reception No. 9900193507, and any and all supplements and amendments thereto.

21. Terms, conditions, provisions, agreements and obligations specified under the Covenant and Permit, which was recorded July 31, 2001 at Reception No. 2001125115.

22. Terms, conditions, provisions, agreements, easements and obligations specified under the Declaration of Easement, which was recorded October 23, 2001 at Reception No. 2001179891, and Amendment thereto recorded November 20, 2001 at Reception No. 2001196014.

23. An easement for one or more water pipelines and incidental purposes granted to the Denver Board of Water Commissioners by the instrument recorded November 16, 2001 at Reception No. 2001194997, together with the terms, conditions, stipulations, provisions and obligations as contained therein.

24. An easement for one or more water pipelines and incidental purposes granted to the Denver Board of Water Commissioners by the instrument recorded December 11, 2001 at Reception No. 2001210989. together with the terms, conditions, stipulations, provisions and obligations as contained therein.

| Page: 5 of 5 | Reception #: 2009069767 |
|---|---|
| 06/05/2009 01:13 P | R:$ 26.00    D:$ 296.98 |
| eRecorded in C/C of Denver, CO | Doc Code: WD |
| Stephanie Y. O'Malley, Clerk and Recorder | |

25. Terms, conditions, provisions, agreements, easements and obligations specified under the Wastewater Easement and Indemnity Agreement, which was recorded April 2, 2002 at Reception No. 2002061126.

26. Terms, conditions, provisions, agreements, easements and obligations specified under the Declaration of Easement, which was recorded April 17, 2002 at Reception No. 2002071341.

27. Terms, conditions, provisions, agreements, easements and obligations specified under the Declaration of Easement, which was recorded October 28, 2002 at Reception No. 2002203306.

28. Terms, conditions, provisions, agreements, easements and obligations specified under the Wastewater Easement and Indemnity Agreement, which was recorded November 19, 2002 at Reception No. 2002219036.

29. Terms, conditions, provisions, agreements, easements and obligations specified under the Declaration of Easement, which was recorded May 21, 2004 at Reception No. 2004111743.

30. All items as set forth and shown on the Plats of Gateway Park IV - Denver Filing No. 5, recorded April 12, 2000 at Reception No. 2000051305, and of Gateway Park IV - Denver Filing No. 7, recorded January 25, 2002 at Reception No. 2002017281.

**2018127811**

Page: 1 of 1

10/08/2018 10:30 AM          R $0.00          D $0.00
City & County of Denver                 L
Electronically Recorded

00204-01-018-000

SD10 18

## IN THE MATTER OF RECORDING A NOTICE OF NON-PAYMENT OF STORM DRAINAGE SERVICE CHARGES, CERTIFICATION TO THE MANAGER OF FINANCE THEREFORE, AND LIEN THEREFOR

FIRST:          The name(s) of the owner(s) or reputed owner(s) of such property is/are:

WPB HOSPITALITY LLC
5466 S Hannibal Ct
Centennial, CO 80015-4282

SECOND:          The property to be charged with the lien is described as follows:

GATEWAY PARK IV FLG #7 B1     PLOT 1 EXC PT DIF RCP#
2007093097 RCD 06/15/07

also known by street number as:          16161 E 40th Ave

THIRD:          The amount of the indebtedness due and owing to the City and County of Denver for which this lien is recorded for the use of storm drainage system together with interest thereon at the legal rate.

$ 121.38

PLEASE TAKE NOTICE, that the owner or owners of the property described herein have failed, refused, or neglected to pay to the City and County of Denver the charges for the use of the storm drainage system of the City and County of Denver, that such fact of delinquency has been certified to the Manager of Finance of the City and County of Denver by the Manager of Public Works of the City and County of Denver and the notice thereof is hereby recorded with the Clerk and Recorder of the City and County of Denver in accordance with Section 56-118(b) of the Revised Municipal Code of the City and County of Denver.

EULOIS CLECKLEY
EXECUTIVE DIRECTOR OF PUBLIC WORKS
OF THE CITY AND COUNTY OF DENVER

Case:18-18636-EEB    Doc#:123-3    Filed:01/03/19    Entered:01/03/19 08:24:42    Page10 of
78

04/05/2018 10:52 AM          R $23.00          D $0.00
City & County of Denver                 NED
Electronically Recorded

# NOTICE OF ELECTION AND DEMAND FOR SALE
## BY THE PUBLIC TRUSTEE OF DENVER COUNTY, COLORADO

### Public Trustee Sale No. 2018-000146

TO:    **PUBLIC TRUSTEE OF DENVER COUNTY
STATE OF COLORADO**

Pursuant to the terms of the Deed of Trust described as follows:

| | |
|---|---|
| Original Grantor of Deed of Trust: | WPB Hospitality, LLC, a Colorado limited liability company |
| Original Beneficiary of Deed of Trust: | American Lending Center, LLC, a California limited liability company |
| Current Holder ("Holder") of Evidence of Debt ("Debt") Secured by Deed of Trust: | American Lending Center, LLC, a California limited liability company |
| Date of Deed of Trust: | December 31, 2015 |
| Recording Date of Deed of Trust: | January 8, 2016 |
| County of Recording: | Denver County |
| Reception No. of Recorded Deed of Trust: | 2016002425 |
| Original Principal Balance of Debt: | Promissory Note A - $5,700,000 Promissory Note B - $4,500,000 Total Principal Balance - $10,200,000 |
| Outstanding Principal Balance as of the Date of this Notice: | Promissory Note A - $500,615.02 Promissory Note B - $4,500,000 Total Outstanding Principal Balance - $5,000,615.02 |
| Description of property ("Property") Encumbered by Deed of Trust: | SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN Street Address:  16161 E. 40th Avenue, Denver, Colorado  80239. |

4819-4855-3055.1

You are hereby notified that the undersigned, on behalf of American Lending Center, LLC, a California limited liability company, declares that the covenants of the Deed of Trust dated December 31, 2015 ("Deed of Trust") have been violated. Therefore, the Holder of the Debt has elected to accelerate the entire indebtedness, declares that the Debt is immediately due and payable in full and elects to foreclose the property.

Demand is hereby made that you as Public Trustee named in said Deed of Trust, give notice of sale, advertise for sale and sell the Property for the purpose of paying the indebtedness thereby secured, attorneys' fees and the expenses of making said sale, all as provided by law and the terms of said Deed of Trust.

The Property is all of the property presently encumbered by the Deed of Trust. The covenant violations under the Debt or Deed of Trust or both on which this demand for foreclosure is based are including, but not limited to, failure to make payment on time or in the amount due, and failure to comply with one or more terms of a Construction Loan Agreement.

**THE LIEN OF THE DEED OF TRUST BEING FORECLOSED MAY NOT BE A FIRST LIEN.**

**THE PROPERTY TO BE FORECLOSED AND DESCRIBED HEREIN IS ALL OF THE PROPERTY CURRENTLY ENCUMBERED BY THE LIEN OF THE DEED OF TRUST.**

**THE LAW FIRM NAMED BELOW IS ACTING AS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

DATED this 30 th day of March, 2018.

MOYE WHITE LLP

By: _____

David A. Laird, #31067
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202
303-292-2900
303-292-4510 (facsimile)
david.laird@moyewhite.com
Attorneys for the Owner of the Evidence of Debt

American Lending Center, LLC
1 World Trade Center
Suite 1180
Long Beach, CA 90831

2

4819-4855-3055.1

EXHIBIT A

LEGAL DESCRIPTION OF PROPERTY

A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV – Denver Filing No. 7, being more particularly described as follows:

COMMENCING at the northwest corner of said Plot 1;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 295.63 feet to the true point of beginning;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 396.64 feet to the northeast corner of said Plot 1;

THENCE the following three (3) course along the East line of said Plot 1:

1. THENCE South 10 degrees 26 minutes 16 seconds West, a distance of 95.82 feet to a point of curve;
2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10 seconds, a radius of 315.00 feet and an arc length of 58.11 feet;
3. THENCE South 00 degrees 07 minutes 54 seconds East , a distance of 307.25 feet to the southeast corner of said Plot 1;

THENCE the following four (4) courses along the South line of said Plot 1:

1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;
2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue, as dedicated by 40th Avenue, Chamber Road – Pena Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and County of Denver Records;
3. THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 250.09 feet;
4. THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 23.63 feet;

THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 464.23 feet to the true point of beginning, City and County of Denver, State of Colorado.

3

4819-4855-3055.1



02/06/2018 02:00 PM
City & County of Denver
R $18.00

2018014331
Page: 1 of 2
D $0.00

L

Above Space Reserved for Recording

(If required by your jurisdiction, list above the name & address of: 1) where to return this form; 2) preparer; 3) party requesting recording.)

# Claim of Lien

Date of this Document:     **December 1, 2017**

Reference Number of Any related Documents:     **5311-31161695**

Lien holder:

| | |
|---|---|
| Name: | **WASTE CONNECTIONS OF COLORADO INC** |
| Street Address | **5500 FRANKLIN STREET** |
| City/St/Zip | **DENVER CO  80216** |

Property Owner:

| | |
|---|---|
| Name: | **WPB HOSPITALITY LLC** |
| Street Address | **5466 S HANNIBAL CT** |
| City/St/Zip | **CENTENNIAL CO  80015-4282** |

Abbreviated Legal Description ( i.e., lot, block, plat, or section, township, range, quarter/quarter or unit, building and condo

name):     **GATEWAY PARK IV FLG #7 B1 PLOT 1 EXC PT DIF RCP# 2007093097 RCD 6/15/07**

Assessor's Property Tax Parcel/ Account Number(s):     **0020401018000**

State of:     **COLORADO**

County of:     **DENVER**

Before me, the undersigned Notary Public personally appeared     **STEPHANIE SENA**

(Lienor) who duly sworn says that he/she is (the Lienor herein) (the agent of the lienor herein) whose address is

**5500 FRANKLIN ST, DENVER CO  80216**     and that in accordance with a contract with

**KUMAR CONSTRUCTION**     (Debtor) lienor furnished labor, services or materials

consisting of (describe specially fabricated materials separately):     **ROLL OFF DELIVERY, FUEL, TONNAGE,**

**DRY RUN FEES, TRIP CHARGES, CONTAMINATION FEES, DUMP RETURNS, DUMP FINALS, RENTAL FEES**

on the following described real property in   **DENVER**   County, State of

**COLORADO**   (Described real property sufficiently for identification including

street and number):  **GATEWAY PARK IV FLG #7 B1PLOT 1 EXC PT DIF RCP# 2007093097 RCD 06/15/17**

**16161 E 40TH AVE DENVER 80239**

_____

_____

_____ owned

by   **WPB HOSPITALITY LLC** _____ of a

total value   **THREE MILLION EIGHTY THREE THOUSAND NINE HUNDREDD NO/100**   Dollars ($   **3,083,900.00**   ) of which there

remains unpaid   **FIVE THOUSAND THREE HUNDRED THIRTY FIVE 41/100**   Dollars ($   **5,335.41**   ) and

furnished the first of the items on   **AUGUST 8, 2016** , and the last of the items on   **NOVEMBER 8, 2017**

and (if the lien is claimed by one not in privity with the Owner) that the lienor served his or her notice to Owner on

**DECEMBER 1, 2017** , by **CERTIFIED MAIL** _____ (method of service).

(method of service).

And, (if required) that the lienor served copies of the notice on the contract on _____

by _____ (method of service)

and on the subcontractor on _____ 20___ , by _____

(method of service and (if know) on the lender, on _____ 20___ , by _____

_____ (method of service).

Signed this _____ **1ST** _____ day of   **FEBRUARY** _____ 20**17**.

Lienor:   **WASTE CONNECTIONS OF COLORADO INC.**

By (officer or Agent):   *Stephanie Sena*

State of:   *Colorado*

County of:   *Adams*

On   *2-1-18* _____ , before me,   *Stephanie Sena*

appeared   *5500 Franklin St, Denver CO 80216* , personally known to me ( or proved to me on

the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and

acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their

signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Pamela D. Witt*

Signature of Notary

| PAMELA G WITT |
| NOTARY PUBLIC |
| STATE OF COLORADO |
| Notary ID 20044007732 |
| MY COMMISSION EXPIRES 03/03/2020 |

Affiant _____   Known   _X___   Produced ID

Type of ID _____

(seal)



2018005377
Page: 1 of 3

01/16/2018 10:21 AM          R $23.00          D $0.00
City & County of Denver                       L
Electronically Recorded

## STATEMENT OF LIEN

TO ALL WHOM IT JANUARY CONCERN:

KNOW YE, **HD Supply Construction Supply, Ltd d/b/a HD Supply Construction & Industrial – White Cap** wishing to avail itself of the provisions of the statute in such cases made and provided, makes the following statement of lien:

FIRST:   That the name of the owner and reputed owner of such property to be charged with the lien is:

**WPB Hospitality, LLC**

SECOND: That the name and mailing address of the person claiming the lien is:

**HD Supply Construction Supply, Ltd d/b/a**
**HD Supply Construction & Industrial - White Cap**          a supplier
**3100 Cumberland Boulevard**                                ~~a subcontractor~~
**Suite 1700**                                               ~~Principal Contractor~~
**Atlanta, GA 30339**

That the name of the person who furnished the material or performed the labor or services, or supplied the machinery, tools or equipment for which said lien is claimed is:

**HD Supply Construction Supply, Ltd d/b/a HD Supply Construction & Industrial – White Cap**

That the name of the principal contractor is:

**Kumar Construction Management, Inc and/or Kumer Construction Management Inc**

THIRD:   That the property to be charged with such lien is described as follows:

See Exhibit A

also known by street numbers as: 16161 East 40th Avenue, Denver, Colorado 80239

situate in the City and County of Denver, State of Colorado.  That the said lien is held for and on construction supplies and materials provided in the construction and/or improvements of buildings located on the subject real property.

FOURTH:  That the amount of indebtedness due or owing the claimant for which said lien is claimed, for construction supplies and materials is **$3,556.12** together with interest thereon at the legal rate.

HD Supply Construction Supply, Ltd
d/b/a HD Supply Construction & Industrial – White Cap
Claimant

By: _____
David B. Law, as attorney for Claimant
HD Supply Construction Supply, Ltd
d/b/a HD Supply Construction & Industrial – White Cap
Miller & Law, P.C.
1900 W. Littleton Blvd
Littleton, CO 80120
(303)722-6500

STATE OF COLORADO          )
                           ) ss
COUNTY OF ARAPAHOE         )

I, David B. Law, being of lawful age and being first duly sworn upon oath, do say that I am the attorney of the claimant herein named; that I have read the within statement of lien and abstract of indebtedness and know the contents thereof; and that the same is true and correct, to the best of my knowledge, information and belief, and is made on behalf of the claimant.

_____
David B. Law

Subscribed and sworn to before me in the County of Arapahoe, State of Colorado, this 4th day of January, 2018.

My commission expires: 12/26/20
Witness my hand and official seal.

_____
Notary Public

AMARIS ROYBAL
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20064042746
MY COMMISSION EXPIRES DEC 26, 2020

### NOTICE OF INTENT TO FILE A LIEN STATEMENT

**TO THE OWNER AND TO THE PRINCIPAL CONTRACTOR:**

Take Notice that the Lien Claimant set forth on the Statement of Lien contained on the reverse of this Notice claims a Mechanic's Lien for material or equipment supplied to or labor performed on the project situate upon the real property described on said Statement of Lien, for the amount stated. If payment is not made within ten (10) days, the Claimant intends to record said Statement of Lien in the County wherein the real property is located. This notice is given pursuant to Section 38-22-109(3) C.R.S.**\*

David B. Law, #27370
Miller & Law, P.C.                                              David B. Law, as attorney for Claimant
1900 West Littleton Boulevard                                   HD Supply Construction Supply, Ltd d/b/a
Littleton, Colorado 80120                                       HD Supply Construction & Industrial – White Cap
303-722-6500                                                    3100 Cumberland Boulevard
                                                                Suite 1700
                                                                Atlanta, GA 30339

### AFFIDAVIT OF SERVICE OR MAILING - OWNER

STATE OF COLORADO            )
                             ) ss
COUNTY OF ARAPAHOE           )

    The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was mailed by full certified mail, return receipt requested, to the last known address of the owner or reputed owner or his agent, as follows: **WPG Hospitality, LLC 5466 South Hannibal Court, Aurora, Colorado 80015** on the ___ day of January, 2018.

Subscribed and sworn to before me in the County of Arapahoe, State of Colorado, this ___ day of January, 2018.

My commission expires: _____
Witness my hand and official seal.

                                             Notary Public

### AFFIDAVIT OF SERVICE OR MAILING - CONTRACTOR

STATE OF COLORADO            )
                             ) ss
COUNTY OF ARAPAHOE           )

    The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was mailed by full certified mail, return receipt requested, to the last known address of the principal or prime contractor or his agent, as follows: **Kumar Construction Management, Inc, 3751 South Main Street 600-294, The Colony, Texas 75056 and/or a Kumer Construction Management Inc, 3751 South Main Street 600-294, The Colony, Texas 75056** on the ___ day of January, 2018.

Subscribed and sworn to before me in the County of Arapahoe, State of Colorado, this ___ day of January, 2018.

My commission expires: _____
Witness my hand and official seal.

                                             Notary Public

### AFFIDAVIT OF MAILING PRIOR TO FILING LIEN STATEMENT

STATE OF COLORADO            )
                             ) ss
COUNTY OF ARAPAHOE           )

    The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was served pursuant to Section 38-22-109(3) C.R.S. ***, as evidenced by the Affidavit of Service or Mailing, at least ten (10) days before the time of filing the Lien Statement with the County Clerk and Recorder.

Subscribed and sworn to before me in the County of Arapahoe, State of Colorado, this 16th day of January, 2018.

My commission expires: _____
Witness my hand and official seal.

                                             Notary Public

*strike according to fact.
**To be completed 10 or more days before the filing of Notice of Intent to File a Lien Statement, but prior to filing lien statement.
***38-22-109. Lien Statement. (3) In order to preserve any lien for work performed or materials furnished, there must be a notice of intent to file a lien statement served upon the owner or reputed owner of the property or his agent and the principal or prime contractor or his agent at least ten days before the time of filing the lien statement with the county clerk and recorder. Such notice of intent shall be served by personal service or by registered or certified mail, return receipt requested, addressed to the last known address of such persons, and an affidavit of such service or mailing at least ten days before filing of the lien statement with the county clerk and recorder shall be filed for record with said statement and shall constitute proof of such service.

A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV - Denver Filing No. 7, being more
particularly described as follows:

COMMENCING at the northwest corner of said Plot 1;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance
of 295.63 feet to the true point of beginning;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance
of 396.84 feet to the northeast corner of said Plot 1;

THENCE the following three (3) course along the East line of said Plot 1:

1. THENCE South 19 degrees 26 minutes 18 seconds West, a distance of 95.82 feet to a point of
curve;

2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10
seconds, a radius of 315.00 feet and an arc length of 58.11 feet;

3. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 307.25 feet to the southeast
corner of said Plot 1;

THENCE the following four (4) courses along the South line of said Plot 1:

1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;

2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the
North right-of-way line of 40th Avenue, as dedicated by 40th Avenue, Chambers Road - Pena
Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and
County of Denver Records;

3. THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said
40th Avenue, a distance of 250.09 feet;

4. THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said
40th Avenue, a distance of 23.63 feet;

THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 464.23 feet to the true point of
beginning, City and County of Denver, State of Colorado.



EXHIBIT
A

2017161020
Page: 1 of 4

12/11/2017 02:41 PM          R $28.00          D $0.00
City & County of Denver                    L
Electronically Recorded

## STATEMENT OF LIEN

In accordance with Article 22 of Title 38 of the Colorado Revised Statutes,

## SUMMIT SERVICES GROUP LLC

makes the following statement of lien.

FIRST.        That the name of the owner or reputed owner of such property to be charged with the lien is     WPB Hospitality, LLC a/k/a Best Western Premier DIA and/or Four Points by Sheraton a/k/a Western Host Inc., and/or The Sheraton LLC

SECOND.      That the name and mailing address of the person claiming the lien is

SUMMIT SERVICES GROUP LLC
15690 E 33RD AVE. , UNIT A
AURORA, CO 80011

☒ a subcontractor
☐ Principal Contractor.

That the name of the person who furnished the laborers or material, or performed the labor or services, or supplied the machinery, tools or equipment for which said lien is claimed is      SUMMIT SERVICES GROUP LLC

That the name of the principal contractor is   Kumar Construction Management, Inc. and/or Williams Construction Corp. and/or WPB Hospitality, LLC and/or Best Western Premier DIA and/or Four Points by Sheraton a/k/a Western Host Inc., and/or The Sheraton LLC

THIRD.       That the property to be charged with such lien is described as follows:
Gateway Park IV FLG #7, B1, Plot 1 EXC PT DIF

RCP #2007093097 RCD 6/15/07

See attached Exhibit A, City and County of Denver, State of Colorado

Also known as the City and County of Denver Assessor Parcel No. 0020401018000

Including but not limited to that space, area or building that is used, leased or occupied by Best

Western Premier DIA and/or Four Points by Sheraton a/k/a Western Host Inc. and/or The Sheraton LLC

also known by street number as 16161 E. 40th Avenue Denver, CO 80239 a/k/a Best Western Premier DIA and/or Four Points by Sheraton a/k/a Western Host Inc., and/or The Sheraton LLC
situate in the County of              Denver                    State of Colorado. That the said lien is held for and on account of

materials, supplies and goods furnished to and for incorporation into the subject real property.

FOURTH.     That the amount of indebtedness due or owing the claimant for which said lien is claimed, for laborers or material furnished, labor and services performed, machinery, tools and equipment supplied is $ 3,520.00 together with interest thereon at the legal rate.

SUMMIT SERVICES GROUP LLC
Claimant

By _____
JOEL TODD JONKER, General Manager

No. e180A. Rev. 7-00.   STATEMENT OF LIEN WITH NOTICE OF INTENT TO FILE A LIEN STATEMENT AND AFFIDAVITS OF
SERVICE © (Page 1 of 3)
Bradford Publishing, 1743 Wazee St., Denver, CO 80202 — 303-292-2500 — www.bradfordpublishing.com   -   eForm

STATE OF COLORADO }
                                             } ss.
County of                                }

I, _____ **Joel Todd Jonker** _____ , being
of lawful age and being first duly sworn upon oath, do say that I am ___ **General Manager** ___
_____ **Summit Services Group LLC** _____ the claimant herein
named; that I have read the within statement of lien and abstract of indebtedness and know the contents thereof; and that the
same is true and correct, to the best of my knowledge, information and belief, and is made on behalf of the claimant.

_____
Joel Todd Jonker

Subscribed and sworn to before me in the
of _____ Colorado _____ this __28__ day of _November_  County of _Adams_ , 20  17      , State

My Commission expires ____ 1-12-2021 ____.    Witness my hand and official seal.

_____
Notary Public

VIRGINIA PERISIERAS
NOTARY PUBLIC
State of Colorado
NOTARY ID 2009400153
My Commission Expires January 12, 2021

Name and Address of Person Creating Newly Created Legal Description (§ 38-35-106.5, C.R.S.)

## NOTICE OF INTENT TO FILE A LIEN STATEMENT

TO THE OWNER AND TO THE PRINCIPAL CONTRACTOR:

Take Notice that the Lien Claimant set forth on the Statement of Lien contained on the reverse of this Notice claims a
Mechanic's Lien for laborers or material or equipment supplied to or labor performed on the project situate upon the real prop-
erty described on said Statement of Lien, for the amount stated. If payment is not made within ten (10) days, the Claimant
intends to record said Statement of Lien in the County where the real property is located. This notice is given pursuant to
Section 38-22-109(3) C.R.S.***

| | |
|---|---|
| JEAN C. ARNOLD, #13126 | **Joel Todd Jonker, General Manager**   Signature |
| ARNOLD & ARNOLD, LLP | **Summit Services Group LLC** |
| 7691 Shaffer Parkway, Suite A | **15690 East 53rd Avenue** |
| Littleton, CO 80127 | **Aurora, CO 80011** |
| Attorney's Name and Address | Type Name and Address of Claimant Above |

### AFFIDAVIT OF SERVICE OR MAILING — OWNER

STATE OF COLORADO
_____ County of _Jefferson_ ____ } ss.

The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File
a Lien Statement was (personally served upon)* (mailed by fully prepaid registered* or certified* mail, return receipt
requested, to the last known address of)* the owner or reputed owner or his agent, as follows: WPB Hospitality, LLC a/k/a
Best Western Premier DIA, 16161 E. 40th Ave., Denver, CO 80011; 7373 S. Alton Way, Ste. 100, Centennial, CO*
on the _28th_ day of _November_ , 20  17  .
80112; 5466 S. Hannibal Crt., Centennial, CO 80015; Four

Points by Sheraton a/k/a Western Host Inc. and

The Sheraton LLC, 10400 Fernwood Rd.,**
Subscribed and sworn to before me in the _____    County of _Jefferson_ ____
State of _____ Colorado _____ , this _05th_ day of _November_ , 20  17  .

My commission expires: _____
Witness my hand and official seal.
**Bethesda, MD, 20817; 7700 E. Arapahoe Rd., Ste., 220,
Centennial, CO 80112

_____
Notary Public

No. e180A. (Page 2 of 3)   **VICKI VANSITTERT**
**NOTARY PUBLIC**
**STATE OF COLORADO**
**NOTARY ID 19964020530**
**MY COMMISSION EXPIRES JULY 14, 2021**

## AFFIDAVIT OF SERVICE OR MAILING — CONTRACTOR

STATE OF COLORADO  }
County of ___ Jefferson ___ } ss.

The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was (personally-served-upon)* (mailed by fully prepaid registered* or certified* mail, return receipt requested, to the last known address of)* the principal or prime contractor or his agent, as follows: Kumar Construction Management, Inc.,3751 S. Main St. 600-294, The Colony, TX 75056; 6210 Tower Rd., Denver, CO 80249; 3108*

on the ___25th___ day of ___November___ , 20 __17__ .
*S. Route 59, Ste. 124-116, Naperville, IL 60565;

Williams Construction Corp., 2701 W. Mansfield Ave.,

Englewood, CO 80110; and**

Subscribed and sworn to before me in the _____ County of ___ Jefferson ___
State of ___ Colorado ___ , this __25th__ day of __November__, 20 17 .

My commission expires: _____

Witness my hand and official seal.
**WPB Hospitalitly LLC a/k/a Best Western Permier DIA;
and Four Points by Sheraton a/k/a Western Host Inc.;

                                                    Notary Public

and The Sheraton LLC

### AFFIDAVIT OF SERVICE OR MAILING PRIOR TO FILING LIEN STATEMENT**

STATE OF COLORADO  }
County of ___ Jefferson ___ } ss.

The undersigned, being of lawful age and being first duly sworn, deposes and says that this Notice of Intent to File a Lien Statement was served pursuant to Section 38-22-109(3) C.R.S.***, as evidenced by the Affidavits of Service or Mailing, at least ten (10) days before the time of filing the Lien Statement with the County Clerk and Recorder.

Subscribed and sworn to before me in the _____ County of ___ Jefferson ___ .
State of ___ Colorado ___ , this __1?__ day of __December__ , 20 __17__ .

My commission expires _____
Witness my hand and official seal.

                                                    Notary Public

VICKI VANSITTERT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19964020530
MY COMMISSION EXPIRES JULY 14, 2021

*Strike according to facts.
*=To be completed 10 or more days after mailing or service of Notice of Intent to File a Lien Statement, but prior to filing lien statement.
**=38-22-109. Lien Statement. (3) In order to preserve any lien for work performed or laborers or materials furnished, there must be a notice of intent to file a lien statement served upon the owner or reputed owner of the property or the owner's agent and the principal or prime contractor or his or her agent at least ten days before the time of filing the lien statement with the county clerk and recorder. Such notice of intent shall be served by personal service or by registered or certified mail, return receipt requested, addressed to the last known address of such persons, and an affidavit of such service or mailing at least ten days before filing of the lien statement with the county clerk and recorder shall be filed for record with said statement and shall constitute proof of such service

No. e180A. (Page 3 of 3)

# EXHIBIT A

A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV - Denver Filing No. 7, being more particularly described as follows:

COMMENCING at the northwest corner of said Plot 1;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 295.63 feet to the true point of beginning;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 396.64 feet to the northeast corner of said Plot 1;

THENCE the following three (3) course along the East line of said Plot 1:

1. THENCE South 10 degrees 26 minutes 16 seconds West, a distance of 95.82 feet to a point of curve;

2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10 seconds, a radius of 315.00 feet and an arc length of 58.11 feet;

3. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 307.25 feet to the southeast corner of said Plot 1;

THENCE the following four (4) courses along the South line of said Plot 1:

1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;

2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue, as dedicated by 40th Avenue, Chambers Road - Pena Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and County of Denver Records;

3. THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 250.09 feet;

4. THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 23.63 feet;

THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 464.23 feet to the true point of beginning, City and County of Denver, State of Colorado.



2017159172
Page: 1 of 2
D $0.00

12/06/2017 12:59 PM          R $18.00
City & County of Denver                    L

## STATEMENT OF LIEN

**TO ALL WHOM IT MAY CONCERN:**

**KNOW YE,** That Metro Building Products, Inc., wishing to avail itself of the provisions of the statute in such cases made and provided, makes the following statement of lien:

**FIRST.** That the name of the owner or reputed owner of such property to be charged with the lien is:
*WPB Hospitality LLC*
*5466 S Hannibal Ct*
*Centennial, Colo 80015 4282*

**SECOND.** That the name and mailing address of the person claiming the lien is Metro Building Products, Inc., 2115 South Valentia Street, Denver, Colorado, 80231; a subcontractor.

That the name of the person who furnished the material or performed the labor or services, or supplied the machinery, tools or equipment for which said lien is claimed is Metro Building Products, Inc.

That the name of the principal contractor is *Kumar Construction*
*3751 Main 600-294*
*The Colony, Texas 75056*

**THIRD.** That the property to be charged with such lien is described as follows:
*Gateway Park IV FLG #7 BI*
*Plat 1 Exc Pt DIF RCP#2007093097 RCD 06/15/07*

Property also known by street number as *16161 E 40th Ave*

situated in the County of *Denver* State of Colorado. That the said lien is held for and on account of a failure to pay for goods and services furnished for the above described real property. The last day such goods and services provided being *8/10/17*

**FOURTH.** That the amount of indebtedness due or owing the claimant for which said lien is claimed, for material furnished, labor and services performed, machinery, tools and equipment supplied is $ *4650.48* together with interest thereon at the legal rate.

Metro Building Products, Inc
Claimant

By Carl J Benton, President

**STATE OF COLORADO**
County of

I, Carl J. Benton, being of lawful age and being first duly sworn upon oath, do say that I am President of Metro Building Products, Inc. the claimant herein named; that I have read the within statement of lien and abstract of indebtedness and know the contents thereof; and that the same is true and correct, to the best of my knowledge, information and belief, and is made on behalf of the claimant.

Carl J. Benton

Subscribed and sworn to before me in the County of Arapahoe, State of Colorado.
This *3rd* day of *November 2017* My Commission expires *7/1/2020* Witness my hand and official seal.

Notary Public

## NOTICE OF INTENT TO FILE A LIEN STATEMENT

**TO THE OWNER AND TO THE PRINCIPAL CONTRACTOR:**  Take notice that the Lien Claimant set forth on the Statement of Lien contained on the reverse of this Notice claims a Mechanic's Lien for material or equipment supplied to or labor performed on the project situate upon the real property described on said Statement of Lien, for the amount stated.  If payment is not made within ten (10) days, the Claimant intends to record said Statement of Lien in the County wherein the real property is located   This notice is given pursuant to Section 38-22-109(3) C.R.S.

Carl J. Benton, President
Metro Building Products, Inc.
2115 South Valentia Street, Denver, CO 80231

### AFFIDAVIT OF SERVICE OR MAILING – OWNER

STATE OF COLORADO
County of .
The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was mailed by fully prepaid certified mail, return receipt requested to the last known address of the owner or reputed owner or his agent as, as follows
On the 3rd day of November 2017.

Carl J. Benton, President
Metro Building Products, Inc

Subscribed and sworn to before me in the County of Arapahoe, State of Colorado.
This 3 day of November 2017 My Commission expires 7/16/2020   Witness my hand and official seal

Notary Public

### AFFIDAVIT OF SERVICE OR MAILING – CONTRACTOR

STATE OF COLORADO
County of :
The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was mailed by fully prepaid certified mail, return receipt requested to the last known address of the principal or prime contractor or his agent as, as follows
On the 3 day of November 2017

Carl J. Benton, President
Metro Building Products, Inc

Subscribed and sworn to before me in the County of Arapahoe, State of Colorado.
This 3 day of November 2017 My Commission expires 7/16/2020   Witness my hand and official seal

Notary Public

### AFFIDAVIT OF SERVICE OR MAILING PRIOR TO FILING LIEN STATEMENT

STATE OF COLORADO
County of ·
The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was served pursuant to Section 38-22-109(3) C.R.S. as evidenced by the Affidavits of Service or Mailing, at least ten (10) days before the time of filing the Lien Statement with the County Clerk and Recorder

Carl J. Benton, President
Metro Building Products, Inc

Subscribed and sworn to before me in the County of Arapahoe, State of Colorado
This __ day of _____ 20__ My Commission expires _____   Witness my hand and official seal

BRANDI R. VIGIL
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20144038013
MY COMMISSION EXPIRES SEPTEMBER 29, 2018

Notary Public

2017155624
Page: 1 of 2
D $0.00

11/29/2017 01:23 PM      R $18.00
City & County of Denver              L

## STATEMENT OF LIEN

**TO ALL WHOM IT MAY CONCERN:**

Redd Iron, Inc. wishing to avail itself of the provisions of the statute in such cases made and provided makes the following statement of lien:

FIRST. That the name of the owner or reputed owner of such property to be charged with the lien is, WPB Hospitality LLC, 5466 S Hannibal Court, Centennial, Colorado 80015-4282.

SECOND. That the name and mailing address of the person claiming the lien is Redd Iron, Inc. , 10421 E. 106th Avenue, Brighton, Colorado 80601.

That the name of the person who furnished the material or performed the labor or services, or supplied the machinery, tools or equipment for which said lien is claimed is Redd Iron, Inc..

That the name of the principal contractor is Kumar Construction Mgmt., Inc.

THIRD. That the property to be charged with such lien is described as follows:

GATEWAY PARK IV FLG #7 B1 PLOT 1 EXC PT DIF RCP#2007093097 RCD 06/15/07

also known by street number as:      16161 E 40TH AVENUE

situate in the County of DENVER, State of Colorado. That the said lien is held for and on account of Labor and Materials furnished by Redd Iron, Inc.

FOURTH. That the amount of indebtedness due or owing the claimant for which said lien is claimed, for material furnished, labor and services performed, machinery, tools and equipment supplied is $53,220.40 together with interest thereon at the legal rate of 12% per annum.

Redd Iron, Inc.

By: _David Atkins_

STATE OF COLORADO          )
                           ) ss.
COUNTY OF  Adams           )

I, David Atkins, being of lawful age and being first duly sworn upon oath, do say that I am the President and Owner of Redd Iron, Inc., the claimant herein named; that I have read the within statement of lien and abstract of indebtedness and know the contents thereof; and that the same is true and correct, to the best of my knowledge, information and belief, and is made on behalf of the claimant.

By: _____

Subscribed and sworn to before me in the County of _Adams_ State of Colorado on this __26__ day of _Oct_, 20_19_.

My Commission Expires: _04·08·2020_

Witness my hand and official seal.

CATHERINE A HEWLETT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 20164013589
MY COMMISSION EXPIRES 04-08-2020

_Catherine A Hewlett_
Notary Public

Exhibit B - 0024

City & County of Denver                    2017155624                              2 of 2

## NOTICE OF INTENT TO FILE A LIEN STATEMENT

**TO THE OWNER AND TO THE PRINCIPAL CONTRACTOR:**

Take Notice that the Lien Claimant set forth on the Statement of Lien contained on the reverse of this Notice claims a Mechanic's Lien for material or equipment supplied to or labor performed on the project situate upon the real property described on said Statement of Lien, for the amount stated.  If payment is not made within ten (10) days, the Claimant intends to record said Statement of Lien in the County wherein the real property is located.  This notice is given pursuant to Section 38-22-109 C.R.S.**

**Attorney's Name and Address:**
Murr Siler & Accomazzo, PC
410 17th Street Ste. 2400
Denver, Colorado 80202

By: _____
Redd Iron Inc.
10421 E. 106th Ave.
Brighton, CO 80601

### AFFIDAVIT OF SERVICE OR MAILING – OWNER

STATE OF COLORADO        )
                         ) ss.
* COUNTY OF  Adams        )

The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien was mailed by fully prepaid certified mail, return receipt requested, to the last known address of  WPB Hospitality LLC, 5466 S Hannibal Court, Centennial, Colorado  80015-4282 the owner or reputed owner of the real property described upon the reverse of this Notice, or his agent, on  26  ____Oct____, 2017, being at least ten days prior to the presentation for filing of the statement of lien upon the reverse hereof.

By: _____

Subscribed and sworn to before me in the County of Adams State of Colorado, this  2 6 day of Oct, 2017.

Witness my hand and official seal. My Commission Expires: 04-08-2020
_____
Notary Public

CATHERINE A HEWLETT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 20164013589
MY COMMISSION EXPIRES 04-08-2020

### AFFIDAVIT OF SERVICE OR MAILING – CONTRACTOR

STATE OF COLORADO        )
                         ) ss.
* COUNTY OF  Adams        )

The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien was mailed by fully prepaid certified mail, return receipt requested, to the last known address of  Kumar Construction Management Inc, 3751 Main 600-294, The Colony, TX, 75056, at , the principal or prime contractor with respect to the real property described upon the reverse of this Notice, or his agent, on  2 6  Oct ____, 2017, being at least ten days prior to the presentation for filing of the statement of lien upon the reverse hereof.

By: _____

STATE OF COLORADO        )
                         )ss.
* COUNTY OF      Adams    )

Subscribed and sworn to before me in the County of Adams State of Colorado, this  2 6  day of Oct 2017.

Witness my hand and official seal. My Commission Expires: 04-08-2020
_____
Notary Public

CATHERINE A HEWLETT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 20164013589
MY COMMISSION EXPIRES 04-08-2020

### AFFIDAVIT OF SERVICE OR MAILING PRIOR TO FILING LIEN STATEMENT

STATE OF COLORADO        )
                         ) ss.
* COUNTY OF Adams         )

The undersigned, being of lawful age and being first duly sworn, deposes and says that this Notice of Intent to File a Lien Statement was served pursuant to Section 38-22-109, C.R.S.**, as evidenced by the Affidavits of Service or Mailing, on  10/26____, 2017 being at least ten (10) days before the time of filing the Lien Statement with the County Clerk and Recorder.

By: _____ CEO

Subscribed and sworn to before me in the County of Adams State of Colorado, this  29  day of Nov 2017.

Witness my hand and official seal. My Commission Expires: 04-08-2020
_____
Notary Public

CATHERINE A HEWLETT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 20164013589
MY COMMISSION EXPIRES 04-08-2020

**38-22-109 Lien Statement.  In order to preserve any lien for work performed or materials furnished, there must be a notice of intent to file a lien statement served upon the owner or reputed owner of the property or his agent and the principal or prime contractor or his agent at least ten days before the time of filing the lien statement with the county clerk and recorder.  Such notice of intent shall be served by personal service or by registered or certified mail, return receipt requested, addressed to the last known address of such persons, and an affidavit of such service or mailing at least ten days before filing of the lien statement with the county clerk and recorder shall be filed for record with said statement and shall constitute proof of such service.

**2017154289**
Page: 1 of 7

11/27/2017 09:55 AM          R $43.00          D $0.00
City & County of Denver                          L
Electronically Recorded

## STATEMENT OF LIEN

TO ALL WHOM IT MAY CONCERN:

BE ADVISED THAT **United Rentals (north America), Inc.,** wishing to avail itself of the provisions of the statute in such cases made and provided, makes the following statement of lien:

FIRST. That the name of the owner or reputed owner of such property to be charged with the lien is **WPB HOSPITALITY LLC, 5466 S HANNIBAL CT, CENTENNIAL, CO 80015**

SECOND. That the name and mailing address of the person claiming the lien is **United Rentals (north America), Inc., 6125 Lakeview Road, Charlotte, NC 28269**

That the name of the person who furnished the material or performed the labor or services, or supplied the machinery, tools or equipment for which said lien is claimed is **United Rentals (north America), Inc..**

That the name of the principal/prime contractor is **KUMAR CONSTRUCTION MGMT INC, 4860 CHAMBERS RD STE 12, CO 80239-5152.**

THIRD. That the property to be charged with such lien is described as follows:

**16161 E 40TH AVE, DENVER, COLORADO; A PARCEL OF LAND BEING A PORTION OF PLOT 1, BLOCK 1, GATEWAY PARK IV DENVER FILING NO. 7, ACCORDING TO THE PLAT THEREOF RECORDED JANUARY 25, 2002 IN PLAT BOOK 33 AT PAGES 95 AND 96, FURTHER DESCRIBED IN OR DOCUMENT NO. 2009069767, ACCORDING TO THE PUBLIC RECORDS RECORDED IN DENVER COUNTY, COLORADO; PARCEL ID NUMBER 204-01-018; 3316538**

Located in the County of **Denver** and State of Colorado. That said lien is held for and on account of labor and materials incorporated into the above subject real estate.

FOURTH. That the amount of indebtedness due or owing the claimant for which said lien is claimed, for material furnished, labor and services performed, machinery, tools and equipment supplied is **SIXTY FOUR THOUSAND FOUR HUNDRED SIXTY SIX AND 79/100 $64,466.79,** together with interest thereon at the maximum rate allowable by law, and costs.

**United Rentals (north America), Inc.**
**6125 Lakeview Road**
**Charlotte, NC 28269**
**704-916-4141**

City & County of Denver                            2017154289                                    2 of 7

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

I, **CHARLENE RIDDLE**, being of lawful age and being first duly sworn upon oath, do say
that I am a representative of the claimant herein named; that I have read the within amended
statement of lien and abstract of indebtedness and know the contents thereof; and that the
same is true and correct, to the best of my knowledge, information and belief, and is made
on behalf of the claimant.


CHARLENE RIDDLE, Agent

Subscribed and sworn to before me in the County of MECKLENBURG, State of NORTH
CAROLINA, this 11/02/2017

Witness my hand and official seal.

Notary Public

My Commission Expires: 10/23/2021

CAROL ANN KUDA
NOTARY PUBLIC
MECKLENBURG CO, NC
My Commission Expires October 23, 2021

## NOTICE OF INTENT TO FILE A LIEN STATEMENT

TO THE OWNER AND TO THE PRINCIPAL CONTRACTOR: Take Notice that the Lien Claimant, United Rentals (north America), Inc., set forth on the Statement of Lien contained on the first page of this Notice claims a Mechanic's Lien for laborers or material or equipment supplied to or labor performed on the project situate upon the real property described on said Statement of Lien, for the amount stated. If payment is not made within ten (10) days, the Claimant intends to record said Statement of Lien in the County where the real property is located. This notice is given pursuant to Section 38-22-109(3) C.R.S.***

The undersigned, being of lawful age and being duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was *served by personal service or by registered or certified mail, return receipt requested, to the last known address of the principal or prime contractor or his agent, as follows: Certified Mail, Return Receipt Requested, Article No 9214890107899974159134

NOTICE EXTENDING TIME TO FILE LIEN STATEMENT: Pursuant to Section 109(10), Article 22, Title 38, Colorado Revised Statutes, notice is hereby given that the undersigned may hereafter file a lien statement or claim a mechanic's lien for labor, services, machinery, tools, equipment, laborers or materials furnished for improvement on real estate.

The land to be improved is situate in the County of Denver, State of Colorado, and is described as follows: 16161 E 40th Ave, Denver, Colorado; A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV Denver Filing No. 7, according to the plat thereof recorded January 25, 2002 in Plat Book 33 at Pages 95 and 96, further described in Document No. 2009069767, according to the public records recorded in Denver County, Colorado; Parcel ID Number 204-01-018

The work, materials and/or equipment was furnished under an order given by KUMAR CONSTRUCTION MGMT INC on the project referenced above with the prime/principal contractor being KUMAR CONSTRUCTION MGMT INC and owner being WPB HOSPITALITY LLC.

That the amount of indebtedness due or owing the claimant for which said lien is claimed, for material furnished, labor and services performed, machinery, tools and equipment supplied is SIXTY FOUR THOUSAND FOUR HUNDRED SIXTY SIX AND 79/100 $64,466.79, together with interest thereon at the maximum rate allowable by law, and costs.

***38-22-109. Lien Statement. (3) In order to preserve any lien for work performed or laborers or materials furnished, there must be a notice of intent to file a lien statement served upon the owner or reputed owner of the property or the owner's agent and the principal or prime contractor or his or her agent at least ten days before the time of filing the lien statement with the county clerk and recorder. Such notice of intent shall be served by personal service or by registered or certified mail, return receipt requested, addressed to the last known address of such persons, and an affidavit of such service or mailing at least ten days before filing of the lien statement with the county clerk and recorder shall be filed for record with said statement and shall constitute proof of such service.

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

The undersigned, being of lawful age and being first duly sworn oath, deposes and says that this Notice of Intent to File a Lien Statement was *served by personal service or by registered or certified mail, return receipt requested, to the last known address of the owner or reputed owner or his agent, as follows: Certified Mail, Return Receipt Requested, on 11/09/2017. Article No 92148901078999974159332

_____
Signature

Subscribed and sworn to before me in the County of Mecklenburg, in the State of North Carolina this 14 day of November, 2017

Witness my hand and official seal.

_____
Notary Public
My commission expires: 10/23/2021

*Prepared by and Return to:*
*United Rentals (north America), Inc.*
*6125 Lakeview Road*
*Charlotte, NC 28269*

CAROL ANN KUDA
NOTARY PUBLIC
MECKLENBURG CO, NC
My Commission Expires October 23, 2021

38-22-109. Lien statement.

(10) Within the applicable time period provided in subsections (4) and (5) of this section and subject to the provisions of section 38-22-125, any lien claimant granted a lien pursuant to section 38-22-101 may file with the county clerk and recorder of the county in which the real property is situated a notice stating the legal description or address or such other description as will identify the real property; the name of the person with whom he has contracted; and the claimant's name, address, and telephone number. One such notice may be filed upon more than one property, and, in the case of a subdivision, one notice may describe only the part thereof upon which the claimant has or will obtain a lien pursuant to section 38-22-101. The filing of said notice shall serve as notice that said person may thereafter file a lien statement and shall extend the time for filing of the mechanic's lien statement to four months after completion of the structure or other improvement or six months after the date of filing of said notice, whichever occurs first. Unless sooner terminated as provided in subsection (11) of this section, the notice provided for in this subsection (10) shall automatically terminate six months after the date said notice is filed. In the event that said structure or other improvements have not been completed prior to the termination of said notice, a claimant, prior to said termination date, may file a new or amended notice which shall remain effective for an additional period of six months after the date of filing or four months after the date of completion of said structure or other improvements, whichever occurs first.

City & County of Denver                    2017154289                    5 of 7

3633111

# AFFIDAVIT OF SERVICE OR MAILING NOTICE OF INTENT TO LIEN

Noticing Party Hereinafter "Claimant":

United Rentals (north America), Inc.
6125 Lakeview Road
Charlotte, NC 28269
704-916-4141

Property Owner:

WPB HOSPITALITY LLC
5466 S HANNIBAL CT
CENTENNIAL, CO 80015
By Certified Return Receipt 9214890107899974159332

Prime/Principal Contractor

KUMAR CONSTRUCTION MGMT INC
4860 CHAMBERS RD STE 12
Denver, CO 80239-5152
By Certified Return Receipt 9214890107899974159134

### AFFIDAVIT OF SERVICE OR MAILING - OWNER

The undersigned, being of lawful age and being first duly sworn oath, deposes and says that this Notice of Intent to File a Lien Statement was serrved by personal service or by registered or certified mail, return receipt requested, to the last known address of the owner or reputed owner or his agent as follows: Certified Mail, Return Receipt Requested, on 11/09/2017 Article No 9214890107899974159332

_Charlm Ziddle_
Signature

.

Exhibit B - 0030

Subscribed and sworn to before me in the County of Mecklenburg, in the State of North Carolina this 14th day of November, 2017

Witness my hand and official seal.

Notary Public
My commission expires: 10/23/2021

## AFFIDAVIT OF SERVICE OR MAILING - CONTRACTOR

The undersigned, being of lawful age and being first duly sworn oath, deposes and says that this Notice of Intent to File a Lien Statement was served by personal service or by registered or certified mail, return receipt requested, to the last known address of the principal or prime contractor or his agent as follows: Certified Mail, Return Receipt Requested, on 11/09/2017 Article No 92148901078999974159134.

Signature

Subscribed and sworn to before me in the County of Mecklenburg, in the State of North Carolina this 14th day of November, 2017

Witness my hand and official seal.

Notary Public
My commission expires: 10/23/2021

CAROL ANN KUDA
NOTARY PUBLIC
MECKLENBURG CO, NC
My Commission Expires October 23, 2021

Exhibit B - 0031

## AFFIDAVIT OF SERVICE OR MAILING PRIOR TO FILING LIEN STATEMENT

The undersigned, being of lawful age and being first duly sworn, deposes and says that this Notice of Intent to File a Lien Statement was served pursuant to Section 38-22-109(3) C.R.S.*, as evidenced by the Affidavits of Service or Mailing, at least ten (10) days before the time of filing the Lien Statement with the County Clerk and Recorder.

_____
Signature

Subscribed and sworn to before me in the County of Mecklenburg, in the State of North Carolina this ___ day of November, 2017

Witness my hand and official seal.

_____
Notary Public
My commission expires: 10/23/2021

*38-22-109. LIEN STATEMENT. (3) In order to preserve any lien for work performed or materials furnished, there must be a notice of intent to file a lien statement served upon the owner or reported owner of the property or his agent and the principal or prime contractor or his agent at least ten days before the time of filing the lien statement with the county clerk and recorder. Such notice of intent shall be served by personal service or by registered or certified mail, return receipt requested, addressed to the last known address of such persons, and an affidavit of such service or mailing at least ten days before filing of the lien statement with the county clerk and recorder shall be filed for record with said statement and shall constitute proof of such service.

CAROL ANN KUDA
NOTARY PUBLIC
MECKLENBURG CO, NC
My Commission Expires October 23, 2021

|||||||||||||||||||||||||||||||||||||||||||||

**2016002631**
Page: 1 of 7

01/08/2016 11:20 AM     R $41.00     D $0.00
City & County of Denver          ASR
Electronically Recorded

**RECORDATION REQUESTED BY:**
    Aileron Investment Management, LLC, a Florida
    limited liability company
    3401 W. Cypress Street
    Suite 101
    Tampa, FL 33607

**WHEN RECORDED MAIL TO:**
    Blackhall, P.C.
    c/o Justin Blackhall, Esq.
    321 Millburn Avenue, Suite 6
    Millburn, NJ 07041

**SEND TAX NOTICES TO:**
    Aileron Investment Management, LLC, a Florida
    limited liability company
    3401 W. Cypress Street
    Suite 101
    Tampa, FL 33607                    **FOR RECORDER'S USE ONLY**

## ASSIGNMENT OF RENTS

**MAXIMUM PRINCIPAL AMOUNT SECURED.** The Lien of this Assignment shall not exceed at any one time $4,875,000.00 except as allowed under applicable Colorado law.

**THIS ASSIGNMENT OF RENTS** dated December 31, 2015, is made and executed between WPB Hospitality, LLC, a Colorado limited liability company, whose address is 5466 S. Hannibal Court, Centennial, CO 80015 (referred to below as "Grantor") and Aileron Investment Management, LLC, a Florida limited liability company, whose address is 3401 W. Cypress Street, Suite 101, Tampa, FL 33607 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Denver County, State of Colorado:

    A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV - Denver Filing No. 7, being more particularly described as follows:
    COMMENCING at the northwest corner of said Plot 1;
    THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 295.63 feet to the true point of beginning;
    THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 396.64 feet to the northeast corner of said Plot 1;
    THENCE the following three (3) course along the East line of said Plot 1:
    1. THENCE South 10 degrees 26 minutes 16 seconds West, a distance of 95.82 feet to a point of curve;
    2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10 seconds, a radius of 315.00 feet and an arc length of 58.11 feet;
    3. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 307.25 feet to the southeast corner of said Plot 1;
    THENCE the following four (4) courses along the South line of said Plot 1:
    1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;
    2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue, as dedicated by 40th Avenue, Chambers Road - Pena Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and County of Denver Records;
    3. THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 250.09 feet;

## ASSIGNMENT OF RENTS
Loan No: 1016                              (Continued)                              Page 2

===============================================================================

4. THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 23.63 feet;
THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 464.23 feet to the true point of beginning, City and County of Denver, State of Colorado.

**The Property or its address is commonly known as  16161 E. 40th Avenue, Denver, CO  80239.  The Property tax identification number is 0020401018000.**

**FUTURE ADVANCES.** In addition to the Note, this Assignment secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. This Assignment secures, in addition to the amounts specified in the Note, future advances in an unlimited amount, together with all interest thereon, which future advances Lender is obligated to make so long as Grantor complies with all the terms and conditions of the Note or other loan agreement.

**THIS ASSIGNMENT IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS.  THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.  Grantor warrants that:**

**Ownership.**  Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.**  Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.**  Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.**  Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.**  Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents.  For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.**  Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.**  Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.**  Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.**  Lender may do any and all things to execute and comply with the laws of the State of Colorado and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.**  Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.**  Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.**  Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.**  Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.**  All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account

## ASSIGNMENT OF RENTS
### (Continued)

**Loan No: 1016**                                                                                              **Page 3**

and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Assignment and the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Property.

# ASSIGNMENT OF RENTS
## (Continued)

Loan No: 1016                                                                                                              Page 4

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender forecloses or institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or

# ASSIGNMENT OF RENTS
## (Continued)

**Loan No: 1016**                                                                                 **Page 5**

define the provisions of this Assignment.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Assignment will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Colorado. In all other respects, this Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Assignment is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Assignment has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Florida.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Hillsborough County, State of Florida.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Assignment is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Assignment, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 1016                                                                                    Page 6

Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waive Jury.** All parties to this Assignment hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Colorado as to all Indebtedness secured by this Assignment.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means WPB Hospitality, LLC, a Colorado limited liability company.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means WPB Hospitality, LLC, a Colorado limited liability company.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, Grantor's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Assignment, together with all interest thereon.

**Lender.** The word "Lender" means Aileron Investment Management, LLC, a Florida limited liability company, its successors and assigns.

**Note.** The word "Note" means the promissory note dated December 31, 2015, **in the original principal amount of $4,875,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

# ASSIGNMENT OF RENTS
## (Continued)

Loan No: 1016                                                              Page 7

**THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON DECEMBER 31, 2015.**

**GRANTOR:**

**WPB HOSPITALITY, LLC, A COLORADO LIMITED LIABILITY COMPANY**

By: _Wanda S Bertoia_
Wanda S. Bertoia, the Sole Member of WPB Hospitality, LLC, a Colorado limited liability company

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Colorado_                              )
                                                 ) SS
COUNTY OF _Arapahoe_                             )

On this _30th_ day of _December_, 20 _15_, before me, the undersigned Notary Public, personally appeared Wanda S. Bertoia, the Sole Member of WPB Hospitality, LLC, a Colorado limited liability company, _____ of WPB Hospitality, LLC, a Colorado limited liability company, and known to me to be a member or designated agent of the limited liability company that executed the ASSIGNMENT OF RENTS and acknowledged the Assignment to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Assignment and in fact executed the Assignment on behalf of the limited liability company.

By _Jeffrey R Bergstrom_                         Residing at _____

Notary Public in and for the State of _____

```
JEFFREY R BERGSTROM
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 19954005172
MY COMMISSION EXPIRES JUNE 26, 2019
```

My commission expires _____

LaserPro,   Ver.   15.1.10.038   Copr.   D+H   USA   Corporation   1997,   2015.   All   Rights   Reserved.   -   CO/FL
C:\LASERPRO\LPL\CFI\LPL\G14.FC   TR-54

**2016002630**
Page: 1 of 12

01/08/2016 11:20 AM          R $66.00          D $0.00
City & County of Denver                    DOT
Electronically Recorded

**RECORDATION REQUESTED BY:**
Aileron Investment Management, LLC, a Florida
limited liability company
3401 W. Cypress Street
Suite 101
Tampa, FL 33607

**WHEN RECORDED MAIL TO:**
Blackhall, P.C.
c/o: Justin Blackhall, Esq.
321 Millburn Avenue, Suite 6
Millburn, NJ 07041

**SEND TAX NOTICES TO:**
Aileron Investment Management, LLC, a Florida
limited liability company
3401 W. Cypress Street
Suite 101
Tampa, FL 33607

FOR RECORDER'S USE ONLY

# CONSTRUCTION DEED OF TRUST

**MAXIMUM PRINCIPAL AMOUNT SECURED.** The Lien of this Deed of Trust shall not exceed at any one time $4,875,000.00 except as allowed under applicable Colorado law.

**THIS DEED OF TRUST** is dated December 31, 2015, among WPB Hospitality, LLC, a Colorado limited liability company, whose address is 5466 S. Hannibal Court, Centennial, CO 80015 ("Grantor"); Aileron Investment Management, LLC, a Florida limited liability company, whose address is 3401 W. Cypress Street, Suite 101, Tampa, FL 33607 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and the Public Trustee of the City and County of Denver, Colorado (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Grantor hereby irrevocably grants, transfers and assigns to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in Denver County, State of Colorado:

A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV - Denver Filing No. 7, being more particularly described as follows:
COMMENCING at the northwest corner of said Plot 1;
THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 295.63 feet to the true point of beginning;
THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 396.64 feet to the northeast corner of said Plot 1;
THENCE the following three (3) course along the East line of said Plot 1:
1. THENCE South 10 degrees 26 minutes 16 seconds West, a distance of 95.82 feet to a point of curve;
2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10 seconds, a radius of 315.00 feet and an arc length of 58.11 feet;
3. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 307.25 feet to the southeast corner of said Plot 1;
THENCE the following four (4) courses along the South line of said Plot 1:
1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;
2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue, as dedicated by 40th Avenue, Chambers Road - Pena Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and

## DEED OF TRUST
### (Continued)

| Loan No: 1016 | | Page 2 |
|---|---|---|

County of Denver Records;

3. THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 250.09 feet;

4. THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 23.63 feet;

THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 464.23 feet to the true point of beginning, City and County of Denver, State of Colorado.

**The Real Property or its address is commonly known as 16161 E. 40th Avenue, Denver, CO 80239. The Real Property tax identification number is 0020401018000.**

FUTURE ADVANCES. In addition to the Note, this Deed of Trust secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. This Deed of Trust secures, in addition to the amounts specified in the Note, future advances in an unlimited amount, together with all interest thereon, which future advances Lender is obligated to make so long as Grantor complies with all the terms and conditions of the Note or other loan agreement.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

CONSTRUCTION MORTGAGE. This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of Colorado.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and

## DEED OF TRUST
## (Continued)

**Loan No: 1016**                                                                                    **Page 3**

reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Without otherwise limiting Grantor's covenants as provided herein, Grantor shall not without Lender's prior written consent, remove or permit the removal of sand, gravel or topsoil, or engage in borrow pit operations, or use or permit the use of the Property as a land fill or dump, or store, burn or bury or permit the storage, burning or burying of any material or product which may result in contamination of the Property or the groundwater or which may require the issuance of a permit by the Environmental Protection Agency or any state or local government agency governing the issuance of hazardous or toxic waste permits, or request or permit a change in zoning or land use classification, or cut or remove or suffer the cutting or removal of any trees or timber from the Property.

At its sole cost and expense, Grantor shall comply with and shall cause all occupants of the Property to comply with all Environmental Laws with respect to the disposal of industrial refuse or waste, and/or the discharge, processing, manufacture, generation, treatment, removal, transportation, storage and handling of Hazardous Substances, and pay immediately when due the cost of removal of any such wastes or substances from, and keep the Property free of any lien imposed pursuant to such laws, rules, regulations and orders.

Grantor shall not install or permit to be installed in or on the Property, friable asbestos or any substance containing asbestos and deemed hazardous by federal, state or local laws, rules, regulations or orders respecting such material. Grantor shall further not install or permit the installation of any machinery, equipment or fixtures containing polychlorinated biphenyls (PCBs) on or in the Property. With respect to any such material or materials currently present in or on the Property, Grantor shall promptly comply with all applicable Environmental Laws regarding the safe removal thereof, at Grantor's expense.

Grantor shall indemnify and defend Lender and hold Lender harmless from and against all loss, cost, damage and expense (including, without limitation, attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that Lender may incur as a result of or in connection with the assertion against Lender of any claim relating to the presence or removal of any Hazardous Substance, or compliance with any Environmental Law. No notice from any governmental body has ever been served upon Grantor or, to Grantor's knowledge after due inquiry, upon any prior owner of the Property, claiming a violation of or under any Environmental Law or concerning the environmental state, condition or quality of the Property, or the use thereof, or requiring or calling attention to the need for any work, repairs, construction, removal, cleanup, alterations, demolition, renovation or installation on, or in connection with, the Property in order to comply with any Environmental Law; and upon receipt of any such notice, Grantor shall take any and all steps, and shall perform any and all actions necessary or appropriate to comply with the same, at Grantor's expense. In the event Grantor fails to do so, Lender may declare this Deed of Trust to be in default.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**Construction Loan.** If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Deed of Trust shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any

# DEED OF TRUST
**Loan No: 1016**                    **(Continued)**                    **Page 4**

interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Colorado law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. All policies shall provide that the policies shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property

## DEED OF TRUST
**Loan No: 1016**                              **(Continued)**                              **Page 5**

covered by this Deed of Trust at any trustee's sale or other sale held under the provisions of this Deed of Trust, or at any foreclosure sale of such Property.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations and consistent with any requirements set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by an initial deposit and subsequent monthly payments, or payments at such other interval as payments under the Note may be due, of a sum estimated by Lender to be sufficient to pay the total annual taxes, assessments, and insurance premiums Lender reasonably anticipates to be paid from these reserves. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Deed of Trust shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Grantor, and Lender is not Grantor's agent for payment of the taxes and assessments required to be paid by Grantor.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

City & County of Denver                    2016002630                    6 of 12

# DEED OF TRUST
**Loan No: 1016**                    (Continued)                    **Page 6**

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Notice of Proceedings.** Grantor shall immediately notify Lender in writing should all or any part of the Property become subject to any condemnation or expropriation proceedings or other similar proceedings, including without limitation, any condemnation, confiscation, eminent domain, inverse condemnation, or any permanent or temporary requisition or taking of the Property, or any part or parts of the Property. Grantor further agrees to promptly take such steps as may be necessary and proper within Lender's sole judgment and at Grantor's expense, to defend any such condemnation or expropriation proceedings and obtain the proceeds derived from such proceedings. Grantor shall not agree to any settlement or compromise or any condemnation or expropriation claim without Lender's prior written consent.

**Lender's Participation.** Lender may, at Lender's sole option, elect to participate in any such condemnation or expropriation proceedings and be represented by counsel of Lender's choice. Grantor agrees to provide Lender with such documentation as Lender may request to permit Lender to so participate and to reimburse Lender for Lender's costs associated with Lender's participation, including Lender's reasonable attorneys' fees.

**Conduct of Proceedings.** If Grantor fails to defend any such condemnation or expropriation proceedings to Lender's satisfaction, Lender may undertake the defense of such a proceeding for and on behalf of Grantor. To this end, Grantor irrevocably appoints Lender as Grantor's agent and attorney-in-fact, such agency being coupled with an interest, to bring, defend, adjudicate, settle, or otherwise compromise such condemnation or expropriation claims; it being understood, however, that, unless one or more Events of Default (other than the condemnation or expropriation of the Property) then exists under this Deed of Trust, Lender will not agree to any final settlement or compromise of any such condemnation or expropriation claim without Grantor's prior approval, which approval shall not be unreasonably withheld.

**Application of Net Proceeds.** Lender shall have the right to receive all proceeds derived or to be derived from the condemnation, expropriation, confiscation, eminent domain, inverse condemnation, or any permanent or temporary taking of the Property, or any part or parts of the Property ("condemnation proceeds"). In the event that Grantor should receive any such condemnation proceeds, Grantor agrees to immediately turn over and to pay such proceeds to Lender. All condemnation proceeds, which are received by, or which are payable to either Grantor or Lender, shall be applied, at Lender's sole option and discretion, and in such manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or incurred by Grantor and/or Lender), for the purpose of:  (a) replacing or restoring the condemned, expropriated, confiscated, or taken Property; or  (b) reducing the then outstanding balance of the Indebtedness, together with interest thereon, with such payments being applied in the manner provided in this Deed of Trust.  Lender's receipt of such condemnation proceeds and the application of such proceeds as provided in this Deed of Trust shall not affect the lien of this Deed of Trust.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Deed of Trust or upon all or any part of the  Indebtedness secured by this Deed of Trust;  (2)  a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust;  (3)  a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

## DEED OF TRUST
**Loan No: 1016**                    (Continued)                    **Page 7**

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** Upon the full performance of all the obligations under the Note and this Deed of Trust, Trustee may, upon production of documents and fees as required under applicable law, release this Deed of Trust, and such release shall constitute a release of the lien for all such additional sums and expenditures made pursuant to this Deed of Trust. Lender agrees to cooperate with Grantor in obtaining such release and releasing the other collateral securing the Indebtedness. Any release fees required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Deed of Trust or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property

City & County of Denver                            2016002630                                    8 of 12

# DEED OF TRUST
**Loan No: 1016**                            **(Continued)**                                    **Page 8**

securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Property.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Foreclosure.** Lender shall have the right to cause all or any part of the Real Property, and Personal Property, if Lender decides to proceed against it as if it were real property, to be sold by the Trustee according to the laws of the State of Colorado as respects foreclosures against real property. The Trustee shall give notice in accordance with the laws of Colorado. The Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including but not limited to Trustee's fees, attorneys' fees, and the cost of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled to the excess.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect

City & County of Denver                    2016002630                                    9 of 12

# DEED OF TRUST
**Loan No: 1016**                           **(Continued)**                               **Page 9**

the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Sale of the Property.** In exercising its rights and remedies, Lender shall be free to designate on or before it files a notice of election and demand with the Trustee, that the Trustee sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Upon any sale of the Property, whether made under a power of sale granted in this Deed of Trust or pursuant to judicial proceedings, if the holder of the Note is a purchaser at such sale, it shall be entitled to use and apply all, or any portion of, the Indebtedness for or in settlement or payment of all, or any portion of, the purchase price of the Property purchased, and, in such case, this Deed of Trust, the Note, and any documents evidencing expenditures secured by this Deed of Trust shall be presented to the person conducting the sale in order that the amount of Indebtedness so used or applied may be credited thereon as having been paid.

**Attorneys' Fees; Expenses.** If Lender forecloses or institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** To the extent permitted by applicable law, Trustee shall have all of the rights and duties of Lender as set forth in this section.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**SUBORDINATE DEED OF TRUST.** The lien on this deed of trust is subordinate only to that certain deed of trust dated as of the date hereof in the amount of $10,200,000.00 given by Grantor jointly to American Lending Center, LLC, a California limited liability company and Alleron Investment Management, LLC, a Florida limited liability company.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

## DEED OF TRUST
### (Continued)

**Loan No: 1016**                                                                                     **Page 10**

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Deed of Trust will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Colorado. In all other respects, this Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Deed of Trust is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Deed of Trust has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Florida.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Hillsborough County, State of Florida.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Deed of Trust is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Deed of Trust, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Colorado as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Aileron Investment Management, LLC, a Florida limited liability company, and its successors and assigns.

**Borrower.** The word "Borrower" means WPB Hospitality, LLC, a Colorado limited liability company and includes all co-signers and

# DEED OF TRUST
## (Continued)

**Loan No: 1016**                                                                                                  **Page 11**

co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Grantor.** The word "Grantor" means WPB Hospitality, LLC, a Colorado limited liability company.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, the successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Deed of Trust, together with all interest thereon.

**Lender.** The word "Lender" means Aileron Investment Management, LLC, a Florida limited liability company, its successors and assigns.

**Note.** The word "Note" means the promissory note dated December 31, 2015, **in the original principal amount of $4,875,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is January 1, 2018. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means the Public Trustee of the City and County of Denver, Colorado.

City & County of Denver                    2016002630                    12 of 12

## DEED OF TRUST
## (Continued)

Loan No: 1016                                                              Page 12

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

WPB HOSPITALITY, LLC, A COLORADO LIMITED LIABILITY COMPANY

By: *Wanda S. Bertola*

Wanda S. Bertola, the Sole Member of WPB Hospitality, LLC, a Colorado limited liability company

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Colorado_        )
                           ) SS
COUNTY OF _Arapahoe_       )

On this _30th_ day of _December_, 20 _15_, before me, the undersigned Notary Public, personally appeared Wanda S. Bertola, the Sole Member of WPB Hospitality, LLC, a Colorado limited liability company, _____ of WPB Hospitality, LLC, a Colorado limited liability company, and known to me to be a member or designated agent of the limited liability company that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the limited liability company.

By _Jeffrey R Bergstrom_                          Residing at _____

Notary Public in and for the State of _____   My commission expires _____

JEFFREY R BERGSTROM
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 19354005172
MY COMMISSION EXPIRES JUNE 26, 2019

LaserPro,   Ver.   15.1.10.038   Copr.   D+H   USA   Corporation   1997,   2015.   All   Rights   Reserved.   -   CO/FL
C:\LASERPRO\LPL\CFI\LPL\G01.FC  TR-54

2016002426
Page: 1 of 7

01/08/2016 08:26 AM          R $41.00          D $0.00
City & County of Denver                  ASR
Electronically Recorded

**RECORDATION REQUESTED BY:**
American Lending Center, LLC, a California
limited liability company
1 World Trade Center
Suite 1180
Long Beach, CA 90831

**WHEN RECORDED MAIL TO:**
BLACKHALL, P.C.
Justin Blackhall, Esq.
321 Millburn Avenue, Suite 6
Millburn, NJ 07041

**SEND TAX NOTICES TO:**
American Lending Center, LLC, a California
limited liability company
1 World Trade Center
Suite 1180
Long Beach, CA 90831                        FOR RECORDER'S USE ONLY

## ASSIGNMENT OF RENTS

**MAXIMUM PRINCIPAL AMOUNT SECURED.** The Lien of this Assignment shall not exceed at any one time $10,200,000.00 except as allowed under applicable Colorado law.

**THIS ASSIGNMENT OF RENTS** dated December 31, 2015, is made and executed between WPB Hospitality, LLC, a Colorado limited liability company, whose address is 5466 S. Hannibal Court, Centennial, CO 80015 (referred to below as "Grantor") and American Lending Center, LLC, a California limited liability company, whose address is 1 World Trade Center, Suite 1180, Long Beach, CA 90831 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Denver County, State of Colorado:

A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV - Denver Filing No. 7, being more particularly described as follows:
COMMENCING at the northwest corner of said Plot 1;
THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 295.63 feet to the true point of beginning;
THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 396.64 feet to the northeast corner of said Plot 1;
THENCE the following three (3) course along the East line of said Plot 1:
1. THENCE South 10 degrees 26 minutes 16 seconds West, a distance of 95.82 feet to a point of curve;
2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10 seconds, a radius of 315.00 feet and an arc length of 58.11 feet;
3. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 307.25 feet to the southeast corner of said Plot 1;
THENCE the following four (4) courses along the South line of said Plot 1:
1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;
2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue, as dedicated by 40th Avenue, Chambers Road - Pena Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and County of Denver Records;
3. THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 250.09 feet;

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 1016                                                                    Page 2

4. THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 23.63 feet;
THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 464.23 feet to the true point of beginning, City and County of Denver, State of Colorado.

The Property or its address is commonly known as  16161 E. 40th Avenue, Denver, CO  80239.

**FUTURE ADVANCES.** In addition to the Note, this Assignment secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. This Assignment secures, in addition to the amounts specified in the Note, future advances in an unlimited amount, together with all interest thereon, which future advances Lender is obligated to make so long as Grantor complies with all the terms and conditions of the Note or other loan agreement.

**THIS ASSIGNMENT IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS.  THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Colorado and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be

# ASSIGNMENT OF RENTS
## (Continued)

Loan No: 1016                                                              Page 3

applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Assignment or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Property.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same,

## ASSIGNMENT OF RENTS
Loan No: 1016                             (Continued)                             Page 4

or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Property Damage or Loss.**  The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.**  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

**Cure Provisions.**  If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default:  (1)  cures the default within ten (10) days; or  (2)  if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.**  Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment fee that Grantor would be required to pay.

**Collect Rents.**  Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above.  If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.  Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Other Remedies.**  Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.**  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.**  If Lender forecloses or institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law.  Grantor also will pay any court costs, in addition to all other sums provided by law.

**CO-LENDER SUPPLEMENTAL PROVISION.**  Grantor acknowledges that a portion of that certain loan made to Grantor in the total amount of $10,200,000.00 (the "Loan") secured hereby was funded by Aileron Investment Management, LLC, having an address at 3401 W. Cypress Street, Suite 101, Tampa, Florida 33607 ("Aileron"), which interest is represented by a certain Note A dated as of the date hereof executed by Grantor in connection herewith in the amount of $5,700,000.00.  Grantor acknowledges that Aileron has an undivided interest in the Loan and the rights granted to Lender herein.  Grantor further acknowledges that Aileron is deemed to be a "Lender" under this agreement and the Related Documents executed in connection herewith and shall have all the rights associated therewith including the right to pursue collection of the Loan from Grantor and exercise the rights granted to Lender hereunder in its own name and to receive notices required hereunder at the above address.

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 1016                                                                                          Page 5

---

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Assignment will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Colorado. In all other respects, this Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Assignment is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Assignment has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Assignment is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Assignment, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and

City & County of Denver                    2016002426                                    6 of 7

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 1016                                                                        Page 6

conclusive.

**Successors and Assigns.**  Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.**  Time is of the essence in the performance of this Assignment.

**Waive Jury.**  To the extent permitted by applicable law, all parties to this Assignment hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.**  Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Colorado as to all Indebtedness secured by this Assignment.

**Waiver of Right of Redemption.**  NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Assignment.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.**  The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.**  The word "Borrower" means WPB Hospitality, LLC, a Colorado limited liability company.

**Default.**  The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.**  The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.**  The word "Grantor" means WPB Hospitality, LLC, a Colorado limited liability company.

**Guarantor.**  The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, Grantor's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.**  The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.**  The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.  Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Assignment, together with all interest thereon.

**Lender.**  The word "Lender" means American Lending Center, LLC, a California limited liability company, its successors and assigns.

**Note.**  The word "Note" means the Notes dated as of the date herein, in the original amounts of $5,700,000.00 given to Aileron Investment Management, LLC and $4,500,000.00 given to American Lending Center, LLC (Promissory Notes A and Promissory Note B, respectively) in the total amount of $10,200,000.00 and executed by Borrower together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the Note or credit agreement.

**Property.**  The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.**  The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be

City & County of Denver                    2016002426                                    7 of 7

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 1016                                                                    Page 7

derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON DECEMBER 31, 2015.

GRANTOR:

WPB HOSPITALITY, LLC, A COLORADO LIMITED LIABILITY COMPANY

By: _Wanda S. Bertola_
Wanda S. Bertola, the Sole Member of WPB Hospitality, LLC, a Colorado
limited liability company

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Colorado_                        )
                                           ) SS
COUNTY OF _Arapahoe_                       )

On this _30th_ day of _December_ , 20 _15_ , before me, the undersigned Notary Public, personally appeared Wanda S. Bertola, the Sole Member of WPB Hospitality, LLC, a Colorado limited liability company, of WPB Hospitality, LLC, a Colorado limited liability company, and known to me to be a member or designated agent of the limited liability company that executed the ASSIGNMENT OF RENTS and acknowledged the Assignment to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Assignment and in fact executed the Assignment on behalf of the limited liability company.

By _Jeffry R Bergman_                      Residing at _____
Notary Public in and for the State of _____  My commission expires _____

JEFFREY R BERGMAN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 19954005172
MY COMMISSION EXPIRES JUNE 26, 2019

LaserPro, Ver. 15.1.10.038    Copr.  D+H  USA  Corporation  1997,  2015.    All  Rights  Reserved.    - CO/CA
C:\LASERPRO\LPL\CFI\LPL\G14.FC  TR-53  PR-8

Exhibit B - 0058

**2016002425**
Page: 1 of 12

01/08/2016 08:26 AM          R $66.00          D $0.00
City & County of Denver                        DOT
Electronically Recorded

RECORDATION REQUESTED BY:
American Lending Center, LLC, a California
limited liability company
1 World Trade Center
Suite 1180
Long Beach, CA  90831

WHEN RECORDED MAIL TO:
BLACKHALL, P.C.
Justin Blackhall, Esq.
321 Millburn Avenue, Suite 6
Millburn, NJ  07041

SEND TAX NOTICES TO:
American Lending Center, LLC, a California
limited liability company
1 World Trade Center
Suite 1180
Long Beach, CA  90831                              FOR RECORDER'S USE ONLY

## CONSTRUCTION DEED OF TRUST

MAXIMUM PRINCIPAL AMOUNT SECURED. The Lien of this Deed of Trust shall not exceed at any one time $10,200,000.00 except as allowed under applicable Colorado law.

THIS DEED OF TRUST is dated December 31, 2015, among WPB Hospitality, LLC, a Colorado limited liability company, whose address is 5466 S. Hannibal Court, Centennial, CO  80015 ("Grantor"); American Lending Center, LLC, a California limited liability company, whose address is 1 World Trade Center, Suite 1180, Long Beach, CA  90831 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and the Public Trustee of the City and County of Denver, Colorado (referred to below as "Trustee").

CONVEYANCE AND GRANT.  For valuable consideration, Grantor hereby irrevocably grants, transfers and assigns to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Denver County, State of Colorado:**

A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV - Denver Filing No. 7, being more particularly described as follows:

COMMENCING at the northwest corner of said Plot 1;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 295.63 feet to the true point of beginning;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 396.64 feet to the northeast corner of said Plot 1;

THENCE the following three (3) course along the East line of said Plot 1:

1. THENCE South 10 degrees 26 minutes 16 seconds West, a distance of 95.82 feet to a point of curve;

2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10 seconds, a radius of 315.00 feet and an arc length of 58.11 feet;

3. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 307.25 feet to the southeast corner of said Plot 1;

THENCE the following four (4) courses along the South line of said Plot 1:

1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;

2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue, as dedicated by 40th Avenue, Chambers Road - Pena Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and County of Denver Records;

## DEED OF TRUST
### (Continued)

Loan No: 1016                                                                                              **Page 2**

===============================================================================

**3.** THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 250.09 feet;

**4.** THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 23.63 feet;

THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 464.23 feet to the true point of beginning, City and County of Denver, State of Colorado.

**The Real Property or its address is commonly known as   16161 E. 40th Avenue, Denver, CO  80239.**

**FUTURE ADVANCES.** In addition to the Note, this Deed of Trust secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. This Deed of Trust secures, in addition to the amounts specified in the Note, future advances in an unlimited amount, together with all interest thereon, which future advances Lender is obligated to make so long as Grantor complies with all the terms and conditions of the Note or other loan agreement.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE   (A)  PAYMENT OF THE INDEBTEDNESS AND   (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH.  ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**CONSTRUCTION MORTGAGE.**  This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of Colorado.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

# DEED OF TRUST
## (Continued)

Loan No: 1016                                                                                      Page 3

Without otherwise limiting Grantor's covenants as provided herein, Grantor shall not without Lender's prior written consent, remove or permit the removal of sand, gravel or topsoil, or engage in borrow pit operations, or use or permit the use of the Property as a land fill or dump, or store, burn or bury or permit the storage, burning or burying of any material or product which may result in contamination of the Property or the groundwater or which may require the issuance of a permit by the Environmental Protection Agency or any state or local government agency governing the issuance of hazardous or toxic waste permits, or request or permit a change in zoning or land use classification, or cut or remove or suffer the cutting or removal of any trees or timber from the Property.

At its sole cost and expense, Grantor shall comply with and shall cause all occupants of the Property to comply with all Environmental Laws with respect to the disposal of industrial refuse or waste, and/or the discharge, processing, manufacture, generation, treatment, removal, transportation, storage and handling of Hazardous Substances, and pay immediately when due the cost of removal of any such wastes or substances from, and keep the Property free of any lien imposed pursuant to such laws, rules, regulations and orders.

Grantor shall not install or permit to be installed in or on the Property, friable asbestos or any substance containing asbestos and deemed hazardous by federal, state or local laws, rules, regulations or orders respecting such material.  Grantor shall further not install or permit the installation of any machinery, equipment or fixtures containing polychlorinated biphenyls (PCBs) on or in the Property.  With respect to any such material or materials currently present in or on the Property, Grantor shall promptly comply with all applicable Environmental Laws regarding the safe removal thereof, at Grantor's expense.

Grantor shall indemnify and defend Lender and hold Lender harmless from and against all loss, cost, damage and expense (including, without limitation, attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that Lender may incur as a result of or in connection with the assertion against Lender of any claim relating to the presence or removal of any Hazardous Substance, or compliance with any Environmental Law.  No notice from any governmental body has ever been served upon Grantor or, to Grantor's knowledge after due inquiry, upon any prior owner of the Property, claiming a violation of or under any Environmental Law or concerning the environmental state, condition or quality of the Property, or the use thereof, or requiring or calling attention to the need for any work, repairs, construction, removal, cleanup, alterations, demolition, renovation or installation on, or in connection with, the Property in order to comply with any Environmental Law; and upon receipt of any such notice, Grantor shall take any and all steps, and shall perform any and all actions necessary or appropriate to comply with the same, at Grantor's expense.  In the event Grantor fails to do so, Lender may declare this Deed of Trust to be in default.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.**  Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**Construction Loan.**  If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work.  Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Deed of Trust shall have priority over all possible liens, including those of material suppliers and workmen.  Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale,

# DEED OF TRUST
## (Continued)

Loan No: 1016                                                                                                    Page 4

assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Colorado law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. All policies shall provide that the policies shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Deed of Trust at any trustee's sale or other sale held under the provisions of this Deed of Trust, or at any foreclosure sale of such Property.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a

# DEED OF TRUST
## (Continued)

**Loan No: 1016**                                                                              **Page 5**

report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations and consistent with any requirements set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by an initial deposit and subsequent monthly payments, or payments at such other interval as payments under the Note may be due, of a sum estimated by Lender to be sufficient to pay the total annual taxes, assessments, and insurance premiums Lender reasonably anticipates to be paid from these reserves. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Deed of Trust shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Grantor, and Lender is not Grantor's agent for payment of the taxes and assessments required to be paid by Grantor.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Notice of Proceedings.** Grantor shall immediately notify Lender in writing should all or any part of the Property become subject to any condemnation or expropriation proceedings or other similar proceedings, including without limitation, any condemnation, confiscation, eminent domain, inverse condemnation or temporary requisition or taking of the mortgaged Property, or any part or parts of the Property. Grantor further agrees to promptly take such steps as may be necessary and proper within Lender's sole judgment and at Grantor's expense, to defend any such condemnation or expropriation proceedings and obtain the proceeds derived from such proceedings. Grantor shall not agree to any settlement or compromise or any condemnation or expropriation claim without Lender's prior written consent.

**Lender's Participation.** Lender may, at Lender's sole option, elect to participate in any such condemnation or expropriation proceedings and be represented by counsel of Lender's choice. Grantor agrees to provide Lender with such documentation as Lender may request to permit Lender to so participate and to reimburse Lender for Lender's costs associated with Lender's participation, including Lender's reasonable attorneys' fees.

**DEED OF TRUST**
**(Continued)**

Loan No: 1016                                                                                       Page 6

**Conduct of Proceedings.** If Grantor fails to defend any such condemnation or expropriation proceedings to Lender's satisfaction, Lender may undertake the defense of such a proceeding for and on behalf of Grantor. To this end, Grantor irrevocably appoints Lender as Grantor's agent and attorney-in-fact, such agency being coupled with an interest, to bring, defend, adjudicate, settle, or otherwise compromise such condemnation or expropriation claims; it being understood, however, that, unless one or more Events of Default (other than the condemnation or expropriation of the Property) then exists under this Deed of Trust, Lender will not agree to any final settlement or compromise of any such condemnation or expropriation claim without Grantor's prior approval, which approval shall not be unreasonably withheld.

**Application of Net Proceeds.** Lender shall have the right to receive all proceeds derived or to be derived from the condemnation, expropriation, confiscation, eminent domain, inverse condemnation, or any permanent or temporary requisition or taking of the Property, or any part or parts of the Property ("condemnation proceeds"). In the event that Grantor should receive any such condemnation proceeds, Grantor agrees to immediately turn over and to pay such proceeds to Lender. All condemnation proceeds, which are received by, or which are payable to either Grantor or Lender, shall be applied, at Lender's sole option and discretion, and in such manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or incurred by Grantor and/or Lender), for the purpose of: (a) replacing or restoring the condemned, expropriated, confiscated, or taken Property; or (b) reducing the then outstanding balance of the Indebtedness, together with interest thereon, with such payments being applied in the manner provided in this Deed of Trust. Lender's receipt of such condemnation proceeds and the application of such proceeds as provided in this Deed of Trust shall not affect the lien of this Deed of Trust.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first

# DEED OF TRUST
## (Continued)

**Loan No: 1016**                                                                           **Page 7**

and prior liens on the Property, whether now owned or hereafter acquired by Grantor.  Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.**  If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense.  For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.**  Upon the full performance of all the obligations under the Note and this Deed of Trust, Trustee may, upon production of documents and fees as required under applicable law, release this Deed of Trust, and such release shall constitute a release of the lien for all such additional sums and expenditures made pursuant to this Deed of Trust.  Lender agrees to cooperate with Grantor in obtaining such release and releasing the other collateral securing the Indebtedness.  Any release fees required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.**  Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.**  Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.**  Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.**  Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.**  Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.**  Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Deed of Trust or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.**  The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness.  This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.**  Any execution or attachment is levied against the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.**  Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.**  A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Property.

**Judgment.**  Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Breach of Other Agreement.**  Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or

# DEED OF TRUST
## (Continued)

Loan No: 1016                                                                                   Page 8

---

other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment fee which Grantor would be required to pay.

**Foreclosure.** Lender shall have the right to cause all or any part of the Real Property and Personal Property, if Lender decides to proceed against it as if it were real property, to be sold by the Trustee according to the laws of the State of Colorado as respects foreclosures against real property. The Trustee shall give notice in accordance with the laws of Colorado. The Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including but not limited to Trustee's fees, attorneys' fees, and the cost of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled to the excess.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Sale of the Property.** In exercising its rights and remedies, Lender shall be free to designate on or before it files a notice of election and demand with the Trustee, that the Trustee sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Upon any sale of the Property, whether made under a power of sale granted in this Deed of Trust or pursuant to judicial proceedings, if the holder of the Note is a purchaser at such sale, it shall be entitled to use and apply all, or any portion of, the Indebtedness for or in settlement or payment of all, or any portion of, the purchase price of the Property purchased, and, in such case, this Deed of Trust, the Note, and any documents evidencing expenditures secured by this Deed of Trust shall be presented to the person conducting the sale in order that the amount of Indebtedness so used or applied may be credited thereon as having been paid.

# DEED OF TRUST
## (Continued)

Loan No: 1016                                                                                          Page 9

**Attorneys' Fees; Expenses.** If Lender forecloses or institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** To the extent permitted by applicable law, Trustee shall have all of the rights and duties of Lender as set forth in this section.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**CO-LENDER SUPPLEMENTAL PROVISION.** Grantor acknowledges that a portion of that certain loan made to Grantor in the total amount of $10,200,000.00 (the "Loan") secured hereby was funded by Aileron Investment Management, LLC, having an address at 3401 W. Cypress Street, Suite 101, Tampa, Florida 33607 ("Aileron"), which interest is represented by a certain Note A dated as of the date hereof executed by Grantor in connection herewith in the amount of $5,700,000.00. Grantor acknowledges that Aileron has an undivided interest in the Loan and the rights granted to Lender herein. Grantor further acknowledges that Aileron is deemed to be a "Lender" under this agreement and the Related Documents executed in connection herewith and shall have all the rights associated therewith including the right to pursue collection of the Loan from Grantor and exercise the rights granted to Lender hereunder in its own name and to receive notices required hereunder at the above address.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Deed of Trust will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Colorado. In all other respects, this Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Deed of Trust is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Deed of Trust has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's

## DEED OF TRUST
### (Continued)

Loan No: 1016                                                                                        Page 10

rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Deed of Trust is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Deed of Trust, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** To the extent permitted by applicable law, all parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Colorado as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means American Lending Center, LLC, a California limited liability company, and its successors and assigns.

**Borrower.** The word "Borrower" means WPB Hospitality, LLC, a Colorado limited liability company and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means WPB Hospitality, LLC, a Colorado limited liability company.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, the successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or

City & County of Denver                                    2016002425                                    11 of 12

## DEED OF TRUST
## (Continued)

Loan No: 1016                                                                                         Page 11

accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Deed of Trust, together with all interest thereon.

**Lender.** The word "Lender" means American Lending Center, LLC, a California limited liability company, its successors and assigns.

**Note.** The word "Note" means the Notes dated as of the date herein, in the original amounts of $5,700,000.00 given to Aileron Investment Management, LLC and $4,500,000.00 given to American Lending Center, LLC (Promissory Notes A and Promissory Note B, respectively) in the total amount of $10,200,000.00 and executed by Borrower together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the Note or credit agreement. The maturity date of the Note is January 1, 2028. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means the Public Trustee of the City and County of Denver, Colorado.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

WPB HOSPITALITY, LLC, A COLORADO LIMITED LIABILITY COMPANY

By: _Wanda S. Bertoia_

Wanda S. Bertoia, the Sole Member of WPB Hospitality, LLC, a Colorado limited liability company

City & County of Denver                           2016002425                                    12 of 12

## DEED OF TRUST
## (Continued)

Loan No: 1016                                                                              Page 12

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Colorado_      )
                         ) SS

COUNTY OF _Arapahoe_    )

On this _30th_ day of _December_, 20 _15_, before me, the undersigned Notary Public, personally appeared Wanda S. Bertola, the Sole Member of WPB Hoapitality, LLC, a Colorado limited liability company, of WPB Hospitality, LLC, a Colorado limited liability company, and known to me to be a member or designated agent of the limited liability company that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the limited liability company.

By _____         Residing at _____

Notary Public in and for the State of _____ My commission expires _____

```
JEFFREY R BERGSTROM
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 19954005172
MY COMMISSION EXPIRES JUNE 26, 2019
```

LaserPro,  Ver.  15.1.10.038   Copr.   D+H  USA  Corporation   1997,  2015.    All  Rights  Reserved.    -  CO/CA
C:\LASERPRO\LP\CFI\LPL\G01.FC  TR-53  PR-8

Exhibit B - 0070

**2016002632**
Page: 1 of 4

01/08/2016 11:20 AM
City & County of Denver
Electronically Recorded

R $6.00         D $0.00
UCC

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Blackhall, P.C.
c/o: Justin Blackhall, Esq.
321 Millburn Avenue, Suite 6
Millburn, NJ 07041

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| WPB Hospitality, LLC, a Colorado limited liability company | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5466 S. Hannibal Court | Centennial | CO | 80015 | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Aileron Investment Management, LLC, a Florida limited liability company | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3410 W. Cypress Street, Suite 101 | Tampa | FL | 33607 | USA |

4. COLLATERAL:  This financing statement covers the following collateral:

All Furniture, Fixtures and Equipment (as each term is defined in the UCC); whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing located on, used in connection with or otherwise associated with, the real property described herein which is commonly known as 16161 E. 40th Avenue, Denver, CO.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

D+H
400 S.W. 6th Avenue, Portland, Oregon 97204

City & County of Denver                    2016002632                                    2 of 4

## UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

| 9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐ |
|---|

| 9a. ORGANIZATION'S NAME |
|---|
| **WPB Hospitality, LLC, a Colorado limited liability company** |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| |

| FIRST PERSONAL NAME |
|---|
| |

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|
| | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only *one* additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|
| |

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| |

| INDIVIDUAL'S FIRST PERSONAL NAME |
|---|
| |

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|
| | |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only *one* name (11a or 11b) |
|---|

| 11a. ORGANIZATION'S NAME |
|---|
| |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | 14. This FINANCING STATEMENT: |
|---|---|
| | ☐ covers timber to be cut    ☐ covers as-extracted collateral    ☒ is filed as a fixture filing |

| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |
|---|---|
| | A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV - Denver Filing No. 7, being more particularly described as follows: COMMENCING at the northwest corner of said Plot 1; THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 295.63 feet to the true point of beginning; THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 396.64 feet to the northeast corner of said Plot 1; THENCE the following three (3) course along the East line of said Plot 1: 1. THENCE South 10 degrees 26 minutes 16 seconds West, a distance of 95.82 feet to a point of curve; |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)       D+H
400 S.W. 6th Avenue, Portland, Oregon 97204

City & County of Denver                    2016002632                    3 of 4

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

| 9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐ |
|---|

| 9a. ORGANIZATION'S NAME |
|---|
| **WPB Hospitality, LLC, a Colorado limited liability company** |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

OR

| 10a. ORGANIZATION'S NAME |
|---|
| 10b. INDIVIDUAL'S SURNAME |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☒ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate:<br>2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10 seconds, a radius of 315.00 feet and an arc length of 58.11 feet;<br>3. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 307.25 feet to the southeast corner of said Plot 1;<br>THENCE the following four (4) courses along the South line of said Plot 1:<br>1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;<br>2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue, as dedicated by |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)     D+H  400 S.W. 6th Avenue, Portland, Oregon 97204

City & County of Denver                    2016002632                              4 of 4

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
| --- |
| **WPB Hospitality, LLC, a Colorado limited liability company** |

OR

| 9b. INDIVIDUAL'S SURNAME | | |
| --- | --- | --- |
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
| --- |

OR

| 10b. INDIVIDUAL'S SURNAME | | | |
| --- | --- | --- | --- |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
| --- |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☒ is filed as a fixture filing |
| --- | --- |
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: **40th Avenue, Chambers Road - Pena Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and County of Denver Records;** **3. THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 250.09 feet;** **4. THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 23.63 feet;** **THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 484.23 feet to the true point of beginning, City and County of Denver, State of Colorado.** |

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)          D+H
400 S.W. 6th Avenue, Portland, Oregon 97204

2016002427
Page: 1 of 4

01/08/2016 08:26 AM
City & County of Denver
Electronically Recorded

R $6.00          D $0.00

UCC

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> **BLACKHALL, P.C.**
> **Justin Blackhall, Esq.**
> **321 Millburn Avenue, Suite 6**
> **Millburn, NJ 07041**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| WPB Hospitality, LLC, a Colorado limited liability company | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 5466 S. Hannibal Court | CITY Centennial | STATE CO | POSTAL CODE 80015 | COUNTRY |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| American Lending Center, LLC, a California limited liability company | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 1 World Trade Center, Suite 1180 | CITY Long Beach | STATE CA | POSTAL CODE 90831 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:

All Furniture, Fixtures and Equipment (as each term is defined in the UCC); whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing located on, used in connection with or otherwise associated with, the real property described herein which is commonly known as 16161 E. 40th Avenue, Denver, CO.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

D+H
400 S.W. 6th Avenue, Portland, Oregon 97204

City & County of Denver                    2016002427                           2 of 4

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**WPB Hospitality, LLC, a Colorado limited liability company**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                                           SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                             SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☒ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

**Aileron Investment Management, LLC, a Florida limited liability company**

OR

11b. INDIVIDUAL'S SURNAME                    FIRST PERSONAL NAME              ADDITIONAL NAME(S)/INITIAL(S)   SUFFIX

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3401 W. Cypress Street, Suite 101 | Tampa | FL | 33607 | USA |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☒ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:
A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV - Denver Filing No. 7, being more particularly described as follows:
COMMENCING at the northwest corner of said Plot 1;
THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 295.63 feet to the true point of beginning;
THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 396.64 feet to the northeast corner of said Plot 1;
THENCE the following three (3) course along the East line of said Plot 1:
1. THENCE South 10 degrees 26 minutes 16 seconds West, a distance of 95.82 feet to a point of curve;

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)     D+H
400 S.W. 6th Avenue, Portland, Oregon 97204

City & County of Denver                          2016002427                                    3 of 4

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |
| WPB Hospitality, LLC, a Colorado limited liability company | |
| OR **9b. INDIVIDUAL'S SURNAME** | |
| **FIRST PERSONAL NAME** | |
| **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | |
|---|---|---|---|
| **10a. ORGANIZATION'S NAME** | | | |
| OR **10b. INDIVIDUAL'S SURNAME** | | | |
| **INDIVIDUAL'S FIRST PERSONAL NAME** | | | |
| **INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | | | **SUFFIX** |
| **10c. MAILING ADDRESS** | **CITY** | **STATE** **POSTAL CODE** | **COUNTRY** |

**11.** ☒ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (11a or 11b)

| | | | |
|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | |
| Aileron Investment Management, LLC, a Florida limited liability company | | | |
| OR **11b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **11c. MAILING ADDRESS** 3401 W. Cypress Street, Suite 101 | **CITY** Tampa | **STATE** FL **POSTAL CODE** 33607 | **COUNTRY** USA |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☒ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:
2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10 seconds, a radius of 316.00 feet and an arc length of 58.11 feet;
3. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 307.25 feet to the southeast corner of said Plot 1;
THENCE the following four (4) courses along the South line of said Plot 1:
1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;
2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue, as dedicated by

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

D+H
400 S.W. 6th Avenue, Portland, Oregon 97204

City & County of Denver                    2016002427                    4 of 4

## UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS**

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| **WPB Hospitality, LLC, a Colorado limited liability company** | |
| OR 9b. INDIVIDUAL'S SURNAME | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| 10a. ORGANIZATION'S NAME | | | | |
| OR 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. [X] ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| | | | | |
|---|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | | |
| **Aileron Investment Management, LLC, a Florida limited liability company** | | | | |
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **3401 W. Cypress Street, Suite 101** | **Tampa** | **FL** | **33607** | **USA** |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)

| | |
|---|---|
| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  [X] is filed as a fixture filing |
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: 40th Avenue, Chambers Road - Pena Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and County of Denver Records; 3. THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 260.09 feet; 4. THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 23.63 feet; THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 464.23 feet to the true point of beginning, City and County of Denver, State of Colorado. |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)     D+H  400 S.W. 6th Avenue, Portland, Oregon 97204