

4643 S. Ulster St. # 500<br>
Denver, CO 80237<br>
Phone: (303) 889-8169<br>
Fax: (303) 633-1962

DATE: **December 11, 2018**
FILE NUMBER: **597-F0625660-625-YK0**
PROPERTY ADDRESS: **16161 East 40th Avenue, Denver, CO**
BUYER/BORROWER: **Purchaser with contractual rights under a purchase agreement with the vested owner identified at Item 4 below**
OWNER(S): **WPB Hospitality, LLC, a Colorado limited liability company**
YOUR REFERENCE NUMBER:
ASSESSOR PARCEL NUMBER:

PLEASE TAKE NOTE OF THE FOLLOWING REVISED TERMS CONTAINED HEREIN:

None.

---

WIRED FUNDS ARE REQUIRED ON ALL CASH PURCHASE TRANSACTIONS.   FOR WIRING INSTRUCTIONS, PLEASE CONTACT YOUR ESCROW OFFICE AS NOTED ON THE TRANSMITTAL PAGE OF THIS COMMITMENT.

---

| TO: | **Fidelity National Title Company** | ATTN: | **Youn Ju Kim** |
|---|---|---|---|
| | **4643 S. Ulster St. # 500** | PHONE: | **(303) 889-8169** |
| | | FAX: | (303) 633-1962 |
| | **Denver, CO 80237** | E-MAIL: | **yjkim@fnf.com** |

---

| TO: | **CBRE** | **ATTN:** | **Mark Darrington** |
|---|---|---|---|
| | **1225 17th St.** | **PHONE:** | **(303) 628-1770** |
| | **Ste 3200** | **FAX:** | **(303) 628-1751** |
| | **Denver, CO 80202** | **E-MAIL:** | **mark.darrington@cbre.com** |
| TO: | **Construction Loan Department** | **ATTN:** | **Youn Ju Kim** |
| | **4643 S. Ulster St. # 500** | **PHONE:** | **(303) 889-8169** |
| | **Denver, CO 80237** | **FAX:** | **(303) 633-1962** |
| | | **E-MAIL:** | **yjkim@fnf.com** |

**END OF TRANSMITTAL**

Exhibit C - 0001

 Fidelity National Title Insurance Company

# COMMITMENT FOR TITLE INSURANCE

*Issued by*

**Fidelity National Title Insurance Company**

## NOTICE

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRA CONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

## COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, **Fidelity National Title Insurance Company**, a Florida Corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within 6 Months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

Countersigned by:

_____
Authorized Signature



By:

_____
Randy Quirk, President

Attest:

_____
Michael Gravelle, Secretary

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association. 

Exhibit C - 0002

Order No. F0625660-625-YK0

# COMMITMENT CONDITIONS

1. **DEFINITIONS**
   (a)   "Knowledge" or "Known": Actual or imputed knowledge, but not constructive notice imparted by the Public Records.
   (b)   "Land": The land described in Schedule A and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   (c)   "Mortgage": A mortgage, deed of trust, or other security instrument, including one evidenced by electronic means authorized by law.
   (d)   "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   (e)   "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   (f)   "Proposed Policy Amount": Each dollar amount specified in Schedule A as the Proposed Policy Amount of each Policy to be issued pursuant to this Commitment.
   (g)   "Public Records": Records established under state statutes at the Commitment Date for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.
   (h)   "Title": The estate or interest described in Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   (a)   the Notice;
   (b)   the Commitment to Issue Policy;
   (c)   the Commitment Conditions;
   (d)   Schedule A;
   (e)   Schedule B, Part I—Requirements;
   (f)   Schedule B, Part II—Exceptions; and
   (g)   a counter-signature by the Company or its issuing agent that may be in electronic form.

4. **COMPANY'S RIGHT TO AMEND**
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company shall not be liable for any other amendment to this Commitment.

5. **LIMITATIONS OF LIABILITY**
   (a)   The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
       (i)    comply with the Schedule B, Part I—Requirements;
       (ii)   eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or
       (iii)  acquire the Title or create the Mortgage covered by this Commitment.

---

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165C Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)                    Page 1

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Exhibit C - 0003

Order No. F0625660-625-YK0

(b)    The Company shall not be liable under Commitment Condition 5(a) if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.

(c)    The Company will only have liability under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

(d)    The Company's liability shall not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Conditions 5(a)(i) through 5(a)(iii) or the Proposed Policy Amount.

(e)    The Company shall not be liable for the content of the Transaction Identification Data, if any.

(f)    In no event shall the Company be obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.

(g)    In any event, the Company's liability is limited by the terms and provisions of the Policy.

## 6.    LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT

(a)    Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

(b)    Any claim must be based in contract and must be restricted solely to the terms and provisions of this Commitment.

(c)    Until the Policy is issued, this Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

(d)    The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

(e)    Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

(f)    When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

## 7.    IF THIS COMMITMENT HAS BEEN ISSUED BY AN ISSUING AGENT

The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for the purpose of providing closing or settlement services.

## 8.    PRO-FORMA POLICY

The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

## 9.    ARBITRATION

The Policy contains an arbitration clause. All arbitrable matters when the Proposed Policy Amount is $2,000,000 or less shall be arbitrated at the option of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at <http://www.alta.org/arbitration>.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165C Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)      Page 2

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Exhibit C - 0004

Order No. F0625660-625-YK0

***Transaction Identification Data for reference only:***

| | |
|---|---|
| Issuing Agent: | Fidelity National Title Company |
| Issuing Office: | 950 South Cherry Street, Suite 1400, Denver, CO 80246 |
| Loan ID Number: | |
| Issuing Office File Number: | 597-F0625660-625-YK0 |
| Property Address: | 16161 East 40th Avenue, Denver, CO |
| Revision Number: | |

# SCHEDULE A

## AMERICAN LAND TITLE ASSOCIATION COMMITMENT

1. Commitment Date: **November 28, 2018**

2. Policy to be issued:

   (a) **ALTA Owners Policy 6-17-06**

   Proposed Insured: **Purchaser with contractual rights under a purchase agreement with the vested owner identified at Item 4 below**

   Proposed Policy Amount: **$100,000.00**

   (b) **None**

   Proposed Insured:

   Proposed Policy Amount: **$0.00**

   (c) **None**

   Proposed Insured:

   Proposed Policy Amount: **$0.00**

3. The estate or interest in the Land described or referred to in this Commitment is:

   **FEE SIMPLE**

4. The Title is, at the Commitment Date, vested in:

   WPB Hospitality, LLC, a Colorado limited liability company

5. The Land is described as follows:

   **See Exhibit A attached hereto and made a part hereof.**

**PREMIUMS:**

Owners Coverage: $564.00

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165 Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)                    Page 1

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Exhibit C - 0005

Order No. F0625660-625-YK0

# EXHIBIT A
## LEGAL DESCRIPTION

A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV – Denver Filing No. 7, according to the plat thereof recorded January 25, 2002 in Plat Book 33 at Pages 95 and 96, City and County of Denver, State of Colorado, being more particularly described as follows:

Commencing at the Northwest corner of said Plot 1;

Thence North 89 Degrees 52 Minutes 06 Seconds East along the North line of said Plot 1 a distance of 295.63 feet to the True Point of Beginning;

Thence North 89 Degrees 52 Minutes 06 Seconds East along the North line of said Plot 1 a distance of 396.64 feet to the Northeast corner of said Plot 1;

Thence the following three (3) courses along the East line of said Plot 1:

1.      Thence South 10 Degrees 26 Minutes 16 Seconds West a distance of 95.82 feet to a point of curve;

2.      Thence along the arc of a curve to the left having a central angle of 10 Degrees 34 Minutes 10 Seconds,
a       radius of 315.00 feet and an arc length of 58.11 feet;

3.      Thence South 00 Degrees 07 Minutes 54 Seconds East a distance of 307.25 feet to the Southeast corner
of      said Plot 1;

Thence the following four (4) courses along the South line of said Plot 1:

1.      Thence South 89 Degrees 52 Minutes 06 Seconds West a distance of 100.00 feet;

2.      Thence South 00 Degrees 07 Minutes 54 Seconds East a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue as dedicated by 40th Avenue, Chambers Road-Pena Boulevard Subdivision recorded May 6, 1997 in Plat Book 31 at Pages 52 through 54 of said City and County of Denver Records;

3.      Thence South 89 Degrees 52 Minutes 06 Seconds West along the North right-of-way line of said 40th Avenue a distance of 250.09 feet;

4.      Thence South 89 Degrees 52 Minutes 04 Seconds West along the North right-of-way line of said 40th Avenue a distance of 23.63 feet;

Thence North 00 Degrees 07 Minutes 54 Seconds West a distance of 464.23 feet to the True Point of Beginning.

Note: the above legal description was created by Creighton R. Moore, PLS NO. 10945

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165 Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)                                    Page 2

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Exhibit C - 0006

# SCHEDULE B

## PART I – REQUIREMENTS

All of the following Requirements must be met:

a.   Pay the agreed amounts for the interest in the land and/or for the mortgage to be insured.

b.   Pay us the premiums, fees and charges for the policy.

c.   Obtain a certificate of taxes due from the county treasurer or the county treasurer's authorized agent.

d.   The Company will require that an Affidavit and Indemnity Agreement be completed by the party(s) named below before the issuance of any policy of title insurance.

   Party(s):      WPB Hospitality, LLC, a Colorado limited liability company

   The Company reserves the right to add additional items or make further requirements after review of the requested Affidavit.

e.   Institute proceedings in the bankruptcy court where a petition was filed:

   Name of Debtor:        WPB Hospitality, LLC
   Date of Filing:        October 3, 2018
   U.S. District Court:   Name of District: e.g. Northern, Eastern, Central, Southern
   Case No.               18-18636

   Authorizing the transaction to be insured.

   Provide a certified copy of the Order called for above.

   The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

f.   Overlimits approval by appropriate party of the company upon receipt of a purchase contract and disclosure of details of the transaction.

g.   Deed sufficient to convey the fee simple estate or interest in the Land described or referred to herein, to the Proposed Insured Purchaser.

h.   Deed of Trust sufficient to encumber the estate or interest in the Land described or referred to herein for the benefit of the Proposed Insured Lender.

i.   Furnish for recordation a full release of deed of trust:

   Amount:            $10,200,000.00
   Trustor/Grantor:   WPB Hospitality, LLC, a Colorado limited liability company
   Trustee:           Public Trustee of Denver County
   Beneficiary:       American Lending Center, LLC, a California limited liability company
   Recording Date:    January 8, 2016
   Recording No:      Reception No. 2016002425

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I— Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165 Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)                                    Page 3

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Exhibit C - 0007

## SCHEDULE B
## PART I – Requirements
### (Continued)

Note:   The beneficiary must present the original note, Deed of Trust, payoff letter, and a recordable Release of Deed of Trust prior to or at the closing of the Land.

The Deed of Trust set forth above is purported to be a "Credit Line" Deed of Trust. It is a requirement that the Trustor/Grantor of said Deed of Trust provide written authorization to close said credit line account to the Lender when the Deed of Trust is being paid off through the Company or other Settlement/Escrow Agent or provide a satisfactory subordination of this Deed of Trust to the proposed Deed of Trust to be recorded at closing.

Assignment of Rents:

Recording Date:        January 8, 2016
Recording No.:         Reception No. 2016002426

j.        The following document satisfactory to the Company must be signed, delivered and recorded:

Withdrawal of the Notice of Election and Demand for Sale by the Public Trustee numbered 2018-000146, recorded April 5, 2018 at Reception No. 2018039950, based upon the Deed of Trust recorded January 8, 2016 at Reception No. 2016002425, for the benefit of American Lending Center, LLC, a California limited liability company.

k.        Furnish for recordation a termination statement terminating the financing statement described below

Debtor:                WPB Hospitality, LLC, a Colorado limited liability company
Secured Party:         American Lending Center, LLC, a California limited liability company
Recording Date:        January 8, 2016
Recording No:          Reception No. 2016002427

l.        Furnish for recordation a full release of deed of trust:

Amount:                $4,875,000.00
Trustor/Grantor:       WPB Hospitality, LLC, a Colorado limited liability company
Trustee:               Public Trustee of Denver County
Beneficiary:           Alleron Investment Management, LLC, a Florida limited liability company
Recording Date:        January 8, 2016
Recording No:          Reception No. 2016002630

Note:   The beneficiary must present the original note, Deed of Trust, payoff letter, and a recordable Release of Deed of Trust prior to or at the closing of the Land.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Exhibit C - 0008

# SCHEDULE B
## PART I – Requirements
(Continued)

The Deed of Trust set forth above is purported to be a "Credit Line" Deed of Trust. It is a requirement that the Trustor/Grantor of said Deed of Trust provide written authorization to close said credit line account to the Lender when the Deed of Trust is being paid off through the Company or other Settlement/Escrow Agent or provide a satisfactory subordination of this Deed of Trust to the proposed Deed of Trust to be recorded at closing.

Assignment of Rents:

| | |
|---|---|
| Recording Date: | January 8, 2016 |
| Recording No.: | Reception No. 2016002631 |

m.    Furnish for recordation a termination statement terminating the financing statement described below

| | |
|---|---|
| Debtor: | WPB Hospitality, LLC, a Colorado limited liability company |
| Secured Party: | Alleron Investment Management, LLC, a Florida limited liability company |
| Recording Date: | January 8, 2016 |
| Recording No: | Reception No. 2016002632 |

n.    Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | Rio Grande Co. |
| Amount: | $45,353.70 |
| Recording Date: | November 6, 2017 |
| Recording No: | Reception No. 2017145592 |

NOTE:  Affidavit concerning Lack of Project Completion recorded November 20, 2018 at Reception No. 2018149578.

o.    Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | O'Brien Concrete Pumping – Colorado, Inc. |
| Amount: | $10,997.94 |
| Recording Date: | November 13, 2017 |
| Recording No: | Reception No. 2017147829 |

p.    Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | United Rentals (North America), Inc. |
| Amount: | $64,466.79 |
| Recording Date: | November 27, 2017 |
| Recording No: | Reception No. 2017154289 |

q.    Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | Redd Iron, Inc. |
| Amount: | $53,220.40 |

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I— Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Exhibit C - 0009

Order No. F0625660-625-YK0

# SCHEDULE B
## PART I – Requirements
(Continued)

| | | |
|---|---|---|
| Recording Date: | November 29, 2017 | |
| Recording No: | Reception No. 2017155624 | |

r.    Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | Metro Building Products, Inc. |
| Amount: | $4,650.48 |
| Recording Date: | December 6, 2017 |
| Recording No: | Reception No. 2017159172 |

s.    Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | Summit Services Group LLC |
| Amount: | $3,520.00 |
| Recording Date: | December 11, 2017 |
| Recording No: | Reception No. 2017161020 |

t.    Furnish for recordation a release of the notice extending time to file lien statement by

| | |
|---|---|
| Claimant: | Kumar Construction Management, Inc. |
| Recording Date: | January 4, 2018 |
| Recording No: | Reception No. 2018001302 |

u.    Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | HD Supply Construction Supply, Ltd d/b/a HD Supply Construction & Industrial – White Cap |
| Amount: | $3,556.12 |
| Recording Date: | January 16, 2018 |
| Recording No: | Reception No. 2018005377 |

v.    Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | Waste Connections of Colorado Inc. |
| Amount: | $5,335.41 |
| Recording Date: | February 6, 2018 |
| Recording No: | Reception No. 2018014331 |

w.    Evidence satisfactory to the Company that any fees for the Development Fee Program referenced in Resolution recorded February 28, 2007 at Reception No. 2007034333 have been complied with.

x.    Release of Lien by City and County of Denver in the amount of $121.38,plus penalties and interest, recorded October 8, 2018 at Reception No. 2018127811.

y.    Furnish to the Company an Improvement Survey Plat in form, content and certification to **Fidelity National Title Insurance Company** and **Fidelity National Title Company**.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I— Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165 Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)          Page 6

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Exhibit C - 0010

# SCHEDULE B
## PART I – Requirements
(Continued)

Note: Exception may be made to any adverse matters disclosed by the Improvement Survey Plat.

z.    The following items must be provided to the Company relevant to the determination of whether to issue Mechanics Lien Protection in connection with any policy of title insurance to be issued to-wit:

a)    Financial statement from owner(s)/seller(s)/borrower(s) including underlying construction loan guarantors, if any, that are no older than one year and three months past its "as of" date.

b)    The fixed or final cost of all improvement(s) that were constructed pursuant to the contract between owner(s)/seller(s)/borrower(s) and general contractor. This is typically an American Institute of Architect's (AIA) form of contract.

c)    Owner's/borrower's statement or substitute spreadsheets with cover letter detailing bills that have been paid and bills remaining to be paid

OR alternatively,

General contractor's statement or substitute spreadsheets with cover letter detailing bills that have been paid and bills remaining to be paid. (May be an American Institute of Architect's (AIA) form or equivalent (AIA) form.)

d)    Indemnity agreement from owner(s)/seller(s)/borrower(s) including underlying construction loan guarantors, if any, and general contractor.

e)    Furnish Certificate of Occupancy, acceptable to the Company.

f)    A current appraisal must be furnished to the Company for review and approval prior to closing.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

aa.    Recordation of Statement of Authority for WPB Hospitality, LLC, a Colorado limited liability company pursuant to Colorado Revised Statutes evidencing the existence of the entity and authority of the person(s) authorized to execute and deliver instruments affecting title to real property on behalf of the entity and containing other information required by Colorado Revised Statutes.

bb.    For each policy to be issued as identified in Schedule A, Item 2; the Company shall not be liable under this commitment until it receives a designation for a Proposed Insured, acceptable to the Company. The Company may amend this commitment to add, among other things, additional exceptions or requirements after the designation of the Proposed Insured.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165 Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)            Page 7

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Exhibit C - 0011

Order No. F0625660-625-YK0

# SCHEDULE B
## PART I – Requirements
(Continued)

**Note: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.**

---

**END OF REQUIREMENTS**

---

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I— Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Exhibit C - 0012

Order No. F0625660-625-YK0

# SCHEDULE B

# PART II – EXCEPTIONS

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.  Any facts, rights, interests or claims that are not shown by the Public Records but which could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

2.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

3.  Any encroachments, encumbrances, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by Public Records.

4.  Any lien or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

5.  Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the Public Records or attaching subsequent to the effective date hereof but prior to the date the proposed Insured acquires of record for the value the estate or interest or mortgage thereon covered by this Commitment.

    NOTE: The above exception will not appear on policies where closing and settlement has been performed by the Company.

6.  Water rights, claims of title to water, whether or not these matters are shown by the Public Records.

7.  All taxes and assessments, now or heretofore assessed, due or payable.

    NOTE:  This tax exception will be amended at policy upon satisfaction and evidence of payment of taxes.

8.  Any existing leases or tenancies, and any and all parties claiming by, through or under said lessees.

9.  Reservations contained in the Patent

    From:              The United States of America
    Recording Date:    November 20, 1889
    Recording No:      Book A25 at Page 225

    Which among other things recites as follows:

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165 Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)                                                    Page 1

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Exhibit C - 0013

# SCHEDULE B
## PART II – Exceptions
### (Continued)

Subject to any vested and accrued water rights for mining, agricultural, manufacturing or other purposes and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws and decisions of the courts; and also subject to the right of the proprietor of a vein or lode to extract and remove his ore therefrom should the same be found to penetrate or intersect the premises hereby granted, as provided by law; and the reservation from the lands hereby granted of a right of way thereon for ditches or canals constructed by the authority of the United States.

10. One-half of all oil and mineral rights as reserved by Anna Richards in Deed recorded June 27, 1945 in Book 307 at Page 469, and any and all assignments thereof, or interests therein.

11. Reservations by the Union Pacific Land Resources Corporation of (1) oil, coal and other minerals underlying the Land, (2) the exclusive right to prospect for, mine and remove oil, coal and other minerals, and (3) the right of ingress and egress and regress to prospect for, mine and remove oil, coal and other minerals, all as contained in Deed as set forth below, and any and all assignments thereof or interests therein:

    Recording Date:      December 4, 1986
    Recording No.:       Reception No. 58432

12. Terms, conditions, provisions, agreements and obligations contained in the General Warranty Deed as set forth below:

    Recording Date:      December 4, 1986
    Recording No.:       Reception No. 58432

13. Reservations by the Union Pacific Land Resources Corporation of (1) oil, coal and other minerals underlying the Land, (2) the exclusive right to prospect for, mine and remove oil, coal and other minerals, and (3) the right of ingress and egress and regress to prospect for, mine and remove oil, coal and other minerals, all as contained in Deed as set forth below, and any and all assignments thereof or interests therein:

    Recording Date:      December 17, 1987
    Recording No.:       Reception No. 217775

14. Terms, conditions, provisions, agreements and obligations contained in the General Warranty Deed as set forth below:

    Recording Date:      December 17, 1987
    Recording No.:       Reception No. 217775

15. Terms, conditions, provisions, agreements and obligations contained in the Non-Drilling Agreement as set forth below:

    Recording Date:      July 19, 1995
    Recording No.:       Reception No. 9500085835

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165 Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)                                Page 2

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Exhibit C - 0014

# SCHEDULE B
## PART II – Exceptions
(Continued)

16.     Reservations by the Union Pacific Land Resources Corporation of (1) oil, coal and other minerals underlying the Land, (2) the exclusive right to prospect for, mine and remove oil, coal and other minerals, and (3) the right of ingress and egress and regress to prospect for, mine and remove oil, coal and other minerals, all as contained in Deed as set forth below, and any and all assignments thereof or interests therein:

    Recording Date:         July 19, 1995
    Recording No.:         Reception No. 9500085838

17.     Terms, conditions, provisions, agreements and obligations contained in the Special Warranty Deed as set forth below:

    Recording Date:         July 19, 1995
    Recording No.:         Reception No. 9500085838

18.     Any taxes or assessments by reason of the inclusion of the Land in the Gateway Park Metropolitan District, as disclosed by the instrument recorded March 8, 1996 at Reception No. 9600030501.

    Note: A Notice changing the name to the Sand Creek Metropolitan District recorded March 25, 1996 at Reception No. 96000039036. A Second Amendment to the Service Plan for said District recorded January 8, 1997 at Reception No. 97000003234. Notices of Special District Authorization or Issuance of General Obligation Indebtedness recorded July 15, 1997 at Reception No. 9700091152; July 22, 1998 at Reception No. 9800116369; November 18, 1998 at Reception No. 9800193552; December 13, 2000 at Reception No. 2000181262 and Reception No. 2000181263; January 31, 2003 at Reception No. 2003017833; March 24, 2004 at Reception No. 2004078051 and April 5, 2004 at Reception No. 2004083205.

19.     Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

    Recording Date:         June 4, 1996
    Recording No:         Reception No. 9600076399

    Note: Amendment to said Covenants recorded March 13, 2002 at Reception No. 2002049550.

20.     Terms, conditions, provisions, agreements and obligations contained in the Reuse Agreement as set forth below:

    Recording Date:         August 12, 1997
    Recording No.:         Reception No. 9700105655

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Exhibit C - 0015

Order No. F0625660-625-YK0

# SCHEDULE B
## PART II – Exceptions
(Continued)

21.  Terms, conditions, provisions, agreements and obligations contained in the Covenant and Permit as set forth below:

Recording Date:      February 6, 1998
Recording No.:       Reception No. 9800018524

22.  All items as set forth and shown on the Site Plan of Gateway Park IV West Streetscape recorded April 13, 1998 at Reception No. 9800056144, and any and all supplements and amendments thereto.

23.  Terms, conditions, restrictions, provisions, notes and easements but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth on the Plat(s) of Gateway Park IV – Denver Filing No. 5 set forth below:

Recording Date:      April 12, 2000
Recording No:        Reception No. 2000051305

24.  Terms, conditions, provisions, agreements and obligations contained in the Covenant and Permit as set forth below:

Recording Date:      July 31, 2001
Recording No.:       Reception No. 2001125115

25.  Terms, conditions, provisions, agreements and obligations contained in the Declaration of Easement as set forth below:

Recording Date:      October 23, 2001
Recording No.:       Reception No. 2001179891

Note: Amendment thereto recorded November 20, 2001 at Reception No. 2001196014.

26.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:          Denver Board of Water Commissioners
Purpose:             Water Pipelines
Recording Date:      November 16, 2001
Recording No:        Reception No. 2001194997

27.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:          Denver Board of Water Commissioners
Purpose:             Water Pipelines
Recording Date:      December 11, 2001
Recording No:        Reception No. 2001210989

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165 Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)                                    Page 4

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Exhibit C - 0016

## SCHEDULE B
## PART II – Exceptions
(Continued)

28.     Terms, conditions, restrictions, provisions, notes and easements but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth on the Plat(s) of Gateway Park IV – Denver Filing No. 7 set forth below:

Recording Date:        January 25, 2002
Recording No:          Reception No. 2002017281

29.     Terms, conditions, provisions, agreements and obligations contained in the Wastewater Easement and Indemnity Agreement as set forth below:

Recording Date:        April 2, 2002
Recording No.:         Reception No. 2002061126

30.     Terms, conditions, provisions, agreements and obligations contained in the Declaration of Easement as set forth below:

Recording Date:        October 28, 2002
Recording No.:         Reception No. 2002203306

Note: First Amendment thereto recorded March 26, 2009 at Reception No. 2009037554, and Correction to First Amendment recorded April 29, 2009 at Reception No. 2009051918.
Note: Second Amendment thereto recorded May 11, 2009 at Reception No. 2009057989.
Note: Third Amendment thereto recorded June 13, 2011 at Reception No. 2011063794.

31.     Terms, conditions, provisions, agreements and obligations contained in the Wastewater Easement and Indemnity Agreement as set forth below:

Recording Date:        November 19, 2002
Recording No.:         Reception No. 2002219036

32.     Terms, conditions, provisions, agreements and obligations contained in the Declaration of Easement as set forth below:

Recording Date:        May 21, 2004
Recording No.:         Reception No. 2004111743

33.     Terms, conditions, provisions, agreements and obligations contained in the Resolution Authorizing the Sand Creek Metropolitan District Development Fee Program and Lien Arising therefrom as set forth below:

Recording Date:        February 28, 2007
Recording No.:         Reception No. 2007034333

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I— Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN LAND TITLE ASSOCIATION

Exhibit C - 0017

## SCHEDULE B
## PART II – Exceptions
(Continued)

34.   Terms, conditions, provisions, agreements and obligations contained in the Permanent Easement as set forth below:

Recording Date:          December 3, 2008
Recording No.:           Reception No. 2008163403

Note: Correction thereto recorded April 21, 2009 at Reception No. 2009048553.

35.   Terms, conditions, provisions, agreements and obligations contained in the Wastewater Facilities Easement and Indemnity Agreement as set forth below:

Recording Date:          February 11, 2009
Recording No.:           Reception No. 2009016494

36.   Easements, terms, conditions, provisions, agreements and obligations contained in the Bestwestern – Gateway Park Development Plan as set forth below:

Recording Date:          May 26, 2009
Recording No.:           Reception No. 2009063902

Note: Amendment No. 1 to said Development Plan recorded September 4, 2014 at Reception No. 2014107493 and December 11, 2014 at Reception No. 2014151039 and June 12, 2017 at Reception No. 2017076517.

37.   Terms, conditions, provisions, agreements and obligations contained in the Ordinance No. 20160415, Series of 2016 as set forth below:

Recording Date:          August 11, 2016
Recording No.:           Reception No. 2016106491

---

## END OF EXCEPTIONS

---

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I— Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165 Commitment for Title Insurance (Adopted 6-17-06 Revised 08-01-2016)                                  Page 6

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Exhibit C - 0018

12/11/2018 9:05 AM  Commitment No.:  597-F0625660-625-YK0

# AFFIDAVIT AND INDEMNITY AGREEMENT

**TO Fidelity National Title Company** a Colorado Corporation and Fidelity National Title Insurance Company, a Florida Corporation.

1.    This is written evidence to you that there are no unpaid bills, and to the extent there may be unpaid bills, that the undersigned undertakes and agrees to cause the same to be paid such that there shall be no mechanics or materialmen's liens affecting the property for materials or labor furnished for construction and erection, repairs or improvements contracted by or on behalf of the undersigned on property:

   legally described as:

   **See Attached Affidavit and Indemnity Agreement Legal Description**

   Property Address:   16161 East 40th Avenue, Denver, CO

2.    We further represent that to the actual knowledge and belief of the undersigned there are no public improvements affecting the property prior to the date of closing that would give rise to a special property tax assessment against the property after the date of closing.

3.    We further represent that to the actual knowledge and belief of the undersigned there are no pending proceedings or unsatisfied judgments of record, in any Court, State, or Federal, nor any tax liens filed or taxes assessed against us which may result in liens, and that if there are judgments, bankruptcies, probate proceedings, state or federal tax liens of record against parties with same or similar names, that they are not against us.

4.    We further represent that there are no unrecorded contracts, leases, easements, or other agreements or interests relating to said premises of which we have knowledge.

5.    We further represent that to the actual knowledge and belief of the undersigned we are in sole possession of the real property described herein other than leasehold estates reflected as recorded items under the subject commitment for title insurance.

6.    We further represent that there are no unpaid charges and assessments that could result in a lien in favor of any association of homeowners which are provided for in any document referred to in Schedule B of Commitment referenced above.

7.    We further understand that any payoff figures shown on the settlement statement have been supplied to Fidelity National Title Company as settlement agent by the seller's/borrower's lender and are subject to confirmation upon tender of the payoff to the lender.   If the payoff figures are inaccurate, we hereby agree to immediately pay any shortage(s) that may exist. If applicable as disclosed or referred to on Schedule A of Commitment referenced above.

   The undersigned affiant(s) know the matters herein stated are true and indemnifies Fidelity National Title Company, a Colorado Corporation and Fidelity National Title Insurance Company, a Florida Corporation against loss, costs, damages and expenses of every kind incurred by it by reason of its reliance on the statements made herein.

   This agreement is executed with and forms a part of the sale and/or financing of the above described premises, and is given in addition to the conveyance and/or financing of the premises in consideration for the conveyance and/or financing, and forms a complete agreement by itself for any action thereon.

=phrasebox AffindemSigBlock=

Exhibit C - 0019

12/11/2018 9:05 AM  Commitment No.:  597-F0625660-625-YK0

## ATTACHED AFFIDAVIT AND INDEMNITY AGREEMENT
## LEGAL DESCRIPTION

A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV – Denver Filing No. 7, according to the plat thereof recorded January 25, 2002 in Plat Book 33 at Pages 95 and 96, City and County of Denver, State of Colorado, being more particularly described as follows:

Commencing at the Northwest corner of said Plot 1;

Thence North 89 Degrees 52 Minutes 06 Seconds East along the North line of said Plot 1 a distance of 295.63 feet to the True Point of Beginning;

Thence North 89 Degrees 52 Minutes 06 Seconds East along the North line of said Plot 1 a distance of 396.64 feet to the Northeast corner of said Plot 1;

Thence the following three (3) courses along the East line of said Plot 1:

1.      Thence South 10 Degrees 26 Minutes 16 Seconds West a distance of 95.82 feet to a point of curve;

2.      Thence along the arc of a curve to the left having a central angle of 10 Degrees 34 Minutes 10 Seconds,
a       radius of 315.00 feet and an arc length of 58.11 feet;

3.      Thence South 00 Degrees 07 Minutes 54 Seconds East a distance of 307.25 feet to the Southeast corner
of      said Plot 1;

Thence the following four (4) courses along the South line of said Plot 1:

1.      Thence South 89 Degrees 52 Minutes 06 Seconds West a distance of 100.00 feet;

2.      Thence South 00 Degrees 07 Minutes 54 Seconds East a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue as dedicated by 40th Avenue, Chambers Road-Pena Boulevard Subdivision recorded May 6, 1997 in Plat Book 31 at Pages 52 through 54 of said City and County of Denver Records;

3.      Thence South 89 Degrees 52 Minutes 06 Seconds West along the North right-of-way line of said 40th Avenue a distance of 250.09 feet;

4.      Thence South 89 Degrees 52 Minutes 04 Seconds West along the North right-of-way line of said 40th Avenue a distance of 23.63 feet;

Thence North 00 Degrees 07 Minutes 54 Seconds West a distance of 464.23 feet to the True Point of Beginning.

Note: the above legal description was created by Creighton R. Moore, PLS NO. 10945

Exhibit C - 0020

**WIRE SAFE**™ | Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
|---|---|
| *http://www.fbi.gov* | *http://www.ic3.gov* |

---

Exhibit C - 0021

*TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*

## FIDELITY NATIONAL FINANCIAL

### PRIVACY NOTICE

At Fidelity National Financial, Inc., we respect and believe it is important to protect the privacy of consumers and our customers. This Privacy Notice explains how we collect, use, and protect any information that we collect from you, when and to whom we disclose such information, and the choices you have about the use of that information. A summary of the Privacy Notice is below, and we encourage you to review the entirety of the Privacy Notice following this summary. You can opt-out of certain disclosures by following our opt-out procedure set forth at the end of this Privacy Notice.

| | |
|---|---|
| **Types of Information Collected.** You may provide us with certain personal information about you, like your contact information, address demographic information, social security number (SSN), driver's license, passport, other government ID numbers and/or financial information. We may also receive browsing information from your Internet browser, computer and/or mobile device if you visit or use our websites or applications. | **How Information is Collected.** We may collect personal information from you via applications, forms, and correspondence we receive from you and others related to our transactions with you. When you visit our websites from your computer or mobile device, we automatically collect and store certain information available to us through your Internet browser or computer equipment to optimize your website experience. |
| **Use of Collected Information.** We request and use your personal information to provide products and services to you, to improve our products and services, and to communicate with you about these products and services. We may also share your contact information with our affiliates for marketing purposes. | **When Information Is Disclosed.** We may disclose your information to our affiliates and/or nonaffiliated parties providing services for you or us, to law enforcement agencies or governmental authorities, as required by law, and to parties whose interest in title must be determined. |
| **Choices With Your Information.** Your decision to submit information to us is entirely up to you. You can opt-out of certain disclosure or use of your information or choose to not provide any personal information to us. | **Information From Children.** We do not knowingly collect information from children who are under the age of 13, and our website is not intended to attract children. |
| **Privacy Outside the Website.** We are not responsible for the privacy practices of third parties, even if our website links to those parties' websites. | **International Users.** By providing us with your information, you consent to its transfer, processing and storage outside of your country of residence, as well as the fact that we will handle such information consistent with this Privacy Notice. |
| **The California Online Privacy Protection Act.** Some FNF companies provide services to mortgage loan servicers and, in some cases, their websites collect information on behalf of mortgage loan servicers. The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through those websites. | |
| **Your Consent To This Privacy Notice.** By submitting information to us or by using our website, you are accepting and agreeing to the terms of this Privacy Notice. | **Access and Correction; Contact Us.** If you desire to contact us regarding this notice or your information, please contact us at privacy@fnf.com or as directed at the end of this Privacy Notice. |

# FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Fidelity National Financial, Inc. and its majority-owned subsidiary companies providing title insurance, real estate- and loan-related services (collectively, "FNF", "our" or "we") respect and are committed to protecting your privacy. We will take reasonable steps to ensure that your Personal Information and Browsing Information will only be used in compliance with this Privacy Notice and applicable laws. This Privacy Notice is only in effect for Personal Information and Browsing Information collected and/or owned by or on behalf of FNF, including Personal Information and Browsing Information collected through any FNF website, online service or application (collectively, the "Website").

**Types of Information Collected**
We may collect two types of information from you: Personal Information and Browsing Information.

Personal Information. FNF may collect the following categories of Personal Information:
- contact information (e.g., name, address, phone number, email address);
- demographic information (e.g., date of birth, gender, marital status);
- social security number (SSN), driver's license, passport, and other government ID numbers;
- financial account information; and
- other personal information needed from you to provide title insurance, real estate- and loan-related services to you.

Browsing Information. FNF may collect the following categories of Browsing Information:
- Internet Protocol (or IP) address or device ID/UDID, protocol and sequence information;
- browser language and type;
- domain name system requests;
- browsing history, such as time spent at a domain, time and date of your visit and number of clicks;
- http headers, application client and server banners; and
- operating system and fingerprinting data.

**How Information is Collected**
In the course of our business, we may collect *Personal Information* about you from the following sources:
- applications or other forms we receive from you or your authorized representative;
- the correspondence you and others send to us;
- information we receive through the Website;
- information about your transactions with, or services performed by, us, our affiliates or nonaffiliated third parties; and
- information from consumer or other reporting agencies and public records maintained by governmental entities that we obtain directly from those entities, our affiliates or others.

If you visit or use our Website, we may collect *Browsing Information* from you as follows:
- Browser Log Files. Our servers automatically log each visitor to the Website and collect and record certain browsing information about each visitor. The Browsing Information includes generic information and reveals nothing personal about the user.
- Cookies. When you visit our Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. When you visit a website again, the cookie allows the website to recognize your computer. Cookies may store user preferences and other information. You can choose whether or not to accept cookies by changing your Internet browser settings, which may impair or limit some functionality of the Website.

**Use of Collected Information**
Information collected by FNF is used for three main purposes:
- To provide products and services to you or any affiliate or third party who is obtaining services on your behalf or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you and to inform you about our, our affiliates' and third parties' products and services, jointly or independently.

**When Information Is Disclosed**
We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) and Browsing Information to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Please see the section "Choices With Your Personal Information" to learn how to limit the discretionary disclosure of your Personal Information and Browsing Information.

Disclosures of your Personal Information may be made to the following categories of affiliates and nonaffiliated third parties:
- to third parties to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to our affiliate financial service providers for their use to market their products or services to you;
- to nonaffiliated third party service providers who provide or perform services on our behalf and use the disclosed information only in connection with such services;
- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to market financial products or services to you;

Copyright © 2017. Fidelity National Financial, Inc. All Rights Reserved
Order No. F0625660-625-YK0

- to law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoena or court order;
- to lenders, lien holders, judgment creditors, or other parties claiming an interest in title whose claim or interest must be determined, settled, paid, or released prior to closing; and
- other third parties for whom you have given us written authorization to disclose your Personal Information.

We may disclose Personal Information and/or Browsing Information when required by law or in the good-faith belief that such disclosure is necessary to:

- comply with a legal process or applicable laws;
- enforce this Privacy Notice;
- investigate or respond to claims that any material, document, image, graphic, logo, design, audio, video or any other information provided by you violates the rights of a third party; or
- protect the rights, property or personal safety of FNF, its users or the public.

We maintain reasonable safeguards to keep your Personal Information secure. When we provide Personal Information to our affiliates or third party service providers as discussed in this Privacy Notice, we expect that these parties process such information in compliance with our Privacy Notice or in a manner that is in compliance with applicable privacy laws. The use of your information by a business partner may be subject to that party's own Privacy Notice. Unless permitted by law, we do not disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of our bankruptcy, reorganization, insolvency, receivership or an assignment for the benefit of creditors. You expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings. We cannot and will not be responsible for any breach of security by a third party or for any actions of any third party that receives any of the information that is disclosed to us.

**Choices With Your Information**
Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you. The uses of your Personal Information and/or Browsing Information that, by law, you cannot limit, include:

- for our everyday business purposes – to process your transactions, maintain your account(s), to respond to law
- enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court
- orders, or report to credit bureaus;
- for our own marketing purposes;
- for joint marketing with financial companies; and
- for our affiliates' everyday business purposes – information about your transactions and experiences.

You may choose to prevent FNF from disclosing or using your Personal Information and/or Browsing Information under the following circumstances ("opt-out"):

- for our affiliates' everyday business purposes – information about your creditworthiness; and
- for our affiliates to market to you.

To the extent permitted above, you may opt-out of disclosure or use of your Personal Information and Browsing Information by notifying us by one of the methods at the end of this Privacy Notice. We do not share your personal information with non-affiliates for their direct marketing purposes.

For California Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties, except as permitted by California law. Currently, our policy is that we do not recognize "do not track" requests from Internet browsers and similar devices.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties, except as permitted by Vermont law, such as to process your transactions or to maintain your account. In addition, we will not share information about your creditworthiness with our affiliates except with your authorization. For joint marketing in Vermont, we will only disclose your name, contact information and information about your transactions.

**Information From Children**
The Website is meant for adults and is not intended or designed to attract children under the age of thirteen (13).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian. By using the Website, you affirm that you are over the age of 13 and will abide by the terms of this Privacy Notice.

**Privacy Outside the Website**
The Website may contain links to other websites. FNF is not and cannot be responsible for the privacy practices or the content of any of those other websites.

**International Users**

FNF's headquarters is located within the United States. If you reside outside the United States or are a citizen of the European Union, please note that we may transfer your Personal Information and/or Browsing Information outside of your country of residence or the European Union for any of the purposes described in this Privacy Notice. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection and transfer of such information in accordance with this Privacy Notice.

**The California Online Privacy Protection Act**

For some FNF websites, such as the Customer CareNet ("CCN"), FNF is acting as a third party service provider to a mortgage loan servicer. In those instances, we may collect certain information on behalf of that mortgage loan servicer via the website. The information which we may collect on behalf of the mortgage loan servicer is as follows:

- first and last name;
- property address;
- user name and password;
- loan number;
- social security number - masked upon entry;
- email address;
- three security questions and answers; and
- IP address.

The information you submit through the website is then transferred to your mortgage loan servicer by way of CCN. **The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through this website. For example, if you believe that your payment or user information is incorrect, you must contact your mortgage loan servicer.**

CCN does not share consumer information with third parties, other than (1) those with which the mortgage loan servicer has contracted to interface with the CCN application, or (2) law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders. All sections of this Privacy Notice apply to your interaction with CCN, except for the sections titled "Choices with Your Information" and "Access and Correction." If you have questions regarding the choices you have with regard to your personal information or how to access or correct your personal information, you should contact your mortgage loan servicer.

**Your Consent To This Privacy Notice**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information by us in compliance with this Privacy Notice. Amendments to the Privacy Notice will be posted on the Website. Each time you provide information to us, or we receive information about you, following any amendment of this Privacy Notice will signify your assent to and acceptance of its revised terms for all previously collected information and information collected from you in the future. We may use comments, information or feedback that you submit to us in any manner that we may choose without notice or compensation to you.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to access or correct your Personal Information, or want to opt-out of information sharing with our affiliates for their marketing purposes, please send your requests to privacy@fnf.com or by mail or phone to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer
(888) 934-3354