# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WPB HOSPITALITY, LLC, | § | CASE NO. 18-18636-EEB |
| | § | |
| Debtor. | § | |

## JOINT OBJECTION TO DEBTOR-IN-POSSESSION'S MOTION TO APPROVE SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b) AND (f) AND MOTION TO COMPENSATE REALTOR  (SAT BROADWAY, LLC)

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COME NOW Abbas Consulting, Inc. and Frisco Acquisition, LLC ("Creditors") and file this their Joint Objection to Debtor-in-Possession's Motion to Approve Sale of Property Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f) and Motion to Compensate Realtor (SAT Broadway, LLC), and would respectfully show the Court as follows:

1.    This case was commenced by the filing of a Chapter 11 petition on October 3, 2018.

2.    There has been no Trustee appointed in this case.  The Debtor is acting as a Debtor-in-possession.  The Debtor's exclusive period to file a Plan in this case expired on or about January 31, 2019.  No Plan has been filed in this case.

3.    This Court has jurisdiction over this matter and property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334.

4.    This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).

5.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

OBJECTION TO MOTION TO SELL                                                                    Page 1

6.      The Creditors[1] asserting secured claims related to this Objection are described as follows:

| | |
|---|---|
| Rio Grande Co. (Abbas Consulting) | Claim  $53,830.49 |
| O'Brien Concrete Pumping (Frisco Acquisition) | Claim  $13,887.26 |
| HD Supply Construction Supply (Frisco Acquisition) | Claim  $4,445.38 |

7.      Creditors have reason to believe that some of the other secured claims in this case are insider claims and should be subordinated to the payment of other allowed secured and unsecured claims in this case.

8.      The Debtor's response to the Motion to Lift Stay recites that the Debtor owns an incomplete hotel under construction on a 4-acre parcel near the Denver Airport.  That the failure to complete the project is tied to the failure of the Debtor's contractor to handle funds properly and complete the work paid for.  The total indebtedness to other creditors is approximately $270,000 and $250,000 to City and County of Denver.  So, to retire all the debt in this case an amount greater than $5.5 Million will be needed.

9.      Debtor has contended there is at least $4,000,000 equity in the project. [Docket No. 44]

10.     Debtor has filed a motion to Approve Sale of Property Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. Section 363(b) and (f) and Motion to Compensate Realtor.

11.     The Debtor has elected to move forward with an offer from SAT BROADWAY, LLC for $7,000,000.

_____

12.     While the Motion states that the price is greater than the aggregate value of the liens on the property and there is an analysis of the liens in the Motion and who is projected to be paid from the sale, there is no analysis of the effect of the pre-paying the secured lender.

13.     Creditors have been working for weeks on an offer to the Debtor and an offer to the equity interest holder that will produce a greater return than that being provided by SAT Broadway, LLC.  The Creditors request that their offer be considered by the Court at the same time any other offer to sell the hotel property is considered.

14.     Further, Debtor does not meet the requirements for authorization to sell the property free and clear.  In its motion, Debtor seeks authorization to sell its property pursuant to 11 U.S.C. § 363(f)(1)-(5).[2]  11 U.S.C. § 363(f) provides that Debtor can sell its property free and clear of any interest in such property (including liens) **only** if one of the following provisions apply to **every single creditor that has a lien attached to the property**: (1) non-bankruptcy law permits the sale of the property free and clear of the creditor's lien; (2) the creditor consents; (3) the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (4) the creditor's interest is in bona fide dispute; or (5) the creditor could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[3]

15.     Debtor claims, without any real explanation or citation to law, that all five provisions of Section 363(f) apply.  However, as covered below, none of the provisions urged by Debtor apply, and thus the Court should deny the motion.

---

[2]      See paragraphs 282 – 293 of Debtor's motion.

[3]      11 U.S.C. § 363(f)("The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.").

16.     First, Section 363(f)(1) does not apply, because non-bankruptcy law does not permit the sale of the property free and clear of liens.  In fact, Debtor has not even cited in its motion any applicable non-bankruptcy law – and Creditors are aware of none – that would permit the sale of the property free and clear. Thus, the provision does not apply.

17.     Further, Section 363(f)(2) does not apply either, because, as is evident by this objection, Creditors do not consent.

18.     Further, Section 363(f)(4) does not apply either.  While Debtor claims that there is a bona fide dispute as to Creditors' claims, this is simply not true.  As acknowledged in Debtor's motion, Creditors have filed proofs of claims in this case.  However, Debtor has not filed an objection to any of those claims.  Therefore, those claims are allowed **as a matter of law**, and accordingly there is and can be **no** dispute as to their validity, much less a bona fide one.[4]

19.     Attached hereto as Exhibit "A" is a summary and the offer being made to buy the property.  All of these papers were forwarded to Debtor's counsel  on March 15, 2019 and presented to the Court in this Objection.

WHEREFORE, PREMISES CONSIDERED, Abbas Consulting, Inc. and Frisco Acquisition, LLC respectfully request that this Court enter an Order denying the relief requested in the Motion for the reasons set forth herein, and for such other and further relief to which they may be justly entitled.

Dated: March 15, 2019.

Respectfully submitted,

/s/ Joyce W. Lindauer
Joyce W. Lindauer

---

[4]     11 U.S.C. § 502(a)("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.").

Texas State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, Texas 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Abbas Consulting, Inc. and
Frisco Acquisition, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 15, 2019, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties listed below.

David A. Laird on behalf of Creditor   Aileron Investment Management, LLC
david.laird@moyewhite.com,   lisa.oliver@moyewhite.com;brett.laursen@moyewhite.com

David A. Laird on behalf of Creditor   American Lending Center, LLC
david.laird@moyewhite.com,   lisa.oliver@moyewhite.com;brett.laursen@moyewhite.com

David B. Law on behalf of Creditor   HD Supply Construction Supply, Ltd. d/b/a HD Supply
Construction & Industrial   White Cap
dbl@millerandlaw.com,   R58255@notify.bestcase.com;les@millerandlaw.com

David B. Law on behalf of Creditor   OBrien Concrete Pumping - Colorado, Inc. n/k/a OBCP-CO, Inc.
dbl@millerandlaw.com,   R58255@notify.bestcase.com;les@millerandlaw.com

David B. Law on behalf of Creditor   Rio Grande Co.
dbl@millerandlaw.com,   R58255@notify.bestcase.com;les@millerandlaw.com

Joyce W. Lindauer on behalf of Creditor   Abbas Consulting, Inc.
joyce@joycelindauer.com,   dian@joycelindauer.com

Joyce W. Lindauer on behalf of Creditor   Frisco Acquisition, LLC
joyce@joycelindauer.com,   dian@joycelindauer.com

Arthur Lindquist-Kleissler on behalf of Debtor   WPB Hospitality, LLC
Arthuralklaw@gmail.com,   seanalklaw@gmail.com;filingsalklaw@gmail.com

Alan K. Motes on behalf of U.S. Trustee   US Trustee
Alan.Motes@usdoj.gov

Brett  Payton on behalf of Creditor   Alpine Hospitality, Inc.
bpayton@cp2law.com

Timothy M. Swanson on behalf of Creditor   American Lending Center, LLC

tim.swanson@moyewhite.com,
audra.duzenack@moyewhite.com;Melissa.dymerski@moyewhite.com;robin.anderson@moyewhite.com

US Trustee
USTPRegion19.DV.ECF@usdoj.gov

_/s/ Joyce W. Lindauer_
Joyce W. Lindauer

**From:** Jeff Veteto
**Sent:** Friday, March 15, 2019 9:19 AM
**To:** 'Arthur Lindquist-Kleissler' <arthuralklaw@gmail.com>; Brett Payton <bpayton@cp2law.com>; Joyce
Lindauer <joyce@joycelindauer.com>
**Cc:** Adam Stacey-Richardson <adam4555@gmail.com>; Wanda Bertoia <onedabw@gmail.com>; Sean
GMAIL <seanalklaw@gmail.com>
**Subject:** RE: LLC Purchase agreement with Abbas

Arthur:

After quite a bit of back and forth, we've reconciled the deal; documents for which are attached. The
only thing outstanding is approval of a Deed of Trust form by Brett and signature of the same for
security of the promissory note. I'm inclined to think you could proceed with presentation by motion
without that piece given the execution of the two main agreements which contemplate the Deed of
Trust as it is.

Here is a quick summation of the deal:

       Frisco Acquisition is proposing to purchase (i) the real property from WPB; and (ii) the LLC
interests in WPB from Wanda.

- In the real property contract, it assumes the ALC loan and pays the debts of
  lienholders at closing
- In the LLC contract, Wanda receives $250K at closing and $2,250,000 over 5 years
  under an owner financed promissory note secured by a deed of trust.

Best Regards,

**Jeffery M. Veteto**
Associate Attorney



JOYCE
LINDAUER
Attorney at Law
And Mediator
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest, Suite 625
Dallas, Texas 75230
Ph: (972) 503-4033
Fax: (972) 503-4034



EXHIBIT

A

<table><tbody><tr><td>1
2</td><td>The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission.
(CBS3-6-18) (Mandatory 1-19)</td></tr></tbody></table>

3
4  **THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR**
5  **OTHER COUNSEL BEFORE SIGNING.**
6

7  # CONTRACT TO BUY AND SELL REAL ESTATE
8  ## (COMMERCIAL)
9  ### (☑ Property with No Residences)
10 ### (☐ Property with Residences-Residential Addendum Attached)
11
12                                                                 Date: February 27, 2019

13  ### AGREEMENT

14  **1.   AGREEMENT.** Buyer agrees to buy and Seller agrees to sell the Property described below on the terms and conditions set
15  forth in this contract (Contract).

16  **2.   PARTIES AND PROPERTY.**
17      **2.1.   Buyer.** Frisco Acquisition, LLC                                                 (Buyer) will take title
18  to the Property described below as ☐ **Joint Tenants** ☐ **Tenants In Common** ☐ **Other** _____
19      **2.2.   No Assignability.** This Contract **IS NOT** assignable by Buyer unless otherwise specified in **Additional Provisions.**
20      **2.3.   Seller.** WPB Hospitality, LLC, a Colorado Limited Liability Company                   (Seller) is the current
21  owner of the Property described below.
22      **2.4.   Property.** The Property is the following legally described real estate in the County of Denver          , Colorado:
23  as fully defined in Exhibit A attached hereto, and incorporated by reference as if set forth in full,
24
25
26
27
28  known as No. 16161 E. 40th Avenue              Denver          Colorado      80329          ,
29              Street Address                      City            State          Zip
30  together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto and all interest of
31  Seller in vacated streets and alleys adjacent thereto, except as herein excluded (Property).
32      **2.5.   Inclusions.** The Purchase Price includes the following items (Inclusions):
33          **2.5.1.   Inclusions - Attached.** If attached to the Property on the date of this Contract, the following items are
34  included unless excluded under **Exclusions**: lighting, heating, plumbing, ventilating and air conditioning units, TV antennas, inside
35  telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems,
36  built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), garage door openers
37  (including _____ remote controls). If checked, the following are owned by the Seller and included (leased items should be listed
38  under **Due Diligence Documents**): ☑ **None** ☐ **Solar Panels** ☐ **Water Softeners** ☐ **Security Systems** ☐ **Satellite Systems**
39  (including satellite dishes). If any additional items are attached to the Property after the date of this Contract, such additional items
40  are also included in the Purchase Price.
41          **2.5.2.   Inclusions – Not Attached.** If on the Property, whether attached or not, on the date of this Contract, the
42  following items are included unless excluded under **Exclusions**: storm windows, storm doors, window and porch shades, awnings,
43  blinds, screens, window coverings and treatments, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates,
44  heating stoves, storage sheds, carbon monoxide alarms, smoke/fire detectors and all keys.
45          **2.5.3.   Personal Property - Conveyance.** Any personal property must be conveyed at Closing by Seller free and
46  clear of all taxes (except personal property taxes for the year of Closing), liens and encumbrances, except _____.
47  Conveyance of all personal property will be by bill of sale or other applicable legal instrument.
48          **2.5.4.   Other Inclusions.** The following items, whether fixtures or personal property, are also included in the
49  Purchase Price:
50
51
52
53

54     **2.5.5. Parking and Storage Facilities.** The use or ownership of the following parking facilities:
55 _____; and the use or ownership of the following storage facilities: _____.
56 Note to Buyer: If exact rights to the parking and storage facilities is a concern to Buyer, Buyer should investigate.
57     **2.5.6. Trade Fixtures.** With respect to trade fixtures, Seller and Buyer agree as follows:
58
59
60
61     The trade fixtures to be conveyed at Closing will be conveyed by Seller free and clear of all taxes (except personal
62 property taxes for the year of Closing), liens and encumbrances, except _____. Conveyance
63 will be by bill of sale or other applicable legal instrument.
64 **2.6. Exclusions.** The following items are excluded (Exclusions):
65
66
67
68 ~~**2.7. Water Rights/Well Rights.**~~
69 ~~**2.7.1. Deeded Water Rights.** The following legally described water rights:~~
70
71
72
73 ~~Any deeded water rights will be conveyed by a good and sufficient _____ deed at Closing.~~
74 ~~**2.7.2. Other Rights Relating to Water.** The following rights relating to water not included in §§ 2.7.1, 2.7.3 and~~
75 ~~2.7.4, will be transferred to Buyer at Closing:~~
76
77
78 ~~**2.7.3. Well Rights.** Seller agrees to supply required information to Buyer about the well. Buyer understands that~~
79 ~~if the well to be transferred is a "Small Capacity Well" or a "Domestic Exempt Water Well" used for ordinary household purposes,~~
80 ~~Buyer must, prior to or at Closing, complete a Change in Ownership form for the well. If an existing well has not been registered~~
81 ~~with the Colorado Division of Water Resources in the Department of Natural Resources (Division), Buyer must complete a~~
82 ~~registration of existing well form for the well and pay the cost of registration. If no person will be providing a closing service in~~
83 ~~connection with the transaction, Buyer must file the form with the Division within sixty days after Closing. The Well Permit # is~~
84 ~~_____.~~
85 ~~**2.7.4. Water Stock Certificates.** The water stock certificates to be transferred at Closing are as follows:~~
86
87
88
89 ~~**2.7.5. Conveyance.** If Buyer is to receive any rights to water pursuant to § 2.7.2 (Other Rights Relating to Water),~~
90 ~~§ 2.7.3 (Well Rights), or § 2.7.4 (Water Stock Certificates), Seller agrees to convey such rights to Buyer by executing the~~
91 ~~applicable legal instrument at Closing.~~

92 **3. DATES, DEADLINES AND APPLICABILITY.**
93     **3.1. Dates and Deadlines.**

| Item No. | Reference | Event | Date or Deadline |
|---|---|---|---|
| 1 | § 4.3 | Alternative Earnest Money Deadline | MEC + 5 Days |
| | | **Title** | |
| 2 | § 8.1, 8.4 | Record Title Deadline | MEC + 3 Days |
| 3 | § 8.2, 8.4 | Record Title Objection Deadline | MEC + 10 Days |
| 4 | § 8.3 | Off-Record Title Deadline | MEC + 3 Days |
| 5 | § 8.3 | Off-Record Title Objection Deadline | MEC + 10 Days |
| 6 | § 8.5 | Title Resolution Deadline | MEC + 20 Days |
| 7 | § 8.6 | Right of First Refusal Deadline | N/A |
| | | **Owners' Association** | |
| 8 | § 7.2 | Association Documents Deadline | MEC + 5 Days |
| 9 | § 7.4 | Association Documents Termination Deadline | MEC + 10 Days |
| | | **Seller's Disclosures** | |
| 10 | § 10.1 | Seller's Property Disclosure Deadline | MEC + 5 Days |
| 11 | § 10.10 | Lead-Based Paint Disclosure Deadline (if Residential Addendum attached) | N/A |

| | | Loan and Credit | |
|---|---|---|---|
| 12 | § 5.1 | New Loan Application Deadline | N/A |
| 13 | § 5.2 | New Loan Termination Deadline | N/A |
| 14 | § 5.3 | Buyer's Credit Information Deadline | N/A |
| 15 | § 5.3 | Disapproval of Buyer's Credit Information Deadline | N/A |
| 16 | § 5.4 | Existing Loan Deadline | MEC + 5 Days |
| 17 | § 5.4 | Existing Loan Termination Deadline | MEC + 10 Days |
| 18 | § 5.4 | Loan Transfer Approval Deadline | MEC + 30 Days |
| 19 | § 4.7 | Seller or Private Financing Deadline | N/A |
| | | Appraisal | |
| 20 | § 6.2 | Appraisal Deadline | N/A |
| 21 | § 6.2 | Appraisal Objection Deadline | N/A |
| 22 | § 6.2 | Appraisal Resolution Deadline | N/A |
| | | Survey | |
| 23 | § 9.1 | New ILC or New Survey Deadline | N/A |
| 24 | § 9.3 | New ILC or New Survey Objection Deadline | N/A |
| 25 | § 9.3 | New ILC or New Survey Resolution Deadline | N/A |
| | | Inspection and Due Diligence | |
| 26 | § 10.3 | Inspection Objection Deadline | MEC + 21 days |
| 27 | § 10.3 | Inspection Termination Deadline | MEC + 28 days |
| 28 | § 10.3 | Inspection Resolution Deadline | MEC + 28 days |
| 29 | § 10.5 | Property Insurance Termination Deadline | MEC + 28 days |
| 30 | § 10.6 | Due Diligence Documents Delivery Deadline | MEC + 5 days |
| 31 | § 10.6 | Due Diligence Documents Objection Deadline | MEC + 21 days |
| 32 | § 10.6 | Due Diligence Documents Resolution Deadline | MEC + 28 days |
| 33 | § 10.6 | Environmental Inspection Termination Deadline | MEC + 28 days |
| 34 | § 10.6 | ADA Evaluation Termination Deadline | N/A |
| 35 | § 10.7 | Conditional Sale Deadline | N/A |
| 36 | § 10.10 | Lead-Based Paint Termination Deadline (if Residential Addendum attached) | N/A |
| 37 | § 11.1, 11.2 | Estoppel Statements Deadline | N/A |
| 38 | § 11.3 | Estoppel Statements Termination Deadline | N/A |
| | | Closing and Possession | |
| 39 | § 12.3 | Closing Date | See § 30 and Original Addendum |
| 40 | § 17 | Possession Date | Day of Closing |
| 41 | § 17 | Possession Time | At Closing |
| 42 | § 28 | **Acceptance Deadline Date** | |
| 43 | § 28 | **Acceptance Deadline Time** | |

94     **3.2.**   **Applicability of Terms.** Any box checked in this Contract means the corresponding provision applies. If any
95  deadline blank in § 3.1 (Dates and Deadlines) is left blank or completed with the abbreviation "N/A", or the word "Deleted," such
96  deadline is not applicable and the corresponding provision containing the deadline is deleted. If no box is checked in a provision
97  that contains a selection of "None", such provision means that "None" applies.

98  The abbreviation "MEC" (mutual execution of this Contract) means the date upon which both parties have signed this Contract.

99  **4.**   **PURCHASE PRICE AND TERMS.**
100     **4.1.**   **Price and Terms.** The Purchase Price set forth below is payable in U.S. Dollars by Buyer as follows:

| Item No. | Reference | Item | Amount | Amount |
|---|---|---|---|---|
| 1 | § 4.1 | Purchase Price | $ 6,068,132.97 | |
| 2 | § 4.3 | Earnest Money | | $ 100,000.00 |
| 3 | § 4.5 | New Loan | | $ |
| 4 | § 4.6 | Assumption Balance | | $ 5,310,330.26 |
| 5 | § 4.7 | Private Financing | | $ |
| 6 | § 4.7 | Seller Financing | | $ |

| 7 | | | | |
|---|---|---|---|---|
| 8 | | | | |
| 9 | § 4.4 | Cash at Closing | | $ 657,802.71 |
| 10 | | **TOTAL** | $ 6,068,132.97 | $ 6,068,132.97 |

101 **4.2. Seller Concession.** At Closing, Seller will credit to Buyer $ NONE _____ (Seller Concession). The Seller
102 Concession may be used for any Buyer fee, cost, charge or expenditure to the extent the amount is allowed by the Buyer's lender
103 and is included in the Closing Statement or Closing Disclosure at Closing. Examples of allowable items to be paid for by the
104 Seller Concession include, but are not limited to: Buyer's closing costs, loan discount points, loan origination fees, prepaid items
105 and any other fee, cost, charge, expense or expenditure. Seller Concession is in addition to any sum Seller has agreed to pay or
106 credit Buyer elsewhere in this Contract.

107 **4.3. Earnest Money.** The Earnest Money set forth in this Section, in the form of a cash, eft, or cashier's check _____, will be
108 payable to and held by First American Title _____ (Earnest Money Holder), in its trust account, on behalf of
109 both Seller and Buyer. The Earnest Money deposit must be tendered, by Buyer, with this Contract unless the parties mutually
110 agree to an **Alternative Earnest Money Deadline** for its payment. The parties authorize delivery of the Earnest Money deposit to
111 the company conducting the Closing (Closing Company), if any, at or before Closing. In the event Earnest Money Holder has
112 agreed to have interest on Earnest Money deposits transferred to a fund established for the purpose of providing affordable housing
113 to Colorado residents, Seller and Buyer acknowledge and agree that any interest accruing on the Earnest Money deposited with the
114 Earnest Money Holder in this transaction will be transferred to such fund.

115 **4.3.1. Alternative Earnest Money Deadline.** The deadline for delivering the Earnest Money, if other than at the
116 time of tender of this Contract, is as set forth as the **Alternative Earnest Money Deadline**.

117 **4.3.2. Return of Earnest Money.** If Buyer has a Right to Terminate and timely terminates, Buyer is entitled to
118 the return of Earnest Money as provided in this Contract. If this Contract is terminated as set forth in § 25 and, except as provided
119 in § 24 (Earnest Money Dispute), if the Earnest Money has not already been returned following receipt of a Notice to Terminate,
120 Seller agrees to execute and return to Buyer or Broker working with Buyer, written mutual instructions (e.g., Earnest Money
121 Release form), within three days of Seller's receipt of such form.

122 **4.4. Form of Funds; Time of Payment; Available Funds.**

123 **4.4.1. Good Funds.** All amounts payable by the parties at Closing, including any loan proceeds, Cash at Closing
124 and closing costs, must be in funds that comply with all applicable Colorado laws, including electronic transfer funds, certified
125 check, savings and loan teller's check and cashier's check (Good Funds).

126 **4.4.2. Time of Payment; Available Funds.** All funds, including the Purchase Price to be paid by Buyer, must be
127 paid before or at Closing or as otherwise agreed in writing between the parties to allow disbursement by Closing Company at
128 Closing **OR SUCH NONPAYING PARTY WILL BE IN DEFAULT.** Buyer represents that Buyer, as of the date of this
129 Contract, ☐ **Does** ☑ **Does Not** have funds that are immediately verifiable and available in an amount not less than the amount
130 stated as Cash at Closing in § 4.1.

131 ~~**4.5. New Loan.**~~

132 ~~**4.5.1. Buyer to Pay Loan Costs.** Buyer, except as otherwise permitted in § 4.2 (Seller Concession), if applicable,~~
133 ~~must timely pay Buyer's loan costs, loan discount points, prepaid items and loan origination fees as required by lender.~~

134 ~~**4.5.2. Buyer May Select Financing.** Buyer may pay in cash or select financing appropriate and acceptable to~~
135 ~~Buyer, including a different loan than initially sought, except as restricted in § 4.5.3 (Loan Limitations) or § 30 (Additional~~
136 ~~Provisions).~~

137 ~~**4.5.3. Loan Limitations.** Buyer may purchase the Property using any of the following types of loans:~~
138 ~~☐ **Conventional** ☐ **Other** _____.~~

139 **4.6. Assumption.** Buyer agrees to assume and pay an existing loan in the approximate amount of the Assumption
140 Balance set forth in § 4.1 (Price and Terms), presently payable at $ _____ per _____ including principal
141 and interest presently at the rate of _____% per annum and also including escrow for the following as indicated: ☐ **Real**
142 **Estate Taxes** ☐ **Property Insurance Premium** and ☐ _____

143 Buyer agrees to pay a loan transfer fee not to exceed $ _____. At the time of assumption, the new interest rate will
144 not exceed _____% per annum and the new payment will not exceed $ _____ per _____ principal and
145 interest, plus escrow, if any. If the actual principal balance of the existing loan at Closing is less than the Assumption Balance,
146 which causes the amount of cash required from Buyer at Closing to be increased by more than $ _____, or if any other
147 terms or provisions of the loan change, Buyer has the Right to Terminate under § 25.1 on or before **Closing Date**.

148 Seller ☐ **Will** ☐ **Will Not** be released from liability on said loan. If applicable, compliance with the requirements for
149 release from liability will be evidenced by delivery ☐ on or before **Loan Transfer Approval Deadline** ☐ at **Closing** of an
150 appropriate letter of commitment from lender. Any cost payable for release of liability will be paid by _____ in an amount
151 not to exceed $ _____.

152 ~~**4.7. Seller or Private Financing.**~~
153 ~~**WARNING:** Unless the transaction is exempt, federal and state laws impose licensing, other requirements and restrictions on~~
154 ~~sellers and private financiers. Contract provisions on financing and financing documents, unless exempt, should be prepared by a~~

155 ~~licensed Colorado attorney or licensed mortgage loan originator. Brokers should not prepare or advise the parties on the specifics~~
156 ~~of financing, including whether or not a party is exempt from the law.~~

157 ~~**4.7.1.    Seller Financing.** If Buyer is to pay all or any portion of the Purchase Price with Seller financing,~~
158 ☐ **Buyer** ☐ **Seller** ~~will deliver the proposed Seller financing documents to the other party on or before _____ days before~~
159 ~~**Seller or Private Financing Deadline**.~~

160 ~~**4.7.1.1.    Seller May Terminate.** If Seller is to provide Seller financing, this Contract is conditional upon~~
161 ~~Seller determining whether such financing is satisfactory to Seller, including its payments, interest rate, terms, conditions, cost and~~
162 ~~compliance with the law. Seller has the Right to Terminate under § 25.1, on or before **Seller or Private Financing Deadline**, if~~
163 ~~such Seller financing is not satisfactory to Seller, in Seller's sole subjective discretion.~~

164 ~~**4.7.2.    Buyer May Terminate.** If Buyer is to pay all or any portion of the Purchase Price with Seller or private~~
165 ~~financing, this Contract is conditional upon Buyer determining whether such financing is satisfactory to Buyer, including its~~
166 ~~availability, payments, interest rate, terms, conditions and cost. Buyer has the Right to Terminate under § 25.1, on or before **Seller**~~
167 ~~**or Private Financing Deadline**, if such Seller or private financing is not satisfactory to Buyer, in Buyer's sole subjective~~
168 ~~discretion.~~

169

**TRANSACTION PROVISIONS**

170 **5.    FINANCING CONDITIONS AND OBLIGATIONS.**
171     **5.1.    New Loan Application.** If Buyer is to pay all or part of the Purchase Price by obtaining one or more new loans
172 (New Loan), or if an existing loan is not to be released at Closing, Buyer, if required by such lender, must make an application
173 verifiable by such lender, on or before **New Loan Application Deadline** and exercise reasonable efforts to obtain such loan or
174 approval.
175     **5.2.    New Loan Review.** If Buyer is to pay all or part of the Purchase Price with a New Loan, this Contract is conditional
176 upon Buyer determining, in Buyer's sole subjective discretion, whether the New Loan is satisfactory to Buyer, including its
177 availability, payments, interest rate, terms, conditions and cost of such New Loan. This condition is for the sole benefit of Buyer.
178 Buyer has the Right to Terminate under § 25.1, on or before **New Loan Termination Deadline**, if the New Loan is not satisfactory
179 to Buyer, in Buyer's sole subjective discretion. Buyer does not have a Right to Terminate based on the New Loan if the objection is
180 based on the Appraised Value (defined below) or the Lender Requirements (defined below). **IF SELLER IS NOT IN DEFAULT**
181 **AND DOES NOT TIMELY RECEIVE BUYER'S WRITTEN NOTICE TO TERMINATE, BUYER'S EARNEST MONEY**
182 **WILL BE NONREFUNDABLE,** except as otherwise provided in this Contract (e.g., Appraisal, Title, Survey).
183     **5.3.    Credit Information.** If an existing loan is not to be released at Closing, this Contract is conditional (for the sole
184 benefit of Seller) upon Seller's approval of Buyer's financial ability and creditworthiness, which approval will be in Seller's sole
185 subjective discretion. Accordingly: (1) Buyer must supply to Seller by **Buyer's Credit Information Deadline**, at Buyer's
186 expense, information and documents (including a current credit report) concerning Buyer's financial, employment and credit
187 condition; (2) Buyer consents that Seller may verify Buyer's financial ability and creditworthiness; and (3) any such information
188 and documents received by Seller must be held by Seller in confidence and not released to others except to protect Seller's interest
189 in this transaction. If the Cash at Closing is less than as set forth in § 4.1 of this Contract, Seller has the Right to Terminate under
190 § 25.1, on or before Closing. If Seller disapproves of Buyer's financial ability or creditworthiness, in Seller's sole subjective
191 discretion, Seller has the Right to Terminate under § 25.1, on or before **Disapproval of Buyer's Credit Information Deadline**.
192     **5.4.    Existing Loan Review.** If an existing loan is not to be released at Closing, Seller must deliver copies of the loan
193 documents (including note, deed of trust and any modifications) to Buyer by **Existing Loan Deadline**. For the sole benefit of
194 Buyer, this Contract is conditional upon Buyer's review and approval of the provisions of such loan documents. Buyer has the
195 Right to Terminate under § 25.1, on or before **Existing Loan Termination Deadline**, based on any unsatisfactory provision of
196 such loan documents, in Buyer's sole subjective discretion. If the lender's approval of a transfer of the Property is required, this
197 Contract is conditional upon Buyer obtaining such approval without change in the terms of such loan, except as set forth in § 4.6.
198 If lender's approval is not obtained by **Loan Transfer Approval Deadline**, this Contract will terminate on such deadline. Seller
199 has the Right to Terminate under § 25.1, on or before Closing, in Seller's sole subjective discretion, if Seller is to be released from
200 liability under such existing loan and Buyer does not obtain such compliance as set forth in § 4.6.

201 **6.    APPRAISAL PROVISIONS.**
202     **6.1.    Appraisal Definition.** An "Appraisal" is an opinion of value prepared by a licensed or certified appraiser, engaged
203 on behalf of Buyer or Buyer's lender, to determine the Property's market value (Appraised Value). The Appraisal may also set
204 forth certain lender requirements, replacements, removals or repairs necessary on or to the Property as a condition for the Property
205 to be valued at the Appraised Value.
206     **6.2.    Appraisal Condition.** The applicable appraisal provision set forth below applies to the respective loan type set forth
207 in § 4.5.3, or if a cash transaction (i.e. no financing), § 6.2.1 applies.

---

**6.2.1.    Conventional/Other.** Buyer has the right to obtain an Appraisal. If the Appraised Value is less than the Purchase Price, or if the Appraisal is not received by Buyer on or before **Appraisal Deadline** Buyer may, on or before **Appraisal Objection Deadline**, notwithstanding § 8.3 or § 13:

**6.2.1.1.    Notice to Terminate.** Notify Seller in writing, pursuant to § 25.1, that this Contract is terminated; or

**6.2.1.2.    Appraisal Objection.** Deliver to Seller a written objection accompanied by either a copy of the Appraisal or written notice from lender that confirms the Appraised Value is less than the Purchase Price (Lender Verification).

**6.2.1.3.    Appraisal Resolution.** If an Appraisal Objection is received by Seller, on or before **Appraisal Objection Deadline** and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Appraisal Resolution Deadline**, this Contract will terminate on the **Appraisal Resolution Deadline**, unless Seller receives Buyer's written withdrawal of the Appraisal Objection before such termination, i.e., on or before expiration of **Appraisal Resolution Deadline**.

**6.3.    Lender Property Requirements.** If the lender imposes any written requirements, replacements, removals or repairs, including any specified in the Appraisal (Lender Requirements) to be made to the Property (e.g., roof repair, repainting), beyond those matters already agreed to by Seller in this Contract, this Contract terminates on the earlier of three days following Seller's receipt of the Lender Requirements, or Closing, unless prior to termination: (1) the parties enter into a written agreement to satisfy the Lender Requirements; (2) the Lender Requirements have been completed; or (3) the satisfaction of the Lender Requirements is waived in writing by Buyer.

**6.4.    Cost of Appraisal.** Cost of the Appraisal to be obtained after the date of this Contract must be timely paid by ☑ **Buyer** ☐ **Seller**. The cost of the Appraisal may include any and all fees paid to the appraiser, appraisal management company, lender's agent or all three.

**7.    OWNERS' ASSOCIATION.** This Section is applicable if the Property is located within a Common Interest Community and subject to the declaration (Association).

**7.1.    Common Interest Community Disclosure. THE PROPERTY IS LOCATED WITHIN A COMMON INTEREST COMMUNITY AND IS SUBJECT TO THE DECLARATION FOR THE COMMUNITY. THE OWNER OF THE PROPERTY WILL BE REQUIRED TO BE A MEMBER OF THE OWNERS' ASSOCIATION FOR THE COMMUNITY AND WILL BE SUBJECT TO THE BYLAWS AND RULES AND REGULATIONS OF THE ASSOCIATION. THE DECLARATION, BYLAWS AND RULES AND REGULATIONS WILL IMPOSE FINANCIAL OBLIGATIONS UPON THE OWNER OF THE PROPERTY, INCLUDING AN OBLIGATION TO PAY ASSESSMENTS OF THE ASSOCIATION. IF THE OWNER DOES NOT PAY THESE ASSESSMENTS, THE ASSOCIATION COULD PLACE A LIEN ON THE PROPERTY AND POSSIBLY SELL IT TO PAY THE DEBT. THE DECLARATION, BYLAWS AND RULES AND REGULATIONS OF THE COMMUNITY MAY PROHIBIT THE OWNER FROM MAKING CHANGES TO THE PROPERTY WITHOUT AN ARCHITECTURAL REVIEW BY THE ASSOCIATION (OR A COMMITTEE OF THE ASSOCIATION) AND THE APPROVAL OF THE ASSOCIATION. PURCHASERS OF PROPERTY WITHIN THE COMMON INTEREST COMMUNITY SHOULD INVESTIGATE THE FINANCIAL OBLIGATIONS OF MEMBERS OF THE ASSOCIATION. PURCHASERS SHOULD CAREFULLY READ THE DECLARATION FOR THE COMMUNITY AND THE BYLAWS AND RULES AND REGULATIONS OF THE ASSOCIATION.**

**7.2.    Association Documents to Buyer.** Seller is obligated to provide to Buyer the Association Documents (defined below), at Seller's expense, on or before **Association Documents Deadline**. Seller authorizes the Association to provide the Association Documents to Buyer, at Seller's expense. Seller's obligation to provide the Association Documents is fulfilled upon Buyer's receipt of the Association Documents, regardless of who provides such documents.

**7.3.    Association Documents.** Association documents (Association Documents) consist of the following:

**7.3.1.    All** Association declarations, articles of incorporation, bylaws, articles of organization, operating agreements, rules and regulations, party wall agreements and the Association's responsible governance policies adopted under § 38-33.3-209.5, C.R.S.;

**7.3.2.    Minutes** of: (1) the annual owners' or members' meeting and (2) any executive boards' or managers' meetings; such minutes include those provided under the most current annual disclosure required under § 38-33.3-209.4, C.R.S. (Annual Disclosure) and minutes of meetings, if any, subsequent to the minutes disclosed in the Annual Disclosure. If none of the preceding minutes exist, then the most recent minutes, if any (§§ 7.3.1 and 7.3.2, collectively, Governing Documents); and

**7.3.3.    List** of all Association insurance policies as provided in the Association's last Annual Disclosure, including, but not limited to, property, general liability, association director and officer professional liability and fidelity policies. The list must include the company names, policy limits, policy deductibles, additional named insureds and expiration dates of the policies listed (Association Insurance Documents);

**7.3.4.    A** list by unit type of the Association's assessments, including both regular and special assessments as disclosed in the Association's last Annual Disclosure;

**7.3.5.    The** Association's most recent financial documents which consist of: (1) the Association's operating budget for the current fiscal year, (2) the Association's most recent annual financial statements, including any amounts held in reserve for the fiscal year immediately preceding the Association's last Annual Disclosure, (3) the results of the Association's most recent

266 available furnish audit or review, (4) list of the fees and charges (regardless of name of title of such fees or charges) that the
267 Association's community association manager or Association will charge in connection with the Closing including, but not limited
268 to, any fee incident to the issuance of the Association's statement of assessments (Status Letter), any rush or update fee charged for
269 the Status Letter, any record change fee or ownership record transfer fees (Record Change Fee), fees to access documents, (5) list
270 of all assessments required to be paid in advance, reserves or working capital due at Closing and (6) reserve study, if any (§§ 7.3.4
271 and 7.3.5, collectively, Financial Documents);

272        **7.3.6.**    Any written notice from the Association to Seller of a "construction defect action" under § 38-33.3-303.5,
273 C.R.S. within the past six months and the result of whether the Association approved or disapproved such action (Construction
274 Defect Documents). Nothing in this Section limits the Seller's obligation to disclose adverse material facts as required under §
275 10.2 (Disclosure of Adverse Material Facts; Subsequent Disclosure; Present Condition) including any problems or defects in the
276 common elements or limited common elements of the Association property.

277     **7.4.**    **Conditional on Buyer's Review.** Buyer has the right to review the Association Documents. Buyer has the Right to
278 Terminate under § 25.1, on or before **Association Documents Termination Deadline**, based on any unsatisfactory provision in
279 any of the Association Documents, in Buyer's sole subjective discretion. Should Buyer receive the Association Documents after
280 **Association Documents Deadline**, Buyer, at Buyer's option, has the Right to Terminate under § 25.1 by Buyer's Notice to
281 Terminate received by Seller on or before ten days after Buyer's receipt of the Association Documents. If Buyer does not receive
282 the Association Documents, or if Buyer's Notice to Terminate would otherwise be required to be received by Seller after **Closing**
283 **Date**, Buyer's Notice to Terminate must be received by Seller on or before Closing. If Seller does not receive Buyer's Notice to
284 Terminate within such time, Buyer accepts the provisions of the Association Documents as satisfactory and Buyer waives any
285 Right to Terminate under this provision, notwithstanding the provisions of § 8.6 (Right of First Refusal or Contract Approval).

286 **8.**    **TITLE INSURANCE, RECORD TITLE AND OFF-RECORD TITLE.**
287     **8.1.**    **Evidence of Record Title.**
288    ☑    **8.1.1.**    **Seller Selects Title Insurance Company.** If this box is checked, Seller will select the title insurance
289 company to furnish the owner's title insurance policy at Seller's expense. On or before **Record Title Deadline**, Seller must furnish
290 to Buyer, a current commitment for an owner's title insurance policy (Title Commitment), in an amount equal to the Purchase
291 Price, or if this box is checked, ☐ an **Abstract of Title** certified to a current date. Seller will cause the title insurance policy to be
292 issued and delivered to Buyer as soon as practicable at or after Closing.

293    ☐    **8.1.2.**    **Buyer Selects Title Insurance Company.** If this box is checked, Buyer will select the title insurance
294 company to furnish the owner's title insurance policy at Buyer's expense. On or before **Record Title Deadline**, Buyer must furnish to
295 Seller, a current commitment for owner's title insurance policy (Title Commitment), in an amount equal to the Purchase Price.
296 If neither box in § 8.1.1 or § 8.1.2 is checked, § 8.1.1 applies.

297     **8.1.3.**    **Owner's Extended Coverage (OEC).** The Title Commitment ☐ Will ☑ Will Not contain Owner's
298 Extended Coverage (OEC). If the Title Commitment is to contain OEC, it will commit to delete or insure over the standard
299 exceptions which relate to: (1) parties in possession, (2) unrecorded easements, (3) survey matters, (4) unrecorded mechanics'
300 liens, (5) gap period (period between the effective date and time of commitment to the date and time the deed is recorded) and (6)
301 unpaid taxes, assessments and unredeemed tax sales prior to the year of Closing. Any additional premium expense to obtain OEC
302 will be paid by ☑ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller ☐ Other_____.
303 Regardless of whether the Contract requires OEC, the Title Insurance Commitment may not provide OEC or delete or insure over
304 any or all of the standard exceptions for OEC. The Title Insurance Company may require a New Survey or New ILC, defined
305 below, among other requirements for OEC. If the Title Insurance Commitment is not satisfactory to Buyer, Buyer has a right to
306 object under § 8.5 (Right to Object to Title, Resolution).

307     **8.1.4.**    **Title Documents.** Title Documents consist of the following: (1) copies of any plats, declarations,
308 covenants, conditions and restrictions burdening the Property and (2) copies of any other documents (or, if illegible, summaries of
309 such documents) listed in the schedule of exceptions (Exceptions) in the Title Commitment furnished to Buyer (collectively, Title
310 Documents).

311     **8.1.5.**    **Copies of Title Documents.** Buyer must receive, on or before **Record Title Deadline**, copies of all Title
312 Documents. This requirement pertains only to documents as shown of record in the office of the clerk and recorder in the county
313 where the Property is located. The cost of furnishing copies of the documents required in this Section will be at the expense of the
314 party or parties obligated to pay for the owner's title insurance policy.

315     **8.1.6.**    **Existing Abstracts of Title.** Seller must deliver to Buyer copies of any abstracts of title covering all or any
316 portion of the Property (Abstract of Title) in Seller's possession on or before **Record Title Deadline**.

317     **8.2.**    **Record Title.** Buyer has the right to review and object to the Abstract of Title or Title Commitment and any of the
318 Title Documents as set forth in § 8.5 (Right to Object to Title, Resolution) on or before **Record Title Objection Deadline**.
319 Buyer's objection may be based on any unsatisfactory form or content of Title Commitment or Abstract of Title, notwithstanding
320 § 13, or any other unsatisfactory title condition, in Buyer's sole subjective discretion. If the Abstract of Title, Title Commitment or
321 Title Documents are not received by Buyer on or before the **Record Title Deadline**, or if there is an endorsement to the Title
322 Commitment that adds a new Exception to title, a copy of the new Exception to title and the modified Title Commitment will be
323 delivered to Buyer. Buyer has until the earlier of Closing or ten days after receipt of such documents by Buyer to review and object

to: (1) any required Title Document not timely received by Buyer, (2) any change to the Abstract of Title, Title Commitment or Title Documents, or (3) any endorsement to the Title Commitment. If Seller receives Buyer's Notice to Terminate or Notice of Title Objection, pursuant to this § 8.2 (Record Title), any title objection by Buyer is governed by the provisions set forth in § 8.5 (Right to Object to Title, Resolution). If Seller has fulfilled all Seller's obligations, if any, to deliver to Buyer all documents required by § 8.1 (Evidence of Record Title) and Seller does not receive Buyer's Notice to Terminate or Notice of Title Objection by the applicable deadline specified above, Buyer accepts the condition of title as disclosed by the Abstract of Title, Title Commitment and Title Documents as satisfactory.

**8.3.    Off-Record Title.** Seller must deliver to Buyer, on or before **Off-Record Title Deadline**, true copies of all existing surveys in Seller's possession pertaining to the Property and must disclose to Buyer all easements, liens (including, without limitation, governmental improvements approved, but not yet installed) or other title matters (including, without limitation, rights of first refusal and options) not shown by public records, of which Seller has actual knowledge (Off-Record Matters). This Section excludes any **New ILC** or **New Survey** governed under § 9 (New ILC, New Survey). Buyer has the right to inspect the Property to investigate if any third party has any right in the Property not shown by public records (e.g., unrecorded easement, boundary line discrepancy or water rights). Buyer's Notice to Terminate or Notice of Title Objection of any unsatisfactory condition (whether disclosed by Seller or revealed by such inspection, notwithstanding § 8.2 (Record Title) and § 13 (Transfer of Title)), in Buyer's sole subjective discretion, must be received by Seller on or before **Off-Record Title Objection Deadline**. If an Off-Record Matter is received by Buyer after the **Off-Record Title Deadline**, Buyer has until the earlier of Closing or ten days after receipt by Buyer to review and object to such Off-Record Matter. If Seller receives Buyer's Notice to Terminate or Notice of Title Objection pursuant to this § 8.3 (Off-Record Title), any title objection by Buyer is governed by the provisions set forth in § 8.5 (Right to Object to Title, Resolution). If Seller does not receive Buyer's Notice to Terminate or Notice of Title Objection by the applicable deadline specified above, Buyer accepts title subject to such Off-Record Matters and rights, if any, of third parties not shown by public records of which Buyer has actual knowledge.

**8.4.    Special Taxing Districts.** SPECIAL TAXING DISTRICTS MAY BE SUBJECT TO GENERAL OBLIGATION INDEBTEDNESS THAT IS PAID BY REVENUES PRODUCED FROM ANNUAL TAX LEVIES ON THE TAXABLE PROPERTY WITHIN SUCH DISTRICTS. PROPERTY OWNERS IN SUCH DISTRICTS MAY BE PLACED AT RISK FOR INCREASED MILL LEVIES AND TAX TO SUPPORT THE SERVICING OF SUCH DEBT WHERE CIRCUMSTANCES ARISE RESULTING IN THE INABILITY OF SUCH A DISTRICT TO DISCHARGE SUCH INDEBTEDNESS WITHOUT SUCH AN INCREASE IN MILL LEVIES. BUYERS SHOULD INVESTIGATE THE SPECIAL TAXING DISTRICTS IN WHICH THE PROPERTY IS LOCATED BY CONTACTING THE COUNTY TREASURER, BY REVIEWING THE CERTIFICATE OF TAXES DUE FOR THE PROPERTY AND BY OBTAINING FURTHER INFORMATION FROM THE BOARD OF COUNTY COMMISSIONERS, THE COUNTY CLERK AND RECORDER, OR THE COUNTY ASSESSOR.

A tax certificate from the respective county treasurer listing any special taxing districts that effect the Property (Tax Certificate) must be delivered to Buyer on or before **Record Title Deadline**. If the Property is located within a special taxing district and such inclusion is unsatisfactory to Buyer, in Buyer's sole subjective discretion, Buyer may object, on or before **Record Title Objection Deadline**. If the Tax Certificate shows that the Property is included in a special taxing district and is received by Buyer after the **Record Title Deadline**, Buyer has until the earlier of Closing or ten days after receipt by Buyer to review and object to the Property's inclusion in a special taxing district as unsatisfactory to Buyer.

**8.5.    Right to Object to Title, Resolution.** Buyer's right to object, in Buyer's sole subjective discretion, to any title matters includes those matters set forth in § 8.2 (Record Title), § 8.3 (Off-Record Title), § 8.4 (Special Taxing District) and § 13 (Transfer of Title). If Buyer objects to any title matter, on or before the applicable deadline, Buyer has the following options:

**8.5.1.    Title Objection, Resolution.** If Seller receives Buyer's written notice objecting to any title matter (Notice of Title Objection) on or before the applicable deadline and if Buyer and Seller have not agreed to a written settlement thereof on or before **Title Resolution Deadline**, this Contract will terminate on the expiration of **Title Resolution Deadline**, unless Seller receives Buyer's written withdrawal of Buyer's Notice of Title Objection (i.e., Buyer's written notice to waive objection to such items and waives the Right to Terminate for that reason), on or before expiration of **Title Resolution Deadline**. If either the Record Title Deadline or the Off-Record Title Deadline, or both, are extended pursuant to § 8.2 (Record Title), § 8.3 (Off-Record Title) or § 8.4 (Special Taxing Districts), the Title Resolution Deadline also will be automatically extended to the earlier of Closing or fifteen days after Buyer's receipt of the applicable documents; or

**8.5.2.    Title Objection, Right to Terminate.** Buyer may exercise the Right to Terminate under § 25.1, on or before the applicable deadline, based on any title matter unsatisfactory to Buyer, in Buyer's sole subjective discretion.

**8.6.    Right of First Refusal or Contract Approval.** If there is a right of first refusal on the Property or a right to approve this Contract, Seller must promptly submit this Contract according to the terms and conditions of such right. If the holder of the right of first refusal exercises such right or the holder of a right to approve disapproves this Contract, this Contract will terminate. If the right of first refusal is waived explicitly or expires, or the Contract is approved, this Contract will remain in full force and effect. Seller must promptly notify Buyer in writing of the foregoing. If expiration or waiver of the right of first refusal or approval of this Contract has not occurred on or before **Right of First Refusal Deadline**, this Contract will then terminate.

**8.7.    Title Advisory.** The Title Documents affect the title, ownership and use of the Property and should be reviewed carefully. Additionally, other matters not reflected in the Title Documents may affect the title, ownership and use of the Property,

383 including, without limitation, boundary lines and encroachments, set-back requirements, area, zoning, building code violations,
384 unrecorded easements and claims of easements, leases and other unrecorded agreements, water on or under the Property and
385 various laws and governmental regulations concerning land use, development and environmental matters.

386        **8.7.1.**    **OIL, GAS, WATER AND MINERAL DISCLOSURE.**   **THE SURFACE ESTATE OF THE**
387 **PROPERTY MAY BE OWNED SEPARATELY FROM THE UNDERLYING MINERAL ESTATE AND TRANSFER**
388 **OF THE SURFACE ESTATE MAY NOT NECESSARILY INCLUDE TRANSFER OF THE MINERAL ESTATE OR**
389 **WATER RIGHTS. THIRD PARTIES MAY OWN OR LEASE INTERESTS IN OIL, GAS, OTHER MINERALS,**
390 **GEOTHERMAL ENERGY OR WATER ON OR UNDER THE SURFACE OF THE PROPERTY, WHICH INTERESTS**
391 **MAY GIVE THEM RIGHTS TO ENTER AND USE THE SURFACE OF THE PROPERTY TO ACCESS THE**
392 **MINERAL ESTATE, OIL, GAS OR WATER.**

393        **8.7.2.**    **SURFACE USE AGREEMENT. THE USE OF THE SURFACE ESTATE OF THE PROPERTY TO**
394 **ACCESS THE OIL, GAS OR MINERALS MAY BE GOVERNED BY A SURFACE USE AGREEMENT, A**
395 **MEMORANDUM OR OTHER NOTICE OF WHICH MAY BE RECORDED WITH THE COUNTY CLERK AND**
396 **RECORDER.**

397        **8.7.3.**    **OIL AND GAS ACTIVITY. OIL AND GAS ACTIVITY THAT MAY OCCUR ON OR ADJACENT**
398 **TO THE PROPERTY MAY INCLUDE, BUT IS NOT LIMITED TO, SURVEYING, DRILLING, WELL COMPLETION**
399 **OPERATIONS, STORAGE, OIL AND GAS, OR PRODUCTION FACILITIES, PRODUCING WELLS, REWORKING**
400 **OF CURRENT WELLS AND GAS GATHERING AND PROCESSING FACILITIES.**

401        **8.7.4.**    **ADDITIONAL INFORMATION. BUYER IS ENCOURAGED TO SEEK ADDITIONAL**
402 **INFORMATION REGARDING OIL AND GAS ACTIVITY ON OR ADJACENT TO THE PROPERTY, INCLUDING**
403 **DRILLING PERMIT APPLICATIONS. THIS INFORMATION MAY BE AVAILABLE FROM THE COLORADO OIL**
404 **AND GAS CONSERVATION COMMISSION.**

405        **8.7.5.**    **Title Insurance Exclusions.** Matters set forth in this Section and others, may be excepted, excluded from,
406 or not covered by the owner's title insurance policy.

407       **8.8.**    **Consult an Attorney.** Buyer is advised to timely consult legal counsel with respect to all such matters as there are
408 strict time limits provided in this Contract (e.g., **Record Title Objection Deadline** and **Off-Record Title Objection Deadline**).

409 **9.**    **NEW ILC, NEW SURVEY.**
410      **9.1.**    **New ILC or New Survey.** If the box is checked, a: 1) ☐ **New Improvement Location Certificate (New ILC)**; or,
411 2) ☐ **New Survey** in the form of _____; is required and the following will apply:
412        **9.1.1.**    **Ordering of New ILC or New Survey.** ☐ **Seller** ☐ **Buyer** will order the New ILC or New Survey. The
413 New ILC or New Survey may also be a previous ILC or survey that is in the above-required form, certified and updated as of a
414 date after the date of this Contract.
415        **9.1.2.**    **Payment for New ILC or New Survey.** The cost of the New ILC or New Survey will be paid, on or
416 before Closing, by: ☐ **Seller** ☐ **Buyer** or:
417
418
419
420        **9.1.3.**    **Delivery of New ILC or New Survey.** Buyer, Seller, the issuer of the Title Commitment (or the provider
421 of the opinion of title if an Abstract of Title) and _____ will receive a New ILC or New Survey on or before
422 **New ILC or New Survey Deadline.**
423        **9.1.4.**    **Certification of New ILC or New Survey.** The New ILC or New Survey will be certified by the surveyor
424 to all those who are to receive the New ILC or New Survey.
425      **9.2.**    **Buyer's Right to Waive or Change New ILC or New Survey Selection.** Buyer may select a New ILC or New
426 Survey different than initially specified in this Contract if there is no additional cost to Seller or change to the **New ILC or New**
427 **Survey Objection Deadline.** Buyer may, in Buyer's sole subjective discretion, waive a New ILC or New Survey if done prior to
428 Seller incurring any cost for the same.
429      **9.3.**    **New ILC or New Survey Objection.** Buyer has the right to review and object to the New ILC or New Survey. If
430 the New ILC or New Survey is not timely received by Buyer or is unsatisfactory to Buyer, in Buyer's sole subjective discretion,
431 Buyer may, on or before **New ILC or New Survey Objection Deadline**, notwithstanding § 8.3 or § 13:
432        **9.3.1.**    **Notice to Terminate.** Notify Seller in writing, pursuant to § 25.1, that this Contract is terminated; or
433        **9.3.2.**    **New ILC or New Survey Objection.** Deliver to Seller a written description of any matter that was to be
434 shown or is shown in the New ILC or New Survey that is unsatisfactory and that Buyer requires Seller to correct.
435        **9.3.3.**    **New ILC or New Survey Resolution.** If a **New ILC or New Survey Objection** is received by Seller, on
436 or before **New ILC or New Survey Objection Deadline** and if Buyer and Seller have not agreed in writing to a settlement thereof
437 on or before **New ILC or New Survey Resolution Deadline**, this Contract will terminate on expiration of the **New ILC or New**
438 **Survey Resolution Deadline**, unless Seller receives Buyer's written withdrawal of the New ILC or New Survey Objection before
439 such termination, i.e., on or before expiration of **New ILC or New Survey Resolution Deadline.**

440

| DISCLOSURE, INSPECTION AND DUE DILIGENCE |
| --- |

441 **10.   PROPERTY DISCLOSURE, INSPECTION, INDEMNITY, INSURABILITY AND DUE DILIGENCE.**
442    **10.1.   Seller's Property Disclosure.** On or before **Seller's Property Disclosure Deadline**, Seller agrees to deliver to
443 Buyer the most current version of the applicable Colorado Real Estate Commission's Seller's Property Disclosure form completed
444 by Seller to Seller's actual knowledge and current as of the date of this Contract.
445    **10.2.   Disclosure of Adverse Material Facts; Subsequent Disclosure; Present Condition.** Seller must disclose to Buyer
446 any adverse material facts actually known by Seller as of the date of this Contract. Seller agrees that disclosure of adverse material
447 facts will be in writing. In the event Seller discovers an adverse material fact after the date of this Contract, Seller must timely
448 disclose such adverse fact to Buyer.  Buyer has the Right to Terminate based on the Seller's new disclosure on the earlier of
449 Closing or five days after Buyer's receipt of the new disclosure.  Except as otherwise provided in this Contract, Buyer
450 acknowledges that Seller is conveying the Property to Buyer in an "**As Is**" condition, "**Where Is**" and "**With All Faults.**"
451    **10.3.   Inspection.** Unless otherwise provided in this Contract, Buyer, acting in good faith, has the right to have inspections
452 (by one or more third parties, personally or both) of the Property and Inclusions (Inspection), at Buyer's expense. If (1) the
453 physical condition of the Property, including, but not limited to, the roof, walls, structural integrity of the Property, the electrical,
454 plumbing, HVAC and other mechanical systems of the Property, (2) the physical condition of the Inclusions, (3) service to the
455 Property (including utilities and communication services), systems and components of the Property (e.g., heating and plumbing),
456 (4) any proposed or existing transportation project, road, street or highway, or (5) any other activity, odor or noise (whether on or
457 off the Property) and its effect or expected effect on the Property or its occupants is unsatisfactory, in Buyer's sole subjective
458 discretion, Buyer may:
459       **10.3.1.   Inspection Objection.** On or before the **Inspection Objection Deadline**, deliver to Seller a written
460 description of any unsatisfactory condition that Buyer requires Seller to correct; or
461       **10.3.2.   Terminate.** On or before the **Inspection Termination Deadline**, notify Seller in writing, pursuant to §
462 25.1, that this Contract is terminated due to any unsatisfactory condition. **Inspection Termination Deadline will be on the
463 earlier of Inspection Resolution Deadline or the date specified in § 3.1 for Inspection Termination Deadline.**
464       **10.3.3.   Inspection Resolution.** If an Inspection Objection is received by Seller, on or before **Inspection Objection
465 Deadline** and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Inspection Resolution Deadline**,
466 this Contract will terminate on **Inspection Resolution Deadline** unless Seller receives Buyer's written withdrawal of the
467 Inspection Objection before such termination, i.e., on or before expiration of **Inspection Resolution Deadline.**
468    **10.4.   Damage, Liens and Indemnity.** Buyer, except as otherwise provided in this Contract or other written agreement
469 between the parties, is responsible for payment for all inspections, tests, surveys, engineering reports, or other reports performed at
470 Buyer's request (Work) and must pay for any damage that occurs to the Property and Inclusions as a result of such Work. Buyer
471 must not permit claims or liens of any kind against the Property for Work performed on the Property. Buyer agrees to indemnify,
472 protect and hold Seller harmless from and against any liability, damage, cost or expense incurred by Seller and caused by any such
473 Work, claim, or lien. This indemnity includes Seller's right to recover all costs and expenses incurred by Seller to defend against
474 any such liability, damage, cost or expense, or to enforce this Section, including Seller's reasonable attorney fees, legal fees and
475 expenses. The provisions of this Section survive the termination of this Contract. This § 10.4 does not apply to items performed
476 pursuant to an Inspection Resolution.
477    **10.5.   Insurability.** Buyer has the right to review and object to the availability, terms and conditions of and premium for
478 property insurance (Property Insurance). Buyer has the Right to Terminate under § 25.1, on or before **Property Insurance
479 Termination Deadline,** based on any unsatisfactory provision of the Property Insurance, in Buyer's sole subjective discretion.
480    **10.6.   Due Diligence.**
481       **10.6.1.   Due Diligence Documents.** If the respective box is checked, Seller agrees to deliver copies of the following
482 documents and information pertaining to the Property (Due Diligence Documents) to Buyer on or before **Due Diligence
483 Documents Delivery Deadline**:
484 ☑       **10.6.1.1.**   All contracts relating to the operation, maintenance and management of the Property;
485 ☐       **10.6.1.2.**   Property tax bills for the last _____ years;
486 ☑       **10.6.1.3.**   As-built construction plans to the Property and the tenant improvements, including architectural,
487 electrical, mechanical and structural systems; engineering reports; and permanent Certificates of Occupancy, to the extent now
488 available;
489 ☐       **10.6.1.4.**   A list of all Inclusions to be conveyed to Buyer;
490 ☐       **10.6.1.5.**   Operating statements for the past _____ years;
491 ☐       **10.6.1.6.**   A rent roll accurate and correct to the date of this Contract;
492 ☐       **10.6.1.7.**   All current leases, including any amendments or other occupancy agreements, pertaining to the
493 Property. Those leases or other occupancy agreements pertaining to the Property that survive Closing are as follows (Leases):
494
495

496   ☑         **10.6.1.8.**   A schedule of any tenant improvement work Seller is obligated to complete but has not yet
497 completed and capital improvement work either scheduled or in process on the date of this Contract;

498   ☑         **10.6.1.9.**   All insurance policies pertaining to the Property and copies of any claims which have been made
499 for the past <u>four</u>     years;

500   ☑         **10.6.1.10.**  Soils reports, surveys and engineering reports or data pertaining to the Property (if not delivered
501 earlier under § 8.3);

502   ☑         **10.6.1.11.**  Any and all existing documentation and reports regarding Phase I and II environmental reports,
503 letters, test results, advisories and similar documents respective to the existence or nonexistence of asbestos, PCB transformers, or
504 other toxic, hazardous or contaminated substances and/or underground storage tanks and/or radon gas. If no reports are in Seller's
505 possession or known to Seller, Seller warrants that no such reports are in Seller's possession or known to Seller;

506   ☑         **10.6.1.12.**  Any *Americans with Disabilities Act* reports, studies or surveys concerning the compliance of the
507 Property with said Act;

508   ☑         **10.6.1.13.**  All permits, licenses and other building or use authorizations issued by any governmental
509 authority with jurisdiction over the Property and written notice of any violation of any such permits, licenses or use authorizations,
510 if any; and

511   ☑         **10.6.1.14.**  Other documents and information:
512       all surveys and site plans of the Property, all construction plans, all permits, per contracts and subcontracts for the partially completed construction at the Property, documents
      regarding any land use and zoning restrictions for the Property, any third party reports regarding the Property, all information on Property's inclusion in Gateway Dist., Sand
513       Creek Metropolitan District and any other special district, including taxes and/or fees, and all documents related to construction of the contemplated Four Points by Sheraton

514       **10.6.2.**  **Due Diligence Documents Review and Objection.** Buyer has the right to review and object to Due
515 Diligence Documents. If the Due Diligence Documents are not supplied to Buyer or are unsatisfactory, in Buyer's sole subjective
516 discretion, Buyer may, on or before **Due Diligence Documents Objection Deadline:**

517         **10.6.2.1.**  **Notice to Terminate.** Notify Seller in writing, pursuant to § 25.1, that this Contract is
518 terminated; or

519         **10.6.2.2.**  **Due Diligence Documents Objection.** Deliver to Seller a written description of any
520 unsatisfactory Due Diligence Documents that Buyer requires Seller to correct.

521         **10.6.2.3.**  **Due Diligence Documents Resolution.** If a Due Diligence Documents Objection is received by
522 Seller, on or before **Due Diligence Documents Objection Deadline** and if Buyer and Seller have not agreed in writing to a
523 settlement thereof on or before **Due Diligence Documents Resolution Deadline**, this Contract will terminate on **Due Diligence**
524 **Documents Resolution Deadline** unless Seller receives Buyer's written withdrawal of the Due Diligence Documents Objection
525 before such termination, i.e., on or before expiration of **Due Diligence Documents Resolution Deadline.**

526       **10.6.3.**  **Zoning.** Buyer has the Right to Terminate under § 25.1, on or before **Due Diligence Documents Objection**
527 **Deadline**, based on any unsatisfactory zoning and any use restrictions imposed by any governmental agency with jurisdiction over
528 the Property, in Buyer's sole subjective discretion.

529       **10.6.4.**  **Due Diligence – Environmental, ADA.** Buyer has the right to obtain environmental inspections of the
530 Property including Phase I and Phase II Environmental Site Assessments, as applicable. ☐ **Seller** ☑ **Buyer** will order or provide
531 ☐ **Phase I Environmental Site Assessment,** ☐ **Phase II Environmental Site Assessment** (compliant with most current version
532 of the applicable ASTM E1527 standard practices for Environmental Site Assessments) and/or ☐ _____,
533 at the expense of ☐ **Seller** ☑ **Buyer** (Environmental Inspection). In addition, Buyer, at Buyer's expense, may also conduct an
534 evaluation whether the Property complies with the *Americans with Disabilities Act* (ADA Evaluation). All such inspections and
535 evaluations must be conducted at such times as are mutually agreeable to minimize the interruption of Seller's and any Seller's
536 tenants' business uses of the Property, if any.

537       If Buyer's Phase I Environmental Site Assessment recommends a Phase II Environmental Site Assessment, the
538 **Environmental Inspection Termination Deadline** will be extended by _____ days (Extended Environmental Inspection
539 Objection Deadline) and if such Extended Environmental Inspection Objection Deadline extends beyond the **Closing Date**, the
540 **Closing Date** will be extended a like period of time. In such event, ☐ **Seller** ☑ **Buyer** must pay the cost for such Phase II
541 Environmental Site Assessment.

542       Notwithstanding Buyer's right to obtain additional environmental inspections of the Property in this § 10.6.4, Buyer has the
543 Right to Terminate under § 25.1, on or before **Environmental Inspection Termination Deadline**, or if applicable, the Extended
544 Environmental Inspection Objection Deadline, based on any unsatisfactory results of Environmental Inspection, in Buyer's sole
545 subjective discretion.

546       Buyer has the Right to Terminate under § 25.1, on or before **ADA Evaluation Termination Deadline**, based on any
547 unsatisfactory ADA Evaluation, in Buyer's sole subjective discretion.

548     ~~**10.7.**  **Conditional Upon Sale of Property.** This Contract is conditional upon the sale and closing of that certain property~~
549 ~~owned by Buyer and commonly known as _____. Buyer has the Right to Terminate~~
550 ~~under § 25.1 effective upon Seller's receipt of Buyer's Notice to Terminate on or before **Conditional Sale Deadline** if such~~
551 ~~property is not sold and closed by such deadline. This Section is for the sole benefit of Buyer. If Seller does not receive Buyer's~~
552 ~~Notice to Terminate on or before **Conditional Sale Deadline**, Buyer waives any Right to Terminate under this provision.~~

553     **10.8.**  **Source of Potable Water (Residential Land and Residential Improvements Only). [Intentionally Deleted]**

**10.9.  Existing Leases; Modification of Existing Leases; New Leases.** Seller states that none of the Leases to be assigned to the Buyer at the time of Closing contain any rent concessions, rent reductions or rent abatements except as disclosed in the Lease or other writing received by Buyer. Seller will not amend, alter, modify, extend or cancel any of the Leases nor will Seller enter into any new leases affecting the Property without the prior written consent of Buyer, which consent will not be unreasonably withheld or delayed.

## 11.  ESTOPPEL STATEMENTS.

**11.1.  Estoppel Statements Conditions.** Buyer has the right to review and object to any Estoppel Statements. Seller must request from all tenants of the Property and if received by Seller, deliver to Buyer on or before **Estoppel Statements Deadline**, statements in a form and substance reasonably acceptable to Buyer, from each occupant or tenant at the Property (Estoppel Statement) attached to a copy of the Lease stating:

**11.1.1.**  The commencement date of the Lease and scheduled termination date of the Lease;

**11.1.2.**  That said Lease is in full force and effect and that there have been no subsequent modifications or amendments;

**11.1.3.**  The amount of any advance rentals paid, rent concessions given and deposits paid to Seller;

**11.1.4.**  The amount of monthly (or other applicable period) rental paid to Seller;

**11.1.5.**  That there is no default under the terms of said Lease by landlord or occupant; and

**11.1.6.**  That the Lease to which the Estoppel Statement is attached is a true, correct and complete copy of the Lease demising the premises it describes.

**11.2.  Seller Estoppel Statement.** In the event Seller does not receive from all tenants of the Property a completed signed Estoppel Statement, Seller agrees to complete and execute an Estoppel Statement setting forth the information and documents required §11.1 above and deliver the same to Buyer on or before **Estoppel Statements Deadline**.

**11.3.  Estoppel Statements Termination.** Buyer has the Right to Terminate under § 25.1, on or before **Estoppel Statements Termination Deadline**, based on any unsatisfactory Estoppel Statement, in Buyer's sole subjective discretion, or if Seller fails to deliver the Estoppel Statements on or before **Estoppel Statements Deadline**. Buyer also has the unilateral right to waive any unsatisfactory Estoppel Statement.

### CLOSING PROVISIONS

## 12.  CLOSING DOCUMENTS, INSTRUCTIONS AND CLOSING.

**12.1.  Closing Documents and Closing Information.** Seller and Buyer will cooperate with the Closing Company to enable the Closing Company to prepare and deliver documents required for Closing to Buyer and Seller and their designees. If Buyer is obtaining a loan to purchase the Property, Buyer acknowledges Buyer's lender is required to provide the Closing Company, in a timely manner, all required loan documents and financial information concerning Buyer's loan. Buyer and Seller will furnish any additional information and documents required by Closing Company that will be necessary to complete this transaction. Buyer and Seller will sign and complete all customary or reasonably-required documents at or before Closing.

**12.2.  Closing Instructions.** Colorado Real Estate Commission's Closing Instructions ☐ **Are** ☑ **Are Not** executed with this Contract.

**12.3.  Closing.** Delivery of deed from Seller to Buyer will be at closing (Closing). Closing will be on the date specified as the **Closing Date** or by mutual agreement at an earlier date. The hour and place of Closing will be as designated by mutual agreement of Buyer and Seller.

**12.4.  Disclosure of Settlement Costs.** Buyer and Seller acknowledge that costs, quality and extent of service vary between different settlement service providers (e.g., attorneys, lenders, inspectors and title companies).

## 13.  TRANSFER OF TITLE.  Subject to Buyer's compliance with the terms and provisions of this Contract, including the tender of any payment due at Closing, Seller, provided another deed is not selected, must execute and deliver a good and sufficient special warranty deed to Buyer, at Closing. However, if the box is checked, the parties agree to use the corresponding deed instead:

☐ general warranty deed ☐ bargain and sale deed ☐ quit claim deed ☐ personal representative's deed ☑ special warranty deed.

**13.1.  Special Warranty Deed and General Warranty Deed Exceptions.** If title will be conveyed using a special warranty deed or a general warranty deed, title will be conveyed subject to:

**13.1.1.**  General taxes for the year of Closing,

**13.1.2.**  Distribution utility easements (including cable TV),

**13.1.3.**  Those specifically described rights of third parties not shown by the public records of which Buyer has actual knowledge and which were accepted by Buyer in accordance with § 8.3 (Off-Record Title) and § 9 (New ILC or New Survey),

**13.1.4.**  Inclusion of the Property within any special taxing district,

**13.1.5.** Any special assessment if the improvements were not installed as of the date of Buyer's signature hereon, whether assessed prior to or after Closing and

**13.1.6.** Other _____.

**13.2. Special Warranty Deed.** In addition to the requirements of § 13.1, if title will be conveyed by a special warranty deed, Seller will warrant title against all persons claiming by, through or under Seller subject to those specific recorded Exceptions, if any, created during Seller's ownership of the Property and described by reference to recorded documents shown as Exceptions in the Title Documents that are accepted by Buyer in accordance with § 8.2 (Record Title) and described in the deed by reference to the specific recording information for each recorded document.

**13.3. General Warranty Deed.** In addition to the requirements of § 13.1, if title will be conveyed by a general warranty deed, Seller will warrant the title subject to those specific recorded exceptions described by reference to recorded documents shown as Exceptions in the Title Documents that are accepted by Buyer in accordance with § 8.2 (Record Title) and described in the deed by reference to the specific recording information for each recorded document.

**14. PAYMENT OF LIENS AND ENCUMBRANCES.** Unless agreed to by Buyer in writing, any amounts owed on any liens or encumbrances securing a monetary sum, including, but not limited to, any governmental liens for special improvements installed as of the date of Buyer's signature hereon, whether assessed or not and previous years' taxes, will be paid at or before Closing by Seller from the proceeds of this transaction or from any other source.

**15. CLOSING COSTS, CLOSING FEE, ASSOCIATION FEES AND TAXES.**

**15.1. Closing Costs.** Buyer and Seller must pay, in Good Funds, their respective closing costs and all other items required to be paid at Closing, except as otherwise provided herein.

**15.2. Closing Services Fee.** The fee for real estate closing services must be paid at Closing by ☐ Buyer ☐ Seller ☑ One-Half by Buyer and One-Half by Seller ☐ Other _____.

**15.3. Status Letter and Record Change Fees.** At least fourteen days prior to **Closing Date**, Seller agrees to promptly request the Association to deliver to Buyer a current Status Letter. Any fees incident to the issuance of Association's Status Letter must be paid by ☐ None ☐ Buyer ☐ Seller ☑ One-Half by Buyer and One-Half by Seller. Any Record Change Fee must be paid by ☐ None ☐ Buyer ☐ Seller ☑ One-Half by Buyer and One-Half by Seller.

**15.4. Local Transfer Tax.** ☐ The Local Transfer Tax of _____ % of the Purchase Price must be paid at Closing by ☑ None ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.

**15.5. Private Transfer Fee.** Private transfer fees and other fees due to a transfer of the Property, payable at Closing, such as community association fees, developer fees and foundation fees, must be paid at Closing by ☐ None ☐ Buyer ☐ Seller ☑ One-Half by Buyer and One-Half by Seller. The Private Transfer fee, whether one or more, is for the following association(s): _____ in the total amount of _____% of the Purchase Price or $_____.

**15.6. Water Transfer Fees.** The Water Transfer Fees can change. The fees, as of the date of this Contract, do not exceed $_____ for:

☐ Water Stock/Certificates        ☐ Water District
☐ Augmentation Membership      ☐ Small Domestic Water Company        ☐ _____
and must be paid at Closing by ☑ None ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller

**15.7. Sales and Use Tax.** Any sales and use tax that may accrue because of this transaction must be paid when due by ☐ None ☐ Buyer ☐ Seller ☑ One-Half by Buyer and One-Half by Seller.

**15.8. FIRPTA and Colorado Withholding.**

**15.8.1. FIRPTA.** The Internal Revenue Service (IRS) may require a substantial portion of the Seller's proceeds be withheld after Closing when Seller is a foreign person. If required withholding does not occur, the Buyer could be held liable for the amount of the Seller's tax, interest and penalties. If the box in this Section is checked, Seller represents that Seller ☐ IS a foreign person for purposes of U.S. income taxation. If the box in this Section is not checked, Seller represents that Seller is not a foreign person for purposes of U.S. income taxation. Seller agrees to cooperate with Buyer and Closing Company to provide any reasonably requested documents to verify Seller's foreign person status. If withholding is required, Seller authorizes Closing Company to withhold such amount from Seller's proceeds. Seller should inquire with Seller's tax advisor to determine if withholding applies or if an exemption exists.

**15.8.2. Colorado Withholding.** The Colorado Department of Revenue may require a portion of the Seller's proceeds be withheld after Closing when Seller will not be a Colorado resident after Closing, if not otherwise exempt. Seller agrees to cooperate with Buyer and Closing Company to provide any reasonably requested documents to verify Seller's status. If withholding is required, Seller authorizes Closing Company to withhold such amount from Seller's proceeds. Seller should inquire with Seller's tax advisor to determine if withholding applies or if an exemption exists.

**16. PRORATIONS AND ASSOCIATION ASSESSMENTS.** The following will be prorated to the **Closing Date**, except as otherwise provided:

**16.1. Taxes.** Personal property taxes, if any, special taxing district assessments, if any, and general real estate taxes for the year of Closing, based on ☑ **Taxes for the Calendar Year Immediately Preceding Closing** ☐ **Most Recent Mill Levy and**

663 **Most Recent Assessed Valuation**, adjusted by any applicable qualifying seniors property tax exemption, qualifying disabled
664 veteran exemption or ☐ **Other** _____.

665 **16.2.   Rents.** Rents based on ☐ **Rents Actually Received** ☐ **Accrued**. At Closing, Seller will transfer or credit to
666 Buyer the security deposits for all Leases assigned, or any remainder after lawful deductions and notify all tenants in writing of
667 such transfer and of the transferee's name and address. Seller must assign to Buyer all Leases in effect at Closing and Buyer must
668 assume Seller's obligations under such Leases.

669 **16.3.   Association Assessments.** Current regular Association assessments and dues (Association Assessments) paid in
670 advance will be credited to Seller at Closing. Cash reserves held out of the regular Association Assessments for deferred
671 maintenance by the Association will not be credited to Seller except as may be otherwise provided by the Governing Documents.
672 Buyer acknowledges that Buyer may be obligated to pay the Association, at Closing, an amount for reserves or working capital.
673 Any special assessment assessed prior to **Closing Date** by the Association will be the obligation of ☑ **Buyer** ☐ **Seller**. Except
674 however, any special assessment by the Association for improvements that have been installed as of the date of Buyer's signature
675 hereon, whether assessed prior to or after Closing, will be the obligation of Seller.  Seller represents there are no unpaid regular or
676 special assessments against the Property except the current regular assessments and _____.
677 Association Assessments are subject to change as provided in the Governing Documents.

678 **16.4.   Other Prorations.** Water and sewer charges, propane, interest on continuing loan and _____.

679 **16.5.   Final Settlement.** Unless otherwise agreed in writing, these prorations are final.

680 **17.   POSSESSION.** Possession of the Property will be delivered to Buyer on **Possession Date** at **Possession Time**, subject to
681 the Leases as set forth in § 10.6.1.7.

682 If Seller, after Closing, fails to deliver possession as specified, Seller will be subject to eviction and will be additionally liable
683 to Buyer for payment of $_____ per day (or any part of a day notwithstanding § 18.1) from **Possession Date** and
684 **Possession Time** until possession is delivered.

685 ┌──────────────────────────────┐<br>│   **GENERAL PROVISIONS**   │<br>└──────────────────────────────┘

686 **18.   DAY; COMPUTATION OF PERIOD OF DAYS, DEADLINE.**
687 **18.1.   Day.** As used in this Contract, the term "day" means the entire day ending at 11:59 p.m., United States Mountain
688 Time (Standard or Daylight Savings as applicable).

689 **18.2.   Computation of Period of Days, Deadline.** In computing a period of days (e.g., three days after MEC), when the
690 ending date is not specified, the first day is excluded and the last day is included. If any deadline falls on a Saturday, Sunday or
691 federal or Colorado state holiday (Holiday), such deadline ☑ **Will** ☐ **Will Not** be extended to the next day that is not a
692 Saturday, Sunday or Holiday. Should neither box be checked, the deadline will not be extended.

693 **19.   CAUSES OF LOSS, INSURANCE; DAMAGE TO INCLUSIONS AND SERVICES; CONDEMNATION; AND**
694 **WALK-THROUGH.** Except as otherwise provided in this Contract, the Property, Inclusions or both will be delivered in the
695 condition existing as of the date of this Contract, ordinary wear and tear excepted.

696 **19.1.   Causes of Loss, Insurance.** In the event the Property or Inclusions are damaged by fire, other perils or causes of
697 loss prior to Closing (Property Damage) in an amount of not more than ten percent of the total Purchase Price and if the repair of
698 the damage will be paid by insurance (other than the deductible to be paid by Seller), then Seller, upon receipt of the insurance
699 proceeds, will use Seller's reasonable efforts to repair the Property before **Closing Date**. Buyer has the Right to Terminate under
700 § 25.1, on or before **Closing Date**, if the Property is not repaired before **Closing Date**, or if the damage exceeds such sum. Should
701 Buyer elect to carry out this Contract despite such Property Damage, Buyer is entitled to a credit at Closing for all insurance
702 proceeds that were received by Seller (but not the Association, if any) resulting from  damage to the Property and Inclusions, plus
703 the amount of any deductible provided for in the insurance policy. This credit may not exceed the Purchase Price. In the event
704 Seller has not received the insurance proceeds prior to Closing, the parties may agree to extend the **Closing Date** to have the
705 Property repaired prior to Closing or, at the option of Buyer, (1) Seller must assign to Buyer the right to the proceeds at Closing, if
706 acceptable to Seller's insurance company and Buyer's lender; or (2) the parties may enter into a written agreement prepared by the
707 parties or their attorney requiring the Seller to escrow at Closing from Seller's sale proceeds the amount Seller has received and
708 will receive due to such damage, not exceeding the total Purchase Price, plus the amount of any deductible that applies to the
709 insurance claim.

710 **19.2.   Damage, Inclusions and Services.** Should any Inclusion or service (including utilities and communication
711 services), system, component or fixture of the Property (collectively Service) (e.g., heating or plumbing), fail or be damaged
712 between the date of this Contract and Closing or possession, whichever is earlier, then Seller is liable for the repair or replacement
713 of such Inclusion or Service with a unit of similar size, age and quality, or an equivalent credit, but only to the extent that the
714 maintenance or replacement of such Inclusion or Service is not the responsibility of the Association, if any, less any insurance
715 proceeds received by Buyer covering such repair or replacement. If the failed or damaged Inclusion or Service is not repaired or
716 replaced on or before Closing or possession, whichever is earlier, Buyer has the Right to Terminate under § 25.1, on or before

**Closing Date**, or, at the option of Buyer, Buyer is entitled to a credit at Closing for the repair or replacement of such Inclusion or Service. Such credit must not exceed the Purchase Price. If Buyer receives such a credit, Seller's right for any claim against the Association, if any, will survive Closing.

**19.3.   Condemnation.** In the event Seller receives actual notice prior to Closing that a pending condemnation action may result in a taking of all or part of the Property or Inclusions, Seller must promptly notify Buyer, in writing, of such condemnation action. Buyer has the Right to Terminate under § 25.1, on or before **Closing Date**, based on such condemnation action, in Buyer's sole subjective discretion. Should Buyer elect to consummate this Contract despite such diminution of value to the Property and Inclusions, Buyer is entitled to a credit at Closing for all condemnation proceeds awarded to Seller for the diminution in the value of the Property or Inclusions but such credit will not include relocation benefits or expenses, or exceed the Purchase Price.

**19.4.   Walk-Through and Verification of Condition.** Buyer, upon reasonable notice, has the right to walk through the Property prior to Closing to verify that the physical condition of the Property and Inclusions complies with this Contract.

**20.   RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this Contract, Buyer and Seller acknowledge that the respective broker has advised that this Contract has important legal consequences and has recommended the examination of title and consultation with legal and tax or other counsel before signing this Contract.

**21.   TIME OF ESSENCE, DEFAULT AND REMEDIES.** Time is of the essence for all dates and deadlines in this Contract. This means that all dates and deadlines are strict and absolute. If any payment due, including Earnest Money, is not paid, honored or tendered when due, or if any obligation is not performed timely as provided in this Contract or waived, the non-defaulting party has the following remedies:

**21.1.   If Buyer is in Default:**

☐            **21.1.1.   Specific Performance.** Seller may elect to cancel this Contract and all Earnest Money (whether or not paid by Buyer) will be paid to Seller and retained by Seller. It is agreed that the Earnest Money is not a penalty and the Parties agree the amount is fair and reasonable.  Seller may recover such additional damages as may be proper. Alternatively, Seller may elect to treat this Contract as being in full force and effect and Seller has the right to specific performance, or damages, or both.

**21.1.2.   Liquidated Damages, Applicable. This § 21.1.2 applies <u>unless the box in § 21.1.1. is checked</u>.** Seller may cancel this Contract. All Earnest Money (whether or not paid by Buyer) will be paid to Seller and retained by Seller. It is agreed that the Earnest Money specified in § 4.1 is LIQUIDATED DAMAGES and not a penalty, which amount the parties agree is fair and reasonable and (except as provided in §§ 10.4, 22, 23 and 24), said payment of Earnest Money is SELLER'S ONLY REMEDY for Buyer's failure to perform the obligations of this Contract. Seller expressly waives the remedies of specific performance and additional damages.

**21.2.   If Seller is in Default:** Buyer may elect to treat this Contract as canceled, in which case all Earnest Money received hereunder will be returned to Buyer and Buyer may recover such damages as may be proper. Alternatively, Buyer may elect to treat this Contract as being in full force and effect and Buyer has the right to specific performance, or damages, or both.

**22.   LEGAL FEES, COST AND EXPENSES.** Anything to the contrary herein notwithstanding, in the event of any arbitration or litigation relating to this Contract, prior to or after **Closing Date**, the arbitrator or court must award to the prevailing party all reasonable costs and expenses, including attorney fees, legal fees and expenses.

**23.   MEDIATION.** If a dispute arises relating to this Contract (whether prior to or after Closing) and is not resolved, the parties must first proceed, in good faith, to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. Before any mediated settlement is binding, the parties to the dispute must agree to the settlement, in writing. The parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The obligation to mediate, unless otherwise agreed, will terminate if the entire dispute is not resolved within thirty days of the date written notice requesting mediation is delivered by one party to the other at that party's last known address (physical or electronic as provided in § 27). Nothing in this Section prohibits either party from filing a lawsuit and recording a *lis pendens* affecting the Property, before or after the date of written notice requesting mediation. This Section will not alter any date in this Contract, unless otherwise agreed.

**24.   EARNEST MONEY DISPUTE.** Except as otherwise provided herein, Earnest Money Holder must release the Earnest Money following receipt of written mutual instructions, signed by both Buyer and Seller. In the event of any controversy regarding the Earnest Money, Earnest Money Holder is not required to release the Earnest Money. Earnest Money Holder, in its sole subjective discretion, has several options:  (1) wait for any proceeding between Buyer and Seller; (2) interplead all parties and deposit Earnest Money into a court of competent jurisdiction (Earnest Money Holder is entitled to recover court costs and reasonable attorney and legal fees incurred with such action); or (3) provide notice to Buyer and Seller that unless Earnest Money Holder receives a copy of the Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the lawsuit (Lawsuit) within one hundred twenty days of Earnest Money Holder's notice to the parties, Earnest Money Holder is authorized to return the Earnest Money to Buyer. In the event Earnest Money Holder does receive a copy of the Lawsuit and has not interpled the monies at the time of any Order, Earnest Money Holder must disburse the Earnest Money pursuant to the Order

771  of the Court. The parties reaffirm the obligation of § 23 (Mediation). This Section will survive cancellation or termination of this
772  Contract.

### 25. TERMINATION.

773  **25.1.  Right to Terminate.** If a party has a right to terminate, as provided in this Contract (Right to Terminate), the
774  termination is effective upon the other party's receipt of a written notice to terminate (Notice to Terminate), provided such written
775  notice was received on or before the applicable deadline specified in this Contract. If the Notice to Terminate is not received on or
776  before the specified deadline, the party with the Right to Terminate accepts the specified matter, document or condition as
777  satisfactory and waives the Right to Terminate under such provision.
778  **25.2.  Effect of Termination.** In the event this Contract is terminated, all Earnest Money received hereunder will be
779  returned to Buyer and the parties are relieved of all obligations hereunder, subject to §§ 10.4, 22, 23 and 24.

### 26. ENTIRE AGREEMENT, MODIFICATION, SURVIVAL; SUCCESSORS.
781  This Contract, its exhibits and specified
782  addenda, constitute the entire agreement between the parties relating to the subject hereof and any prior agreements pertaining
783  thereto, whether oral or written, have been merged and integrated into this Contract. No subsequent modification of any of the
784  terms of this Contract is valid, binding upon the parties, or enforceable unless made in writing and signed by the parties. Any right
785  or obligation in this Contract that, by its terms, exists or is intended to be performed after termination or Closing survives the
786  same. Any successor to a party receives the predecessor's benefits and obligations of this Contract.

### 27. NOTICE, DELIVERY AND CHOICE OF LAW.

788  **27.1.  Physical Delivery and Notice.** Any document, or notice to Buyer or Seller must be in writing, except as provided in
789  § 27.2 and is effective when physically received by such party, any individual named in this Contract to receive documents or
790  notices for such party, Broker, or Brokerage Firm of Broker working with such party (except any notice or delivery after Closing
791  must be received by the party, not Broker or Brokerage Firm).
792  **27.2.  Electronic Notice.** As an alternative to physical delivery, any notice, may be delivered in electronic form to Buyer
793  or Seller, any individual named in this Contract to receive documents or notices for such party, Broker or Brokerage Firm of
794  Broker working with such party (except any notice or delivery after Closing must be received by the party, not Broker or
795  Brokerage Firm) at the electronic address of the recipient by facsimile, email or _____.
796  **27.3.  Electronic Delivery.** Electronic Delivery of documents and notice may be delivered by: (1) email at the email
797  address of the recipient, (2) a link or access to a website or server provided the recipient receives the information necessary to
798  access the documents, or (3) facsimile at the facsimile number (Fax No.) of the recipient.
799  **27.4.  Choice of Law.** This Contract and all disputes arising hereunder are governed by and construed in accordance with
800  the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in Colorado for real property
801  located in Colorado.

### 28. NOTICE OF ACCEPTANCE, COUNTERPARTS.
802  This proposal will expire unless accepted in writing, by Buyer and
803  Seller, as evidenced by their signatures below and the offering party receives notice of such acceptance pursuant to § 27 on or
804  before **Acceptance Deadline Date** and **Acceptance Deadline Time**. If accepted, this document will become a contract between
805  Seller and Buyer. A copy of this Contract may be executed by each party, separately, and when each party has executed a copy
806  thereof, such copies taken together are deemed to be a full and complete contract between the parties.

807  **29.  GOOD FAITH.** Buyer and Seller acknowledge that each party has an obligation to act in good faith including, but not
808  limited to, exercising the rights and obligations set forth in the provisions of **Financing Conditions and Obligations; Title**
809  **Insurance, Record Title and Off-Record Title; New ILC, New Survey;** and **Property Disclosure, Inspection, Indemnity,**
810  **Insurability and Due Diligence.**

811  ┌────────────────────────────────────────────────┐
     │ **ADDITIONAL PROVISIONS AND ATTACHMENTS** │
     └────────────────────────────────────────────────┘

812  **30.  ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate
813  Commission.)

814
815  Additional Provisions are included as the Original Addendum attached and made a part of hereto.
816
817
818
819
820
821

822  **31. OTHER DOCUMENTS.**
823    **31.1.** The following documents **are a part** of this Contract:
824    Exhibit A
825
826
827    **31.2.** The following documents have been provided but are **not a part** of this Contract:
828
829
830

831    | SIGNATURES |

832

Buyer's Name:  Frisco Acquisition, LLC                     Buyer's Name: _____

*Parmjit Kaur*          02.28.2019    *Wanda Bertora*
Buyer's Signature                 Date       Buyer's Signature              Date

Address:      8762 Preston Trace Blvd.              Address: _____
              Frisco, Texas 75033
Phone No.:    972-668-0327                          Phone No.: _____
Fax No.:      n/a                                   Fax No.: _____
Email Address: paramjitkaur251@yahoo.com            Email Address: _____

833    **[NOTE: If this offer is being countered or rejected, do not sign this document.**

Seller's Name: _____                      Seller's Name: _____


Seller's Signature              Date                Seller's Signature              Date

Address: _____                            Address: _____

Phone No.: _____                          Phone No.: _____
Fax No.: _____                            Fax No.: _____
Email Address: _____                      Email Address: _____

834

835    | END OF CONTRACT TO BUY AND SELL REAL ESTATE |

**32. BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.**
(To be completed by Broker working with Buyer)

Broker [  ] **Does** [  ] **Does Not** acknowledge receipt of Earnest Money deposit. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder will release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money will be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared.

Although Broker is not a party to the Contract, Broker agrees to cooperate, upon request, with any mediation requested under § 23.

Broker is working with Buyer as a [  ] **Buyer's Agent** [  ] **Transaction-Broker** in this transaction. [  ] This is a **Change of Status.**

☐ **Customer.** Broker has no brokerage relationship with Buyer. See § 33 for Broker's brokerage relationship with Seller.

Brokerage Firm's compensation or commission is to be paid by ☐ **Listing Brokerage Firm** ☐ **Buyer** ☐ **Other** _____.

Brokerage Firm's Name: _____
Brokerage Firm's License #: _____
Broker's Name: _____
Broker's License #: _____

_____
Broker's Signature                                                Date

Address: _____

Phone No.: _____
Fax No.: _____
Email Address: _____

## 33.   BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.
(To be completed by Broker working with Seller)

Broker ☐ **Does** ☐ **Does Not** acknowledge receipt of Earnest Money deposit. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder will release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money will be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared.

Although Broker is not a party to the Contract, Broker agrees to cooperate, upon request, with any mediation requested under § 23.

Broker is working with Seller as a ☐ **Seller's Agent** ☐ **Transaction-Broker** in this transaction. ☐ This is a **Change of Status.**

☐ **Customer.** Broker has no brokerage relationship with Seller. See § 32 for Broker's brokerage relationship with Buyer.

Brokerage Firm's compensation or commission is to be paid by ☐ **Seller** ☐ **Buyer** ☐ **Other** _____.

Brokerage Firm's Name: _____
Brokerage Firm's License #: _____
Broker's Name: _____
Broker's License #: _____

_____
Broker's Signature                                                Date

Address: _____

Phone No.: _____
Fax No.: _____
Email Address: _____

836

# ORIGINAL ADDENDUM
## to
# CONTRACT TO BUY AND SELL REAL ESTATE (COMMERCIAL)

### 16161 E. 40th Avenue, Denver, Colorado  80329

**30.1.   MEC.** Mutual Execution of the Contract ("MEC") shall be construed for the purposes of this Contract and its deadlines as the date of last execution by Buyer or Seller, whichever occurs later.

**30.2.   BANKRUPTCY.** Seller is debtor in a pending voluntary bankruptcy proceeding before the United States Bankruptcy Court for the District of Colorado, Denver Division, Case No. 18-18636-EEB. This Contract must be approved by the Bankruptcy Court and will be deemed null and void if not approved within 30 Days of MEC.

**30.3.   PURCHASE PRICE.** The Purchase Price, as recited in § 4, shall specifically constitute, in addition to the Assumption Balance, payment of only (i) the following listed obligations of the Seller; and (ii) a reserve fund as stated. Should the actual cost to satisfy these obligations or said reserve's intent be less, the Purchase Price shall be reduced in kind. It is the intent that no cash be paid to Seller at Closing of this transaction.

| Obligations Constituting Part of the Purchase Price | | |
|---|---|---|
| Storm Drain Lien | City & County of Denver | $134.81 |
| Real Property Taxes | City & County of Denver | $101,340.66 |
| Mechanic Lien | Rio Grande Co. | $53,830.49 |
| Mechanic Lien | O'Brien Construction | $13,887.26 |
| Mechanic Lien | United Rentals | $64,466.79 |
| Mechanic Lien | Redd Iron, Inc. | $53,220.40 |
| Mechanic Lien | Metro Building Products | $4,650.48 |
| Mechanic Lien | Summit Services Group | $3,520.00 |
| Mechanic Lien | HD Supply Construction | $3,556.12 |
| Mechanic Lien | Waste Connections | $5,335.41 |
| Use Taxes | City & County of Denver | $139,393.50 |
| **TOTAL** | | **$507,802.71** |

**Reserve Fund Constituting Part of the Purchase Price**
Reserve Amount of $250,000.00 for payment of administrative expenses, trustee fee's, and attorneys' fees in Case No. 18-18636-EEB.

**30.4.   CLOSING DATE.** The Closing Date will be 29 days from the date the Bankruptcy Court authorizes the specific sale contemplated by this Contract, but at least 45 days after MEC. Closing shall occur no later than 75 days after MEC or bankruptcy court approval, whichever occurs later.

**30.4.1.   Extension of Closing.** Buyer shall have the right to extend the Closing Date, as determined by the terms herein, for an additional 30 days by making an additional $125,000.00 deposit to Earnest Money.

---

**ORIGINAL ADDENDUM – 16161 E. 40th Avenue**                                    **Page 1 of 2**

**30.3.   OTHER AGREEMENTS.**  As a part of this transaction, Abbas Consulting, Inc., a Texas Corporation contemporaneously enters into a certain Agreement for Purchase and Sale of LLC Interest with Wanda Bertoia, owner of WPB Hospitality, LLC and Alpine Hospitality, Inc. ("LLC Agreement"). Therein, Abbas Consulting, Inc. shall acquire all of Wanda Bertoia's right, title and interest in WPB in exchange for payment of $2,500,000.00. As further consideration, Wanda Bertoia and Alpine Hospitality, Inc. have agreed to release their claims against WPB Hospitality, LLC. Buyer and Seller agree that contemporaneous execution of the LLC Agreement is an integral to the overall consideration for Closing of this transaction.

City & County of Denver                                     2018039950                                              3 of 3

EXHIBIT A

LEGAL DESCRIPTION OF PROPERTY

A parcel of land being a portion of Plot 1, Block 1, Gateway Park IV – Denver Filing No. 7, being more particularly described as follows:

COMMENCING at the northwest corner of said Plot 1;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 295.63 feet to the true point of beginning;

THENCE North 89 degrees 52 minutes 06 seconds East, along the North line of said Plot 1, a distance of 396.64 feet to the northeast corner of said Plot 1;

THENCE the following three (3) course along the East line of said Plot 1:

1. THENCE South 10 degrees 26 minutes 16 seconds West, a distance of 95.82 feet to a point of curve;
2. THENCE along the arc of a curve to the left, having a central angle of 10 degrees 34 minutes 10 seconds, a radius of 315.00 feet and an arc length of 58.11 feet;
3. THENCE South 00 degrees 07 minutes 54 seconds East , a distance of 307.25 feet to the southeast corner of said Plot 1;

THENCE the following four (4) courses along the South line of said Plot 1:

1. THENCE South 89 degrees 52 minutes 06 seconds West, a distance of 100.00 feet;
2. THENCE South 00 degrees 07 minutes 54 seconds East, a distance of 5.00 feet to a point on the North right-of-way line of 40th Avenue, as dedicated by 40th Avenue, Chamber Road – Pena Boulevard Subdivision, recorded May 6, 1997, at Reception Number 9700057406, said City and County of Denver Records;
3. THENCE South 89 degrees 52 minutes 06 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 250.09 feet;
4. THENCE South 89 degrees 52 minutes 04 seconds West, along the North right-of-way line of said 40th Avenue, a distance of 23.63 feet;

THENCE North 00 degrees 07 minutes 54 seconds West, a distance of 464.23 feet to the true point of beginning, City and County of Denver, State of Colorado.

3

4819-4855-3055.1

## AGREEMENT FOR PURCHASE AND SALE
## OF LLC INTEREST

This **Agreement for Purchase and Sale of LLC Interest** (this "Agreement") is made as of the _____ day of _____, 2019, by and between Wanda Bertoia, owner of WPB Hospitality, LLC, a Colorado limited liability company, ("Seller") and Frisco Acquisition, LLC, a Texas limited liability company, ("Purchaser") and Alpine Hospitality, Inc., a Colorado corporation ("Alpine")

### Background of the Agreement

The following background statements are made to aid in the understanding and interpretation of this Agreement:

A.    Seller is the sole owner and member of WPB Hospitality, LLC ("WPB").

B.    WPB has been in process on the construction of a Sheraton Four Points branded hotel located at 16161 E. 40th Ave, Denver, CO 80239 (the "Property").

C.    WPB was constructing a hotel on the Property using a loan through the federal EB-5 program, funded through a lender named American Lender Center, LLC ("ALC").

D.    The total aggregate face amount of the loan from ALC to WPB was $10,200,000. Which amount was split between two promissory notes.

E.    WPB proceeded with construction until such time as WPB's General Contractor abandoned the Property and failed to remit payments to subcontractors.

F.    At the time the General Contractor abandoned the Property, construction had proceeded to between 20% and 30% complete. The Property remains in the same condition as it was in at the time the General Contractor abandoned the Property.

G.    On October 3, 2018, WPB filed Chapter 11 bankruptcy, United States Bankruptcy Court Case Number 18-18636-EEB (the "Bankruptcy Case").

H.    Purchaser is a hotelier familiar with the Denver hotel market. Purchaser and Abbas Consulting, Inc. ("Abbas"), an affiliated creditor, have collectively purchased three proofs of claim in the Bankruptcy Case totaling $80,000.

I.    ALC filed a proof of claim in the Bankruptcy Case for $5,329,779.28.

J.    Seller's separate entity Alpine Hospitality, Inc. filed a proof of claim in the Bankruptcy Case totaling $5,784,158.53.

K.    Purchaser has submitted a contract for the purchase of the Property from WPB for $ 6,068,132.97 and is proposing, through that contract, to assume the ALC debt, and pay those lien holders that have filed proofs of claim in the Bankruptcy Case, as Purchaser deems necessary and appropriate.

L.   Purchaser desires to purchase from Seller and Seller desires to sell to Purchaser on the terms and subject to conditions of this Agreement, Seller's membership interests in WPB, presently owned by Seller.

**Agreement**

**Now, therefore**, in consideration of the premises, their mutual covenants and promises, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.   Incorporation of Background Statements.   The foregoing background statements are incorporated herein as if fully set forth. All such statements are material terms of this Agreement and not merely recitals.

2.   Sale of Membership Interest.   Subject to the terms and conditions set forth in this Agreement and subject to Bankruptcy Court approval, unless otherwise agreed, Seller agrees to sell, assign, transfer and deliver to Purchaser, and Purchaser agrees to purchase and accept from Seller, all of Seller's rights, title and interest in WPB.

3.   Withdrawal of Claims.   Purchaser and Seller acknowledge that this Agreement contemplates resolution of the claims of Wanda Bertoia against WPB. Seller shall release upon Closing any and all of her claims, known or unknown, against WPB. Seller, acting in her official capacity on behalf of Alpine shall release upon Closing any and all of Alpine's claims, known or unknown, against WPB

4.   Consideration.   The full purchase price is Two Million, Five Hundred Thousand Dollars and 00/100 ($2,500,000.00) (the "Purchase Price"). At Closing, Purchaser shall pay to Seller the Purchase Price in the form of Two Hundred Fifty Thousand and 00/100 ($250,000) and the execution and delivery to Seller of a promissory note in the form and with the terms as provided for in **Exhibit A** for the balance of the Purchase Price.

5.   Assignment of Lawsuit Claims.   In further consideration of consummation of this Agreement, Purchaser shall assign to Seller all claims and interests in Denver County District Court Case No. 2018CV32991 styled as WPB Hospitality, LLC v. Kumar Construction Management Inc. et. al.

6.   Taxes.   Each party will be responsible for its own income taxes and tax reporting resulting from this sale.

7.   Seller Representation.   Seller represents that she is the sole owner of WPB and has not sold, hypothecated or transferred any of her ownership in WPB to third parties.

8.   Seller Makes No Warranties.   Seller makes no express or implied warranty in regards to this Agreement or the business assets. Seller further makes no representation or warranty as to the profitability or income expected from the Property now or in the future. Buyer hereby expressly disclaims any representations and warranties and acknowledges and agrees it is purchasing WPB as-is without warranty of any kind whatsoever.

9.      Purchaser Warranty. Purchaser represents and warrants to Seller it is a corporation duly organized, validly existing and in good standing under the State of Texas, with full power and authority to conduct its business as it is now conducted; that this Agreement and all ancillary documents to this transaction constitute legal, valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with the terms of this Agreement and the ancillary documents; and that Purchaser has power and authority to execute and deliver this Agreement and ancillary documents and perform the obligations thereunder and has been duly authorized to do so by all necessary corporate action.

10.     Closing. Consummation of the sale of WPB shall constitute the "Closing." Unless otherwise agreed between the parties, the Closing shall be remote, conducted through the parties representative counsel, and subject to approval by the bankruptcy court.

11.     Transaction. At the Closing, the following documents shall be exchanged:

        a.      Seller shall execute and deliver to Purchaser a bill of sale and an assignment.

        b.      Purchaser shall execute and deliver a Promissory Note in the same form and with the same terms as **Exhibit A**.

        Each party, at any time before or after the Closing date, shall execute, acknowledge, and deliver any further deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer, reasonably requested by the other and shall take any other action consistent with the terms of this Agreement that may reasonably be requested by Purchaser for the purpose of transferring to Purchaser, or reducing to possession the business and its assets.

12.     Purchaser's Indemnification. Purchaser shall indemnify, defend, and hold Seller, its members and employees harmless against all claims, losses, expenses, and damages, including interest, penalties, and reasonable attorneys' fees through all appeals, that Seller shall incur, which are caused by Purchaser's operation or ownership of its business or its use of the business assets after Closing or by any breach of or failure by Purchaser to perform, or the untruth of any of Purchaser's representations, warranties, or agreements in this Agreement or in any certificate, exhibit, or other instrument furnished or to be furnished by Purchaser under this Agreement.

13.     Miscellaneous.

        a.      Headings. The subject headings for the sections and subsections of this Agreement are included for purposes of convenience only, and shall not affect the construction or interpretation of any of its provisions.

        b.      Modification and Waiver. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all the parties. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision,

whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

c.     Counterparts.   This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

d.     Assignment.   This Agreement shall be binding on, and shall inure to the benefit of, the parties to it and their respective heirs, legal representatives, and successors. Any assignment without the written consent of all parties shall be void.

e.     Governing Law.   This Agreement is made under, and is to be construed and enforced in accordance with the laws of the State of Colorado.

f.     Time of the Essence.   Time is of the essence, and if any payment or any other material condition is not made, tendered, or performed as provided, there shall be the following remedies:

g.     Costs.   If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it may be entitled.

h.     Entire Agreement.   This Agreement constitutes the entire agreement between the parties and supersedes any prior understandings, agreements, or representations by or between the parties, written or oral, to the extent they related in any way to the subject matter hereof.

i.     Severability.   Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

j.     Construction.   The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation.

k.     Survival.   All the terms of this Agreement either specifically identified as surviving or which create or affect rights or obligations in the future shall survive and remain in effect after termination of this Agreement.

[Signature Page Follows]

**In witness whereof**, the parties have executed this Agreement the day and year first above written.

PURCHASER:
Frisco Acquisition, LLC
a Texas limited liability company

By _Parmjit Kaur_
Its: Managing Member

Date: 03.14.2019

SELLER:
Wanda Bertoia,
In her individual capacity as the Sole
Member of WPB Hospitatlity, LLC

By: _Wanda Bertoia_

Date: 3-14-2019

Alpine Hospitality, Inc.
a Colorado corporation

By: _Wanda Bertoia_
Its: OWNER

Date: 3-14-2019

[Signature Page]

**EXHIBIT A**

**THIS IS A LEGAL INSTRUMENT. IF NOT UNDERSTOOD, LEGAL, TAX OR OTHER COUNSEL SHOULD BE CONSULTED BEFORE SIGNING.**

PROMISSORY NOTE

U.S. $2,250,000.00

Denver, Colorado

Date: _____, 2019

1.　FOR VALUE RECEIVED, the undersigned (the "Maker") promises to pay Wanda Bertoia, or order, (the "Holder") the principal sum of **Two Million, Two Hundred Fifty Thousand Dollars and 00/100 ($2,250,000.00)**, with interest on the unpaid principal balance from **March 1, 2019**, until paid, at **Six percent (6%)**, per annum. Principal and interest shall be payable at **5466 S. Hannibal Crt. Centennial, CO 80015** or such other place as the Holder may designate. Payments shall be made in accordance with the Payment Schedule attached as **Exhibit 1**, until paid in full. All monthly payments shall be paid each month on the first of the month. The term of this Promissory Note shall be sixty (60) months. Interest on this Note shall be computed on the basis of a year of three hundred sixty-five (365) days for the actual number of days elapsed. All payments by the Maker under this Note shall be in immediately available funds and in lawful tender of the United States.

2.　Maker may prepay the principal amount outstanding under this Note, in whole or in part, at any time without penalty. Any partial prepayment or amount paid in any given month that is made in excess shall be credited to the next payment and the Principal Balance of the Promissory Note.

3.　<u>Event of Default.</u> The occurrence at any time of any of the following shall constitute "an Event of Default":

(a)　default in the payment or performance of this or any other liability or obligation of the Maker to the Holder, including the payment, when due, of any principal, premium or interest under this Note;

(b)　the liquidation, termination of existence, dissolution, insolvency or business failure of the Maker, or the appointment of a receiver or custodian for the Maker or any part of its property; or

(c)　the institution by or against the Maker or any endorser or guarantor of this Note of any proceedings under the United States Bankruptcy Code or any other federal or state bankruptcy, reorganization, receivership, insolvency or other similar law affecting the rights of creditors generally or the making by the Maker or any endorser or guarantor of this Note of a composition or an assignment or trust mortgage for the benefit of creditors;

Upon the occurrence of an Event of Default, the entire principal amount outstanding and accrued interest thereon shall become due and payable at the option of Holder

(Acceleration) twenty one (21) days after notice of Acceleration has been given. Such notice of Acceleration shall specify the amount of the nonpayment plus any unpaid late charges and other costs, expenses and fees due under this Note. Until the expiration of said twenty one-day period, Maker may cure all defaults consisting of a failure to make required payments by tendering the amounts of all unpaid sums due at the time of tender, without Acceleration, as specified by Holder in such notice. Cure restores Maker to Maker's rights under this Note as though defaults had not occurred. Any defaults under this Note occurring within twelve (12) months after Holder has once given a notice of Acceleration, entitles Maker to no right to cure, except as otherwise provided by law. the Holder shall have then, or at any time thereafter, all of the rights and remedies afforded by the Uniform Commercial Code as from time to time in effect in the State of Colorado or afforded by other applicable law. Holder's notice of default shall be given in writing and shall be deemed given (a) three (3) business days after mailed by first class or certified mail to Maker at an address Holder has for Maker in Holder's records, or (b) when actually received by Maker, whichever first occurs.

Every amount overdue under this Note shall bear interest from and after the date on which such amount first became overdue at an annual rate which is five (5) percentage points above the rate per year specified in the first paragraph of this Note. Such interest on overdue amounts under this Note shall be payable on demand and shall accrue and be compounded monthly until the obligation of the Maker with respect to the payment of such interest has been discharged (whether before or after judgment).

In no event shall any interest charged, collected or reserved under this Note exceed the maximum rate then permitted by applicable law and if any such payment is paid by the Maker, then such excess sum shall be credited by the Holder as a payment of principal.

4.  Security. This Note shall be secured by real property as identified and agreed to between the parties and as evidenced by a Deed of Trust, to be recorded in the appropriate county records.

5.  Payment. All payments by the Maker under this Note shall be made without set-off or counterclaim and be free and clear and without any deduction or withholding for any taxes or fees of any nature whatever, unless the obligation to make such deduction or withholding is imposed by law. The Maker shall pay and save the Holder harmless from all liabilities with respect to or resulting from any delay or omission to make any such deduction or withholding required by law.

Whenever any amount is paid under this Note, all or part of the amount paid may be applied to principal, premium or interest in such order and manner as shall be determined by the Holder in its discretion.

The Maker agrees to pay on demand all costs of collection, including reasonable attorneys' fees, incurred by the Holder in enforcing the obligations of the Maker under this Note.

No delay or omission on the part of the Holder in exercising any right under this Note shall operate as a waiver of such right or of any other right of such Holder, nor shall any delay,

omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The Maker and every endorser or guarantor of this Note regardless of the time, order or place of signing waives presentment, demand, protest and notices of every kind and assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable.

This Note may be prepaid in whole or in part without the prior written consent of the Holder.

5.    Assignment. The rights and obligations of the Maker and the Holder of this Note shall be binding upon and benefit the successors, assigns, heirs, administrators and transferees of the parties. Notwithstanding the foregoing, neither this Note nor any of the rights, interests or obligations hereunder may be assigned, by operation of law or otherwise, in whole or in part, by the Maker, without the prior written consent of the Holder, which may be withheld by Holder in its sole discretion.

6.    Amendment. None of the terms or provisions of this Note may be excluded, modified or amended except by a written instrument duly executed on behalf of the Holder expressly referring to this Note and setting forth the provision so excluded, modified or amended.

7.    Notices. Any notice, request or other communication required or permitted under the Note shall be deemed to have been duly given to Maker if personally delivered, mailed by registered or certified mail, postage prepaid, or by recognized overnight courier or by electronic mail transmission to:

8.    Governing Law. This Agreement and all amendments, modifications, authorizations, or supplements, to this Agreement and the rights, duties, obligations, and liabilities of the Parties under such document will be determined in accordance with the applicable provisions of the laws of the State of Colorado, without reference to its doctrines or principles of conflict of laws.

9.    Venue. In the event that any dispute, claim or litigation arises about or involving this Agreement as between the parties hereto and their respective heirs, executors, administrator, successors, and assigns, and each person entering into this Agreement, such dispute, claim or litigation shall be brought solely in State District Court in Denver County, Colorado.

[SIGNATURE ON FOLLOWING PAGE]

**MAKER:**

Frisco Acquisition, LLC
a Texas limited liability company

By: Param Jit Kaur

Its: Managing Member

**EXHIBIT 1**
**to Promissory Note**

**PAYMENT SCHEDULE**

| DUE DATE/TRIGGER | AMOUNT | APPLICATION | RECURRENCE |
|---|---|---|---|
| Closing | $12,000.00/month begins | Principal & Interest | Monthly |
| One Week Prior to Hotel Opening | $125,000.00 | Principal | Single Payment |
| 24th Month After Hotel Opening | $200,000.00 | Principal | Single Payment |
| 60th Month | Balance of Note | Principal & Interest | Single Payment |